1   Mark A. Redmond, SBN 161520
  **Law Office of Mark A. Redmond, PC**
2   656 Fifth Avenue, Suite R
  San Diego, CA 92101
3   Telephone: (916) 444-8240
  Facsimile: (866) 476-9393
4   Email: mr@markredmondlaw.com

5   Kresta Nora Daly, SBN 199689
  **BARTH  DALY LLP**
6   PO Box F
  Winters, CA 95694
7   Telephone: (916) 440-8600
  Facsimile: (916) 440-9610
8   Email:  kdaly@barth-daly.com

9   Attorneys for Plaintiffs JOANN PRICE, BEVERLY
  DAPREMONT, and the ESTATE OF RONNIE PRICE
10

11            IN THE UNITED STATES DISTRICT COURT

12         FOR THE EASTERN DISTRICT OF CALIFORNIA

13   JOANN PRICE, successor in interest to Ronnie     Case No. 2:22-CV-01610-DAD-DMC
  Price, deceased; and the ESTATE OF RONNIE
14   PRICE; and his successors in interest,

15              Plaintiffs,      **FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**

16      v.

17   ARTURO PACHECO, ASHLEY MARIE
  AURICH, JEFFREY BIGNEY, ARTURO     **JURY TRIAL DEMANDED**
18   LUNA, DORIAN LOPEZ, BRENDA VILLA,
  DAVID BAUGHMAN, JEFFREY LYNCH and
19   DOES 1 through 15, inclusive, in their official
  and personal/individual capacities.
20
            Defendants.
21

22       Plaintiffs JoAnn Price, Beverly Dapremont, and the Estate of Ronnie Price upon

23 information and belief, allege the following:

24                         **<u>INTRODUCTION</u>**

25       1.      This civil rights action seeks compensatory and punitive damages from defendants

26 for brutally assaulting Ronnie Price and causing him catastrophic injuries resulting in his death

27 and additionally conspiring to falsify and cover up his assault, injuries and death.  Ronnie Price

28 ///

BARTH DALY LLP
ATTORNEYS AT LAW

1  was assaulted while handcuffed and without justification while incarcerated at CSP Sacramento,

2  located at 100 Prison Road, Represa, California (hereinafter "CSP Sac").

3       2.      On or about September 15, 2016, Mr. Price was assaulted by CDCR guard Arturo

4  Pacheco and taken to UC Davis Medical Center for treatment where he died two days later as a

5  result of the injuries suffered in the assault.  Multiple prison guards falsified reports and conspired

6  to cover up the assault and other felonious conduct toward Ronnie Price.

7  **JURISDICTION AND VENUE**

8       3.      This is an action for money damages brought pursuant to Title 42 of the United

9  States Code, Sections 1983 and 1988; and the Eighth and Fourteenth Amendments of the United

10  States Constitution against various correctional employees then working at the CSP Sac.

11       4.      Jurisdiction is conferred upon this Court by Title 42 of the United States Code,

12  Sections 1331 (federal question) and 1343 (civil rights).

13       5.      Venue lies in the Eastern District of California pursuant to Title 28, United States

14  Code Section 1367, as the unlawful acts and practices alleged herein occurred in and around the

15  City of Represa, County of Sacramento, California, which is within this judicial district.

16  **PARTIES**

17       6.      Plaintiff JoAnn Price is the sister of Ronnie Price.  JoAnn Price is, and was at all

18  times mentioned herein, an individual and citizen of the United States of America, resident of

19  Los Angeles County.

20       7.      At all relevant times and specifically in and around September 2016, defendant

21  Arturo Pacheco was an employee of the California Department of Corrections and Rehabilitation

22  [hereinafter CDCR].  Defendant Pacheco was acting under color of state law when he assaulted

23  Ronnie Price and later conspired to falsify and cover up his misconduct in causing the death of

24  Ronnie Price.  Defendant Pacheco is sued in both his professional and individual/personal

25  capacities for his own culpable actions.

26       8.      At all relevant times and specifically in and around September 2016, defendant

27  Ashley Marie Aurich was an employee of CDCR.  Defendant Aurich was acting under color of

28  state law when she conspired to falsify and cover up the misconduct of other CDCR employees in

FIRST AMENDED COMPLAINT FOR DAMAGES                        2:21-CV-1610-DAD-DMC

{00039321}

BARTH DALY LLP
ATTORNEYS AT LAW

1   assaulting and causing the death of Ronnie Price.  Defendant Aurich is sued in both her

2   professional and individual/personal capacities for her own culpable actions.

3          9.     At all relevant times and specifically in and around September 2016, defendant

4   Jeffrey Bigney was an employee of CDCR.  Defendant Bigney was acting under color of state

5   law when he conspired to falsify and cover up the misconduct of other CDCR employees in

6   assaulting and causing the death of Ronnie Price.  Defendant Bigney is sued in both his

7   professional and individual/personal capacities for his own culpable actions.

8          10.    At all relevant times and specifically in and around September 2016, defendant

9   Arturo Luna was an employee of CDCR.  Defendant Luna was acting under color of state law

10  when he conspired to falsify and cover up the misconduct of other CDCR employees in assaulting

11  and causing the death of Ronnie Price.  Defendant Luna is sued in both his professional and

12  individual/personal capacities for his own culpable actions.

13         11.    At all relevant times and specifically in and around September 2016, defendant

14  Dorian Lopez was an employee of CDCR.  Defendant Lopez was acting under color of state law

15  when he conspired to falsify and cover up the misconduct of other CDCR employees in assaulting

16  and causing the death of Ronnie Price.  Defendant Lopez is sued in both his professional and

17  individual/personal capacities for his own culpable actions.

18         12.    At all relevant times and specifically in and around September 2016, defendant

19  Brenda Villa was an employee of CDCR.  Defendant Villa was acting under color of state

20  law when she conspired to falsify and cover up the misconduct of other CDCR employees in

21  assaulting and causing the death of Ronnie Price.  Defendant Villa was a Sergeant within CDCR

22  and was the direct supervisor of several of the defendants in this case.  Defendant Villa is sued in

23  both her professional and individual/personal capacities for her own culpable actions.

24         13.    Defendant Jeffrey Lynch was, at all times mentioned, employed by CDCR, as

25  Warden and/or Assistant Warden of CSP Sac, which is a state-run prison under CDCR.

26  Defendant Lynch was at all times mentioned responsible for the oversight, maintenance and

27  policy making decisions of CSP Sac.  He was at all relevant times herein responsible for setting

28  and enforcing the policies, customs and practices of CSP Sac.  In addition, defendant Lynch was

BARTH DALY LLP
ATTORNEYS AT LAW

1  responsible for the supervision, training and hiring of persons and employees working within CSP
2  Sac including correctional officers and other employees within CSP Sac.  Defendant Lynch is
3  sued in both his professional and individual/personal capacities for his own culpable action or
4  inaction in the training, supervision or control of his subordinates, or for his acquiescence in the
5  constitutional deprivations which this Complaint alleges, or for conduct that showed a reckless or
6  callous indifference to the rights of others.

7       14.  Defendant David Baughman was, at all times mentioned, employed by CDCR, as
8  Warden or Acting Warden of CSP Sac, which is a state-run prison under CDCR.  Defendant
9  Baughman was at all times mentioned responsible for the oversight, maintenance and policy
10  making decisions of CSP Sac.  He was at all relevant times herein responsible for setting and
11  enforcing the policies, customs and practices of CSP Sac.  In addition, defendant Baughman was
12  responsible for the supervision, training and hiring of persons and employees working within CSP
13  Sac including correctional officers and other employees within CSP Sac.  Defendant Baughman is
14  sued in both his professional and individual/personal capacities for his own culpable action or
15  inaction in the training, supervision or control of his subordinates, or for his acquiescence in the
16  constitutional deprivations which this Complaint alleges, or for conduct that showed a reckless or
17  callous indifference to the rights of others.

18       15.  The true names of Does 1 through 15, inclusive, are unknown to plaintiffs at this
19  time.  Defendants are current and former employees of CDCR.  Defendants were acting under
20  color of state law when they conspired to cover up the misconduct of other CDCR employees in
21  causing the death of Ronnie Price.  Doe defendants are currently being sued in their individual
22  capacities.  Plaintiffs believe the identities of defendants will be revealed through discovery and
23  will permit plaintiffs to amend this Complaint to state the same.

24       16.  Plaintiffs are informed and believe, and thereon allege that each defendant is, and
25  at all times mentioned was, the agent, employee, representative successor and/or assignee of each
26  other defendant.  Each defendant, in doing the acts, or in omitting to act as alleged in this
27  complaint, was acting within the scope of his or her actual and apparent authority or the alleged
28  acts and omissions of each defendant as agent were subsequently adopted and ratified by each

{00039321}                                - 4 -

other defendant as principal.  Plaintiffs are informed and believe that each of the individual defendants was in some way responsible for the constitutional violations and torts alleged in this complaint.

17.     In committing the acts alleged in this complaint, defendants acted knowingly, maliciously and with reckless or callous disregard for the constitutional rights of Ronnie Price, justifying an award of punitive damages under federal law against each defendant.

## **FACTS**

18.     At all times relevant herein, all wrongful and unlawful acts described herein were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

19.     California Code of Regulations, Title 2, Section 172 provides in relevant part "All … employees in the state civil service shall possess the general qualifications of integrity, honesty, dependability, industry, thoroughness, accuracy, good judgment, imitative, resourcefulness, courtesy….  The foregoing general qualifications shall be deemed to be a part of the personal characteristics of the minimum qualifications…."

20.     CDCR's Department Operations Manual, 33030.3.3 Law Enforcement Code of Ethics provides, in pertinent part: "As employees and appointees of the Department, we are expected to perform our duties, at all times, as follows: Demonstrate professionalism, honesty, and integrity; Accept responsibility for our actions and their consequences; Appreciate differences in people, their ideas, and opinions; Treat fellow employees, inmates, wards, parolees, victims, their families, and the public with dignity and respect; Respect the rights of others and treat them fairly regardless of race, color, national origin, ancestry, gender, religion, marital status, age, disability, medical condition, pregnancy, sexual orientation, veteran status, or political affiliation; Comply with all applicable laws and regulations…."

21.     CDCR Health Care Department Operations Manual 3.1.19 requires the Warden or his/her designee to notify an inmate's next of kin within 24 hours of death, serious illness or serious injury.

///

BARTH DALY LLP
ATTORNEYS AT LAW

1    22.    The code of silence is a term used to denote the informal code of silence among

2    correctional [and other] officers  not to report on a colleague's errors, misconducts, or crimes.

3    23.    CDCR employees, and specifically those assigned to CSP Sacramento, who fail to

4    follow the code of silence and report misconduct by their fellow officers are harassed and

5    retaliated against.  For example, in November 2016 a man named Milton Beverly, Jr., died while

6    at CSP Sacramento.  Correctional Officers claimed Beverly hung himself in his cell.  However,

7    one officer was prepared to testify another inmate confessed to murdering Beverly.  According to

8    that officer the evidence of the murder was covered up.  The officer reported the misconduct to

9    defendants Baughman and Lynch who failed to act.

10   24.    Beginning no later than 2016, one or more officers filed multiple reports with

11   defendants Baughman and Lynch, as well as other high-ranking employees of CDCR, alleging

12   rampant corruption and the continued existence of a "code of silence" within CSP Sacramento.

13   Despite these reports, it took nearly two years for CDCR to complete its investigation into the

14   allegations in the instant case.  Allowing at least one defendant, Pacheco, to be sued for excessive

15   force that occurred on a subsequent occasion.

16   25.    On September 15, 2016, Ronnie Price was assaulted by defendant Arturo Pacheco

17   as defendant Pacheco and defendant Aurich escorted Mr. Price between buildings.

18   26.    On September 15, 2016, Defendant Pacheco was instructed by Sergeant Brenda

19   Villa to move Ronnie Price from a cell in Building 6A to a cell in Building 7A as part of a cell

20   compaction.  Building 6A and Building 7A are and were located on the grounds of CSP Sac,

21   where Mr. Price was incarcerated.

22   27.    Defendant Pacheco and defendant Aurich went to Building 6A to get Mr. Price.

23   Officer Pacheco informed Mr. Price he was being moved to another cell with a new cellmate.

24   Mr. Price requested to be taken to Administrative Segregation instead of being housed with the

25   proposed new cell mate.  Mr. Price agreed to be handcuffed and escorted to Administrative

26   Segregation.

27   28.    Defendant Arturo Luna and Officer Roger Lynch were also present for this

28   conversation.

BARTH DALY LLP
ATTORNEYS AT LAW

{00039321}

- 6 -

29.     Defendants Pacheco, Aurich and Luna escorted Mr. Price.  Officer Lynch stayed behind to collect Mr. Price's belongings.  Defendant Bigney opened the yard door for defendants Aurich, Luna and Pacheco.

30.     Defendant Pacheco informed Mr. Price he was taking him to his new cell. Mr. Price stated he was not going to the new cell and stopped walking.

31.     Defendant Pacheco squatted down, placed his shoulder on Mr. Price's buttock area, grabbed Mr. Price's quadriceps and pushed Mr. Price forward with his body weight.  Mr. Price still had his hands handcuffed behind his back.  Defendant Pacheco's unjustified use of force caused Mr. Price to fall violently forward onto his face impacting the concrete floor.

32.     The impact of Mr. Price's head striking the concrete floor caused Ronnie Price to break his jaw, several teeth and injure his right shoulder.

33.     Defendants Aurich and Luna made no attempts to prevent defendant Pacheco from slamming Ronnie Price into the cement.

34.     Defendant Bigney could have seen this incident from his vantage point had he not violated CDCR policy and covered his windows, blocking his view.

35.     Despite the fact the technology existed, CSP Sacramento did not have video surveillance cameras.  CSP Sacramento correctional officers did not wear body cameras which had been available for a number of years.

36.     After Mr. Price crashed face first into the concrete floor, defendant Aurich sounded the alarm.  Defendants Villa, Bigney and Lopez were among the first to arrive at the scene.

37.     Defendant Villa instructed defendant Aurich to get a camera and take photos.

38.     Defendant Lopez and Officer Todd Jones relieved defendant Pacheco and escorted Mr. Price to medical.  Medical staff immediately determined Mr. Price needed to be sent to UC Davis Medical Center to receive emergency medical.

39.     Later on September 15, 2016, defendant Villa sent an email with the subject "IR 0824" to defendants Bigney, Pacheco, Aurich, Luna, Lopez and Officer Todd Jones regarding the incident with Mr. Price.

BARTH DALY LLP
ATTORNEYS AT LAW

{00039321}

- 7 -

40.     Defendant Villa's email included a document titled "IR Price 0824.doc."  The email contained the phrase "Resisting a Peace Officer Resulting in the UOF (Physical)."  This email was sent to provide pertinent information for the incident reports.

41.     Although she was required to do so, defendant Villa did not submit a report about the incident.

42.     Despite the fact defendant Luna was present for the entire incident defendant Villa intentionally did not collect a report from defendant Luna.

43.     After the responding officers left the scene, defendant Villa spoke with defendants Pacheco, Aurich, Lopez and Bigney regarding who was going to be documented in the incident reports.

44.     There was an agreement between defendants Villa, Pacheco, Lopez, Aurich and Bigney not to include references to defendant Luna in the incident report.

45.     When questioned why defendant Luna was being omitted from the incident report, defendant Villa told defendant Aurich to "keep it between the Block" or words to that effect, referring to the fact defendant Luna worked in a different building.

46.     Defendant Villa's instructions to other officers to 'keep it between the Block" and omit references to defendant Luna was an act of engaging in a code of silence and encouraging staff to do the same.

47.     Defendant Villa received reports from defendants Lopez, Aurich, Pacheco, Bigney and Officer Jones.

48.     Defendant Villa made substantive changes to several of these reports.  The substantive changes removed factual information and/or added specific details which did not accurately reflect the events that occurred.

49.     Defendants Lopez, Aurich, Pacheco and Bigney subsequently signed the falsified reports.

50.     Defendants Villa, Pacheco, Aurich, Bigney, Lopez and possibly other defendants, had conversations in person, via telephone and text messages regarding fabricating a cover story.

51.     Defendant Luna initially drafted a report about the incident.

BARTH DALY LLP
ATTORNEYS AT LAW

52.     Defendant Luna did not submit a report, despite the fact he was required to do so.

53.     Among the reasons defendant Luna did not submit a report was because defendant Pacheco told defendant Luna not to do so.

54.     Subsequently, defendant Luna acknowledged he knew defendant Pacheco used excessive force against Mr. Price and failed to report Pacheco's wrongful conduct.

55.     Again, defendant Luna was required to report excessive force by a fellow guard and, despite being aware of this requirement, he failed to do so.

56.     Defendant Luna was interviewed by CDCR's Office of Internal Affairs (OIA) on at least two occasions.  In the first interview he denied having written a report about defendant Pacheco's use of excessive force against Mr. Price.

57.     In his second OIA interview, defendant Luna lied about having drafted a report, claiming he should have done so, until he was confronted with a copy of the report he drafted but did not submit.

58.     Defendant Luna lied in his reports and during the OIA interviews in an attempt to cover his and his codefendants' wrongful conduct.

59.     Defendant Bigney wrote a report about the incident.  That report involved several drafts.  The final version of the report submitted by defendant Bigney contained material misrepresentations designed to hide the fact defendant Luna was present during the assault.  Additionally, there were other material misrepresentations about defendant Pacheco's conduct.

60.     Defendant Bigney was interviewed by OIA on at least two occasions.  In those interviews Bigney lied about his conduct and the conduct of other officers.

61.     Defendant Bigney lied in his reports and during the OIA interviews in an attempt to cover his and his codefendants' wrongful conduct.

62.     Defendant Lopez wrote a report about the incident with Mr. Price.

63.     Defendant Lopez lied in his report about the events involving Mr. Price.  Specifically, defendant Lopez lied and claimed defendant Luna was not present.  Defendant Lopez also lied about defendants Pacheco's and Aurich's positions and actions upon defendant Lopez's arrival at the scene.

BARTH DALY LLP
ATTORNEYS AT LAW

1        64.     Defendant Lopez was interviewed by OIA on at least two occasions. During those

2 interviews he lied about his conduct and the conduct of other officers.

3        65.     Defendant Lopez lied in his reports and during the OIA interviews in an attempt to

4 cover his and his codefendants' wrongful conduct.

5        66.     Defendant Pacheco wrote a report about the incident with Mr. Price. Defendant

6 Pacheco lied in his report about the events involving Mr. Price. Specifically, defendant Pacheco

7 lied and claimed Mr. Price was resisting.

8        67.     Defendant Pacheco lied about slamming Mr. Price to the ground without cause.

9 Defendant Pacheco also claimed defendant Luna was not present.

10        68.     Defendant Pacheco was interviewed by OIA on at least two occasions. During

11 those interviews he lied about his conduct and the conduct of other officers.

12        69.     Defendant Pacheco lied in his reports and during the OIA interviews in an attempt

13 to cover his and his codefendants' wrongful conduct.

14        70.     Defendant Aurich wrote a report about the incident with Mr. Price. Defendant

15 Aurich lied in her report about the events involving Mr. Price. Specifically, defendant Aurich

16 lied and claimed Mr. Price was resisting.

17        71.     Defendant Aurich lied about defendant Pacheo slamming Mr. Price to the ground

18 without cause. Defendant Aurich also claimed defendant Luna was not present.

19        72.     Defendant Aurich was interviewed by OIA on at least two occasions. During

20 those interviews she lied about her conduct and the conduct of other officers.

21        73.     Defendant Aurich lied in her reports and during the OIA interviews in an attempt

22 to cover her and her codefendants' wrongful conduct.

23        74.     Defendant Villa was interviewed on at least two occasions by OIA. She lied in

24 both of those interviews. Defendant Villa lied during the OIA interviews in an attempt to cover

25 her and her codefendants' wrongful conduct.

26        75.     On or about June 25, 2018, defendants Villa, Pacheco, Aurich, Luna, Lopez and

27 Bigney were fired due to the aforementioned conduct.

28 ///

- 10 -

BARTH DALY LLP
ATTORNEYS AT LAW

76.     On or about October 3, 2016, defendant Pacheco texted defendant Aurich, stating "I work with snitches."

77.     On October 3, 2016, defendant Luna was interviewed by OIA.  Defendant Pacheco sent this text message to defendant Aurich after learning defendant Luna was being interviewed. This text message was part of a pattern and practice among the correctional officers at CSP Sac to maintain a code of silence and to harass and intimidate any officer who violated the code.

78.     Defendants Baughman and Lynch became aware of defendants Pacheco's and Aurich's text conversation no later than the Spring of 2017.  Despite being aware of this conduct Pacheco, Aurich, as well as the other defendants, continued to work at CSP Sac for more than another year.

79.     On or about February 19, 2017, defendant Lopez texted an unknown individual about the code of silence at CSP Sac.  Defendant Lopez stated "LOL! Code of Silence homie" and "you know it."

80.     Defendants Baughman and Lynch became aware of defendant Lopez's text conversation no later than the Spring of 2017.  Despite being aware of this conduct defendant Lopez continued to work at CSP Sacramento for more than another year.

81.     The Notice of Adverse Action terminating defendant Lopez's employment acknowledges the existence of the code of silence at CSP Sac.  The notice states "When confronted with the above text message exchange, you [defendant Lopez] confirmed that you had indeed authored the text messages referring to the "code of silence" at CSP-SAC…."  While the Notice of Adverse Action goes on to state that the code of silence is not allowed, the notice confirms the code of silence exists.

82.     The Notice of Adverse Action was signed by defendant Baughman.

83.     Defendant Lynch began working for CDCR in 1994.  He has worked at CSP Sac on multiple occasions since at least 1996.  In September 2011, Lynch accepted an Associate Warden position at CSP Sac.  Lynch was promoted to Chief Deputy Warden in August 2016.  In June 2020 Defendant Lynch was named Warden of CSP Sac.

///

BARTH DALY LLP
ATTORNEYS AT LAW

84.     Given his long tenure at CSP Sac, particularly in positions where he supervised other correctional officers, defendant Lynch had actual and/or constructive knowledge of the pervasive culture of lying and dishonesty amongst certain guards at CSP Sac.

85.     Defendant David Baughman began working for CDCR in 1991.  At the time of Mr. Price's death, David Baughman was acting warden and had been with CDCR for roughly 25 years.

86.     Defendants Baughman and Lynch had actual and/or constructive knowledge of the Code of Silence at CSP Sac.

87.     Prior to Mr. Price's death, defendants Baughman and Lynch received reports from other correctional officers complaining of a culture of corruption.

88.     After Mr. Price's death, but more than a year before defendants Villa, Pacheco, Aurich, Luna, Lopez and Bigney were fired, defendants Baughman and Lynch received additional reports from other correctional officers complaining about the code of silence, corruption, and/or other wrongful conduct.  Defendants Baughman and Lynch took no corrective action.

89.     The existence of the code of silence at CSP Sac is well known among the inmates and staff at CSP Sac.  Supervisors and correctional staff knew and/or should have known that the code of silence was preventing the dissemination of factual information about Mr. Price's death.

90.     At UC Davis Medical Center, Mr. Price received extensive emergency medical care and was hospitalized.

91.     On or about September 17, 2016, Mr. Price died as a result of the assault by defendant Pacheco.  The Sacramento County Coroner subsequently ruled Mr. Price's death a homicide.

92.     Defendants Baughman and Lynch did not notify Mr. Price's next of kin consistent with the requirements of CDCR Health Care Department Operations Manual 3.1.19.  Mr. Price's next of kin was informed he died after resisting lawful commands by a correctional officer.

93.     On a date unknown, but before June 1, 2018, the Sacramento County Coroner's Office ruled Mr. Price's death a homicide.

///

BARTH DALY LLP
ATTORNEYS AT LAW

94.     No later than June 1, 2018, and likely substantially before that date, defendants Baughman and Lynch knew Mr. Price died as a result of defendant Pacheco's conduct.

95.     No later than June 1, 2018, and likely substantially before that date, defendants Baughman and Lynch were also aware that defendants Pacheco, Aurich, Villa, Luna, Bigney and Lopez lied and conspired to cover-up the true circumstances surrounding Mr. Price's death.

96.     Despite this, defendants Baughman and Lynch failed to provide Mr. Price's next of kin with the truthful information regarding his death in violation of California Code of Regulations Title 2, Section 172.

97.     At all times herein plaintiff JoAnn Price's telephone number and address were easily obtainable online, using a telephone book.  CDCR has access to confidential databases.

98.     No one at CDCR made an adequate, reasonable or diligent attempt as required by California law to notify Mr. Price's next of kin of the true cause of his death.

99.     Due to defendants' failure to properly notify Mr. Price's next of kin of the true cause of his death plaintiffs did not and could not file a claim pursuant to California Tort Claims Act Government Code §§ 810, *et seq.*

100.    Plaintiffs contend that the agents and employees of the State of California failed in their statutory duties under both California and Federal law, including, but not limited to, violations of the Eighth and Fourteenth Amendments of the United States Constitution by failing to provide protection to decedent, thereby depriving decedent and plaintiffs of their civil rights.

101.    Each defendant acted with a deliberate indifference to or, reckless disregard for, an accused's rights for adequate safety in a custodial facility.

102.    As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the defendants, decedent suffered great fear, physical and mental suffering, anguish, confusion, anxiety, nervousness, and ultimately, loss of life during the time period in which CDCR failed to provide appropriate protection.

103.    As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the defendants, plaintiffs have suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity,

BARTH DALY LLP
ATTORNEYS AT LAW

1  embarrassment, harm to reputation, and apprehension, which have caused plaintiffs to sustain

2  damages in a sum to be determined at trial.

3  ## THE STATUTE OF LIMITATIONS IS TOLLED

4       104.    Defendants falsely reported and covered up their assault of Ronnie Price.  Prison

5  authorities have never appraised plaintiffs of the true circumstances and cause of Mr. Price's

6  death or of the fact that defendants were responsible for Ronnie Price's death and tried to cover

7  that fact up.

8       105.    Plaintiffs are informed and believe and thereon allege that defendants Pacheco,

9  Aurich, Villa, Lopez, Luna and Bigney were fired in June 2018.  Among the reasons they were

10  fired was for dishonesty in the investigation of this case.

11       106.    Despite the fact defendants Baughman and Lynch knew in 2018 that defendants

12  Pacheco, Aurich, Villa, Lopez, Luna and Bigney lied about the circumstances surrounding

13  Mr. Price's death, plaintiffs were not informed of the true cause of Mr. Price's death.

14       107.    By knowingly and intentionally failing to inform plaintiffs of the true cause of

15  Mr. Price's death, defendants Baughman and Lynch and Does 3 through 15 furthered the

16  conspiracy to cover up the true cause of Mr. Price's death.  Their conduct further tolled the statute

17  of limitations.

18       108.    Plaintiffs could not bring a claim for the wrongful death of Mr. Price because they

19  were not notified of the true cause of Mr. Price's death.

20       109.    In United States District Court, Eastern District of California Case No. 2:20-CR-

21  221, defendant Pacheco entered guilty pleas to two violations of Title 18 United States Code

22  Section 242, deprivation of civil rights under color of authority and two counts of violations of

23  Title 18 United States Code Section 1519, falsification of records in federal investigation.

24       110.    Some of those guilty pleas related to defendant Pacheco's assault upon Mr. Price

25  and his subsequent cover-up of that assault.

26       111.    Ronnie Price is not identified by name in defendant Pacheco's plea agreement.

27  Had plaintiffs read the plea agreement they would not have known the identity of the victim.

28  ///

BARTH DALY LLP
ATTORNEYS AT LAW

FIRST AMENDED COMPLAINT FOR DAMAGES                                    2:21-CV-1610-DAD-DMC

112.    On or about January 19, 2021, defendant Aurich pled guilty in United States District Court, Eastern District of California to a violation of Title 18 United States Code Section 1519, falsification of records in federal investigation.

113.    Defendant Aurich's guilty pleas were directly related to her complicity in falsifying records to assist defendant Pacheco's cover-up of his felonious and deadly assault on Mr. Price.

114.    Ronnie Price is not identified by name in defendant Aurich's plea agreement.  Had plaintiffs read the plea agreement they would not have known the victim was their brother.

115.    At a time unknown to plaintiffs, but prior to 2018, the Federal Bureau of Investigation ("FBI") and/or other state and federal law enforcement agencies, began investigating CSP Sac.

116.    Plaintiffs are informed and believe that defendants Pacheco's and Aurich's conduct came to light and the result was the filing of two separate criminal indictments in late 2020. Despite this fact, neither the FBI, CDCR, the United States Attorney's Office nor any other law enforcement agency informed plaintiffs of the true facts which led to Ronnie Price's death and the subsequent cover-up of defendant Pacheco's criminal conduct.

117.    Plaintiffs remained unaware of the facts surrounding their brother's death and cover-up until the events were reported in the news in late July 2022 around the time of defendant Pacheco's guilty plea.

118.    Typically an action accrues on the date of injury.  That rule can be modified by the "discovery rule."  The discovery rule provides that the accrual date of a cause of action is delayed until the plaintiff is aware of their injury and its cause.

119.    Plaintiffs had no knowledge of the true facts surrounding Ronnie Price's death until defendant Pacheco's plea agreement and guilty plea.  Plaintiffs had no means by which to discover the truth prior to late July 2022.

120.    Equitable estoppel prevents the statute of limitations from starting to run where there is concealment of information as to the cause of a plaintiff's injuries.  Fraudulent

///

BARTH DALY LLP
ATTORNEYS AT LAW

1  concealment by a defendant will equitably estop the starting of the running of the statute of

2  limitations.

3        121.    Defendants Pacheco and Aurich recently pled guilty for their dishonest conduct,

4  specifically for lying about the cause of Mr. Price's death.

5        122.    Given defendants' lies, plaintiffs had no means of discovering the truth about

6  Mr. Price's death until defendant Pacheco's guilty plea and subsequent media coverage.

7        123.    CSP Sac has a history of tolerating misconduct amongst correctional officers.

8  Whistleblowers, known and unknown to plaintiffs, made complaints to defendants Baughman and

9  Lynch, the California Secretary of Corrections, and others.  Plaintiffs are informed and believe

10  and thereon allege those complaints documented dishonest conduct such as the planting of drugs

11  and other evidence, assaults on inmates, and falsifying evidence and reports among other issues.

12        124.    Whistleblowers are believed to have provided information and evidence to

13  investigators relating to Ronnie Price's death and/or the related cover up.  Defendants Baughman

14  and Lynch failed to take appropriate action concerning the serious circumstances of the present

15  case.

16        125.    Defendants Baughman and Lynch previously and repeatedly failed to take

17  appropriate action concerning serious instances of excessive force and unlawful conduct of the

18  guards and staff of CSP Sac.

19        126.    Defendants Baughman, Lynch and Does 3 through 15, were actually or

20  constructively aware of a pattern or culture of excessive force, unlawful conduct, lying and

21  dishonesty among correctional officers at CSP Sac.

22        127.    Defendants Baughman, Lynch and Does 5 through 15, maintained and permitted

23  policies, practices and customs which sanctioned such wrongful conduct.

24  **FIRST CAUSE OF ACTION**
**EXCESSIVE FORCE**

25  **(42 USC § 1983 Against Defendants Pacheco, Aurich, Bigney, Luna and Does 1 and 2)**

26        128.    Plaintiffs reallege and incorporate herein by reference each and every allegation

27  contained in the preceding paragraphs of this Amended Complaint.

28  ///

BARTH DALY LLP
ATTORNEYS AT LAW

129.   Defendant Pacheco brutally assaulted Ronnie Price, slamming him into the ground while Mr. Price was in handcuffs which ultimately resulted in Price's death, without justification. Defendant Pacheco's conduct constituted excessive force against plaintiff in violation of his Eighth Amendment rights.

130.   Defendants Aurich, Bigney, Luna and Doe Defendants 1 and 2 aided and abetted defendant Pacheco's wrongful conduct by failing to intervene in defendant Pacheco's wrongful conduct.

131.   The actions of defendants Pacheco, Aurich, Bigney, Luna and Doe Defendants 1 and 2 as alleged herein interfered with the enjoyment of Mr. Price's civil rights as guaranteed by the Eighth Amendment to the U.S. Constitution.

132.   As a direct and proximate result of defendants Pacheco, Aurich, Bigney, Luna and Doe Defendants 1 and 2's conduct, Ronnie Price suffered the damages alleged herein, including but not limited to unreasonable interference with his personal liberty, pain, suffering and the loss of his life.

133.   Defendants Pacheco, Aurich, Bigney, Luna and Doe Defendants 1 and 2's conduct caused Ronnie Price's death and deprived plaintiff JoAnn Price of her brother's love and affection.

134.   Plaintiffs allege the acts and conduct of defendants Pacheco, Aurich, Bigney, Luna, and Doe Defendants 1 and 2 were willful, malicious, intentional, oppressive and reckless and/or were done in willful and conscious disregard of plaintiff's rights, welfare and safety, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

WHEREFORE, plaintiffs pray for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION
### EXCESSIVE FORCE
**(Violation of Cal. Constitution Art. I §§ 1, 13 and Cal. Civil Code § 43:
Actionable under Cal. Civil Code § 52.1(b)/Bane Act)
(Against Defendants Pacheco, Aurich, Bigney, Luna and Does 1 and 2)**

135.   On behalf of decedent Price, plaintiffs re-allege and incorporate by reference paragraphs 1 through 134, as though fully set forth herein.

///

BARTH DALY LLP
ATTORNEYS AT LAW

136.     The actions of defendants Pacheco, Aurich, Bigney, Luna and Does 1 and 2, as alleged herein, interfered with the exercise and enjoyment of Ronnie Price's civil rights guaranteed by Article I, Sections 1 and 13 of the California Constitution.  Specifically, defendant Pacheco, with the acquiescence of Aurich, Bigney, Luna and Does 1 and 2, interfered with Ronnie Price's rights using threats, intimidation, and coercion when defendant Pacheco grabbed a handcuffed Price by the legs and drove him into the ground, causing Price to violently hit his head on the cement.

137.     Defendants Pacheco, Aurich, Bigney, Luna and Does 1 and 2's actions and failure to intervene in Pacheco's assault on Mr. Price constituted an excessive use of force, a violation of Ronnie Price's right to bodily integrity, and further interfered with Mr. Price's personal rights as guaranteed by California Civil Code Section 43.

138.     As a direct and proximate result of defendants' actions and/or omissions, Ronnie Price suffered unreasonable interference with his personal liberty, physical injury, pain and suffering, humiliation, emotional distress and other injuries.

139.     Defendants' violations of decedent's rights as guaranteed by California Civil Code Section 52.1 (Bane Act) entitles plaintiffs to compensatory and punitive damages and attorneys' fees as provided for in Sections 52.1(b) and 52 and requested herein.

140.     The aforementioned acts and/or omissions of said defendants were willful, intentional, wanton, reckless and/or accomplished with a conscious disregard for decedent's rights as secured by Civil Code Section 52.1, thereby entitling plaintiffs to an award of punitive damages under Section 52(b)(1).

WHEREFORE, plaintiffs pray for judgment as hereinafter set forth.

### THIRD CAUSE OF ACTION
### SUPERVISORY LIABILITY BASED ON CUSTOMS, PRACTICES OR POLICIES
#### (Survival Action - 42 U.S.C. § 1983)
#### (Against Defendants Baughman, Lynch, Villa and Does 3 through 15)

141.     On behalf of decedent Price, plaintiffs re-allege and incorporate by reference paragraphs 1 through 140, as though fully set forth herein.

///

BARTH DALY LLP
ATTORNEYS AT LAW

142.   Defendants Warden or Acting Warden Baughman, Associate Warden Lynch, Sgt. Villa and Does 3 through 15 acted individually and in concert with each other, under color of law, in the course and scope of their employment with CDCR, in violating Mr. Price's and plaintiff JoAnn Price's constitutionally protected rights.  Baughman, Lynch, Villa and Does 3 through 15 are sued in their individual capacities as supervisors, managers, and/or administrators and not in their professional capacities.

143.   At all times herein mentioned defendants Baughman, Lynch, Villa and Does 3 through 15 were responsible for the safety of inmates and for training officers to comply with CDCR Operations Manual, Article 2.

144.   At all times herein mentioned, defendants Baughman, Lynch, Villa and Does 3 through 15 had the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of training, supervision, control, employment, assignment and operation of CSP Sac where Mr. Price was under its sole control and custody.

145.   At all times herein mentioned, defendants Baughman, Lynch, Villa and Does 3 through 15 were responsible for devising and implementing the security protocols and procedures for the safe housing, classification, and transport of inmates at CSP Sac, as well as all procedures, policies and directives concerning the training, manner and practices by which correctional staff, including defendants Pacheco, Aurich, Lopez, Luna, Bigney and Does 1 and 2 were to handle and monitor inmates and to quell any disturbances at CSP Sac.

146.   The acts and omissions of defendants Baughman, Lynch, Villa and Does 3 through 15 and their subordinates, including, but not limited to, defendants Pacheco, Aurich, Lopez, Luna, Bigney and Does 1 and 2, deprived Mr. Price and plaintiffs of their protected rights under the laws of the United States, the U.S. Constitution, and the Constitution of the State of California.

147.   Prior to the death of Mr. Price, defendants Baughman, Lynch, Villa and Does 3 through 15 committed the following acts and omissions:

(a)   Failure to supervise and train their subordinates to ensure they were implementing and complying with policies and procedures to ensure the reasonable safety and security of inmates;

BARTH DALY LLP
ATTORNEYS AT LAW

(b)     Failure to supervise or train their subordinates to ensure they did not violate the law CDCR Operations Manual Section 51020.4, *et seq.*, defining, among other things, reasonable force and excessive force; CDCR Operations Manual Section 51020.7, defining deadly force and when deadly force may be used, CDCR Operations Manual Section 51020.10 and CDCR Operations Manual Section 51020.11 defining the application and immediate use of force; CDCR Operations Manual Section 51020.12 defining when a controlled use of force is permissible, CDCR Operations Manual Section 51020.12.3 requiring the use of video recording when a correctional officer engages in a controlled use of force; failure to install video cameras on the grounds of the prison and/or equip correctional staff with body cameras;

(c)     Failure to supervise or train their subordinates to ensure they did not violate the law CDCR Operations Manual Section 51020.17 defining use of force reporting requirements; CDCR Operations Manual Section 51020.17 requiring all involved staff file reports on the use of force;

(d)     Failure to supervise or train their subordinates to ensure they did not violate the law CDCR Operations Manual Section 31140.9 requiring staff to report the misconduct of their co-workers; CDCR Operations Manual Section 33030.3.1, code of conduct, providing, among other things, that CDCR employees are to be honest and follow the law; CDCR Operations Manual Section 33030.3.2 requiring CDCR employees to "possess the general qualifications of integrity, honesty, sobriety, dependability … [and] good judgment…."

(e)     Failure to discipline and establish procedures to correct past violations of CDCR policy, including, but not limited to the existence of the "code of silence," and to prevent the future violations of constitutional rights of inmates by condoning, ratifying, and/or encouraging the violation of inmates' constitutional rights including those of Mr. Price;

148.    Defendants Baughman, Lynch, Villa and Does 3 through 15 knew or should have known their subordinates, including but not limited to defendants Pacheco, Aurich, Luna, Lopez, Bigney and Does 1 and 2, were engaging in the above alleged acts, patterns and practices, and knew or reasonably should have known their subordinates' conduct posed a significant and foreseeable risk of harm to inmates, including Mr. Price, from a failure to properly train and

BARTH DALY LLP
ATTORNEYS AT LAW

1  supervise those subordinates, and thus depriving inmates including Mr. Price, of their

2  constitutional right to be free from cruel and unusual punishment pursuant to the Eighth

3  Amendment of the U.S. Constitution.  As a consequence, this also violated plaintiffs'

4  constitutional rights of familial relationship under the Due Process Clause of the Fourteenth

5  Amendment of the U.S. Constitution.

6       149.   Defendants Baughman, Lynch, Villa and Does 3 through 15 failed to prevent their

7  subordinates, including defendants Pacheco, Aurich, Luna, Lopez, Bigney and Does 1 and 2,

8  from engaging in the above alleged patterns, practices and acts.

9       150.   Defendants Baughman, Lynch, Villa and Does 3 through 15 were deliberately

10  indifferent to the need to supervise and train their subordinates, including defendants Pacheco,

11  Aurich, Luna, Lopez, Bigney and Does 1 and 2, and the lack of supervision and training actually

12  caused the constitutional harm or deprivation of rights alleged herein.  Subordinates, including

13  defendants Pacheco, Aurich, Luna, Lopez, Bigney and Does 1 and 2 disregarded the known and

14  obvious consequences that an omission in their training programs, lack of supervision and failure

15  to equip the facility or officers with cameras, would cause their subordinates to violate inmates'

16  constitutional rights.

17       151.   The above acts represent defendants Baughman, Lynch, Villa and Does 3 through

18  15's own culpable action or inaction in the training, supervision or control of their subordinates,

19  their knowledge of and acquiescence in the unconstitutional conduct of their subordinates for

20  which the complaint is made, or conduct that showed a reckless or callous indifference to the

21  rights of others.  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

22       152.   Defendants Baughman, Lynch, Villa and Does 3 through 15's conduct as alleged

23  herein was so closely related to the deprivation of Mr. Price and plaintiffs' rights as to be the

24  moving force that caused the ultimate injuries.

25       153.   Each defendant, Baughman, Lynch, Villa and Does 3 through 15, acted

26  individually and in concert with each other in violating Mr. Price's and, consequently plaintiffs',

27  constitutionally protected rights; and are jointly and severely liable for the damages demanded

28  herein.

{00039321}                           - 21 -

FIRST AMENDED COMPLAINT FOR DAMAGES                    2:21-CV-1610-DAD-DMC

1    154.    Plaintiff JoAnn Price brings this claim on her own behalf and as successor-in-

2    interest to the decedent Mr. Price on behalf of the Estate of Ronnie Price and seeks survival

3    damages under this claim for relief.

4    155.    As a direct and proximate result of the aforementioned customs, practices, policies

5    and/or procedures of said defendants, or as a result of defendants' failure to promulgate

6    appropriate policies or procedures, decedent Ronnie Price suffered the damages alleged herein,

7    including but not limited to physical pain and suffering, emotional distress, mental anguish and

8    loss of his life.  These defendants are liable to the Estate of Ronnie Price for survival damages

9    which include general damages for Mr. Price's pre-death pain and suffering (*Chaudhry v. City of

10   Los Angeles*, 751 F.3d 1096 (9th Cir. 2014)) and loss of life/loss of enjoyment of life (*Valenzuela

11   v. City of Anaheim*, No. 20-55372 (9th Cir. 2021)).

12   156.    As a direct and proximate result of the acts and omissions by defendants

13   Baughman, Lynch, Villa and Does 3 through 15, plaintiff suffered emotional distress and anguish,

14   loss of the love, comfort, support, services, companionship and society of her brother, and which

15   she will continue to suffer for the rest of her natural life justifying an award of damages to be

16   determined at trial.  These defendants are liable to plaintiff for the unwarranted state interference

17   in her familial relationship with her brother.

18   157.    Exemplary and punitive damages are requested and warranted under Title 42

19   United States Code Section 1983 against defendants Baughman, Lynch, Villa and Does 3 through

20   15 in their personal capacities because their conduct was callous, willful, wanton, malicious,

21   oppressive, and motivated by evil intent or involved reckless or conscious disregard for the

22   federally protected rights of Mr. Price and plaintiff and constitute the type of despicable conduct

23   that no civilized society should be forced to endure.

24   WHEREFORE, plaintiffs pray for judgment as hereinafter set forth.

25   ///

26   ///

27   ///

28   ///

BARTH DALY LLP
ATTORNEYS AT LAW

**FOURTH CAUSE OF ACTION**
**WRONGFUL DEATH**
**(Cal. Code of Civil Procedure § 377.60,** *et seq.***)**
**(Against Defendants Pacheco, Aurich, Bigney, Luna and Does 1 and 2)**

158.    On behalf of decedent Price, plaintiffs re-allege and incorporate by reference paragraphs 1 through 157, as though fully set forth herein.

159.    Plaintiff JoAnn Price is the sister of the decedent Ronnie Price, who has no surviving spouse or surviving children or issue of children.

160.    The acts and/or omissions by defendants Pacheco, Aurich, Bigney, Luna and Does 1 and 2 as detailed below directly and proximately caused the wrongful death of Ronnie Price and were the direct and proximate cause of plaintiffs' injuries entitling plaintiffs to recover damages pursuant to Code of Civil Procedure Section 377.60, *et seq.*

WHEREFORE, plaintiffs pray for judgment as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
**FAILURE TO PROTECT**
**(42 U.S.C. § 1983)**
**(Against Defendants Baughman, Lynch, Villa and Does 3 through 15)**

161.    On behalf of decedent Price, plaintiffs re-allege and incorporate by reference paragraphs 1 through 160, as though fully set forth herein.

162.    The aforementioned acts and/or omissions of defendants Baughman, Lynch, Villa and Does 3 through 15 in failing to properly investigate prior claims of physical abuse, excessive, force, and the existence of a "code of silence" were done with a clear disregard for Ronnie Price's rights under the Eighth Amendment.

163.    Defendants Baughman, Lynch, Villa and Does 3 through 15 and other supervisory and correctional officers employed at CSP Sac failed to take reasonable steps to protect inmates, including but not limited to the failure to install video monitoring and/or body cameras at CSP Sac, even though they knew and were aware that allegations of violence and dishonesty by prison staff were common.

164.    Defendants Baughman, Lynch, Villa and Does 3 through 15 observed and received information that would lead any reasonable person to believe staff misconduct occurred and they

BARTH DALY LLP
ATTORNEYS AT LAW

1    failed to take reasonable steps to prevent this misconduct.  These decisions and conditions put

2    Ronnie Price at substantial risk of suffering serious harm and death and he in fact suffered serious

3    harm and death.

4         165.    Defendants Baughman, Lynch, Villa and Does 3 through 15 did not take

5    reasonable available measures to abate the risk, even though a reasonable individual in the

6    circumstances would have appreciated the high degree of risk involved and obvious potential

7    consequences.

8         166.    By not taking such measures, defendants Baughman, Lynch, Villa and Does 3

9    through 15 caused Ronnie Price's injuries and death.

10        167.    As a direct and proximate result of said acts and/or omissions by defendants

11   Baughman, Lynch, Villa and Does 3 through 15, Ronnie Price suffered injuries, death and

12   damages as alleged herein and to which his estate is entitled to recover damages for pain and

13   suffering, mental and emotional distress, costs and attorneys' fees.

14        168.    The aforementioned acts and/or omissions of said defendants were willful, wanton,

15   malicious and done with conscious or reckless disregard for the rights and safety of Ronnie Price

16   thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.

17                              **JURY DEMAND**

18        Plaintiffs hereby demand a jury trial on all issues so triable.

19                                 **PRAYER**

20        WHEREFORE plaintiffs request entry of judgment in their favor and against defendants

21   as follows:

22        (1)    For compensatory damages in an amount to be determined at trial;

23        (2)    For punitive damages against individual defendants in an amount to be

24   proven at trial;

25        (3)    For reasonable costs of this suit and attorneys' fees; and

26   ///

27   ///

28   ///

BARTH DALY LLP
ATTORNEYS AT LAW

{00039321}                              - 24 -

FIRST AMENDED COMPLAINT FOR DAMAGES                    2:21-CV-1610-DAD-DMC

1

       (4)     For such further relief as the Court may deem proper, just and appropriate.

2

Dated:  February 21, 2023.         Respectfully submitted,

3

                    BARTH DALY LLP

4

5

                    By     /s/ Kresta Nora Daly
                          KRESTA NORA DALY

6

7

                    Attorneys for Plaintiff JOANN PRICE, RONNIE PRICE, Deceased; and the ESTATE OF RONNIE PRICE, and his Successor in Interest

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28