IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JoANN PRICE, et al., | No. 2:22-CV-1610-DAD-DMC-P |
| Plaintiffs, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| ARTURO PACHECO, et al., | |
| Defendants. | |
| AND RELATED COUNTERCLAIMS. | |

Plaintiffs, who are proceeding with retained counsel, bring this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiffs are the estate and successor-in-interest of Ronnie Price, who is deceased. Pending before the Court is Defendant Lynch's motion to dismiss. See ECF No. 38. Defendant has filed a request for judicial notice in support of his motion. See ECF Nos. 38-1 and 38-2. Plaintiffs have filed an opposition. See ECF No. 40. Defendant has filed a reply. See ECF No. 44. Following a hearing before the undersigned on June 2, 2023, the matter was submitted.

///

///

///

1

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

/ / /

/ / /

/ / /

2

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I. PLAINTIFFS' ALLEGATIONS

This action proceeds on Plaintiffs' second amended complaint. See ECF No. 36. Plaintiffs name the following as defendants: (1) Arturo Pacheco; (2) Ashley Aurich; (3) Jeffrey Bigney; (4) Arturo Luna; (5) Dorian Lopez; (6) Brenda Villa; (7) Jeffrey Lynch; and (8) David Baughman. See id. at 2-4. All Defendants are alleged to be employees of the California Department of Corrections and Rehabilitation (CDCR). See id.

Plaintiffs allege that the CDCR Health Care Department Operations Manual, section 2.1.19, requires the prison warden or his/her designee to notify an inmate's next of kin within 24 hours of the death, serious illness, or serious injury of the inmate. See id. at 6. According to Plaintiffs, Mr. Price was assaulted on September 15, 2016, by Defendant Pacheco as Mr. Price was being escorted between buildings by Pacheco and Defendant Aurich. See id. Mr. Price was being moved from Building 6A to Building 7A on instructions from Defendant Villa. See id. Mr. Price asked to be taken to Administrative Segregation rather than move to Building 7A to be housed with a new cellmate. See id. at 6-7. Mr. Price agreed to be handcuffed and escorted to Administrative Segregation. See id. at 7. Plaintiffs allege that Defendant Luna and

Officer Roger Lynch were present for this conversation. See id. While Defendants Pacheco, Aurich, and Luna escorted Mr. Price, Officer Lynch remained behind to collect Mr. Price's belongings. See id.

As Mr. Price was being escorted, Defendant Pacheco informed him that he was being taken to his new cell in Building 7A instead of Administrative Segregation. See id. Upon being so informed, Mr. Price stated he was not going to a new cell and stopped walking. See id. According to Plaintiffs:

> 31.   Defendant Pacheco squatted down, placed his shoulder on Mr. Price's buttock area, grabbed Mr. Price's quadriceps and pushed Mr. Price forward with his body weight. Mr. Price still had his hand handcuffed behind his back. Defendant Pacheco's unjustified use of force caused Mr. Price to fall violently forward onto his face impacting the concrete floor.

Id.

Plaintiffs contend that the impact of Mr. Price's head striking the floor caused him to break his jaw and several teeth, as well as injure his right shoulder. See id. Plaintiffs further contend that Defendants Aurich and Luna made no attempts to prevent Defendant Pacheco from slamming Mr. Price to the concrete floor. See id. Plaintiffs also assert that Defendant Bigney would have been able to see what happened had he not violated CDCR policy by covering his windows. See id.

Plaintiffs allege that, after Mr. Price crashed face-first into the concrete floor, Defendant Aurich sounded the alarm, and Defendants Villa, Bigney, and Lopez were among the first to respond. See id. Defendant Villa instructed Defendant Aurich to get a camera and take photos. See id. Defendant Lopez and Officer Todd Jones relieved Defendant Pacheco and escorted Mr. Price to the medical clinic where it was immediately determined that Mr. Price would need to be sent to UC David Medical Center for emergency medical attention. See id. at 8.

On the day of the incident, Defendant Villa sent an email to Defendants Bigney, Aurich, Luna, Lopez, as well as Officer Jones, with the subject line IR 0824." Id. The email included a document titled "IR Price 0824.doc." Id. The email contained the phrase "Resisting a Peace Officer Resulting in the UOF (Physical)." Id. Although required to do so, Defendant Villa did not submit a report about the September 15, 2016, incident. See id. Nor did Defendant Villa

4

collect a report from Defendant Luna, who was present during the entire incident. See id. According to Plaintiffs, after responding officers left the scene, Defendant Villa spoke with Defendants Pacheco, Aurich, Lopez, and Bigney "regarding who was going to be documented in the incident reports." Id. Plaintiffs allege that "[t]here was an agreement between defendants Villa, Pacheco, Lopez, Aurich and Bigney not to include references to defendant Luna in the incident report." Id. According to Plaintiffs, Defendant Luna was omitted from any incident report after Defendant Villa instructed Defendant Aurich to "keep it between the Block," referring to the fact that Defendant Luna worked in a different building. Id. Plaintiffs contend this was an "act of engaging in a code of silence and encouraging staff to do the same." Id.

Plaintiffs allege that Defendant Villa received reports from Defendants Lopez, Aurich, Pacheco, Bigney, and Officer Jones. See id. According to Plaintiffs, Defendant Villa made substantive changes to several of these reports, removing factual information and adding specific details which did not accurately reflect the events of September 15, 2016. See id. at 9. Defendants Lopez, Aurich, Pacheco, and Bigney signed the allegedly falsified reports. See id. Though Defendant Luna initially drafted a report, this report was not submitted despite a requirement that he do so, allegedly on instruction from Defendant Pacheco. See id. Plaintiffs allege that, later, Defendant Luna acknowledged that he knew Defendant Pacheco had used excessive force against Mr. Price and failed to report this wrongful conduct. See id.

Plaintiffs state that Defendant Luna was interviewed by CDCR's Office of Internal Affairs (OIA) on two separate occasions. See id. At the first interview, Defendant Luna denied having written a report about Defendant Pacheco's use of excessive force against Mr. Price. See id. Plaintiffs claim that, at the second OIA interview, Defendant Luna "lied about not having drafted a report, claiming he should have done so, until he was confronted with a copy of the report he drafted but did not submit." Id. Plaintiffs also claim that "Defendant Luna lied in his reports and during the OIA interviews in an attempt to cover his and his codefendants' wrongful conduct." Id.

///

///

5

Plaintiffs state that Defendant Bigney wrote a report about the September 15, 2016, incident. See id. According to Plaintiffs, this report involved several drafts but the final version contained "material misrepresentations designed to hide the fact defendant Luna was present during the assault." Id. Plaintiffs further contend that Defendant Bigney lied during two OIA interviews concerning his conduct and the conduct of other officers. See id. Plaintiffs claim this was doe in an attempt to cover his and his codefendants' wrongful conduct. See id. at 10. Plaintiffs similarly allege with respect to Defendants Lopez, Pacheco, Aurich, and Villa. See id. at 10-11.

Plaintiffs allege that Defendants Villa, Pacheco, Aurich, Luna, Lopez, and Bigney were all fired on June 25, 2018, due to the foregoing conduct. See id. at 11.

Plaintiffs next allege that, on October 3, 2016, Defendant Pacheco sent a text to Defendant Aurich stating "I work with snitches." Id. Defendant Luna was interviewed by OIA this same day. See id. According to Plaintiffs, after learning that Defendant Luna was being interviewed by OIA, Defendant Pacheco sent the aforementioned text to Defendant Aurich as "part of a pattern and practice among the correctional officers at CSP [California State Prison] Sac [Sacramento] to maintain a code of silence and to harass and intimidate any officer who violated the code." Id. Plaintiffs claim that, on February 19, 2017, Defendant Lopez sent a text to an unknown individual in which Defendant Lopez stated "LOL! Code of Silence homie" and "you know it." Id.

Mr. Price died on September 17, 2016, as a result of injuries sustained in the September 15, 2016, incident. See id. at 13. According to Plaintiffs, the Sacramento County Coroner later ruled that Mr. Price's death was a homicide. See id. Plaintiffs state this ruling occurred on a "date unknown, but before June 1, 2018." Id. While Plaintiffs contend that Mr. Price's next of kin were not notified of Mr. Price's death "consistent with the requirements of CDCR Health Care Department Operations Manual 3.1.19," Plaintiff acknowledge that Mr. Price's next of kin "was informed he died after resisting lawful commands by a correctional officer." Id. Plaintiffs allege: "Due to defendants' failure to properly notify Mr. Price's next of kin of the true cause of his death plaintiffs did not and could not file a claim under California Tort

Claims Act Government Code §§ 810, *et seq.*" Id.

Plaintiffs affirmatively allege in the second amended complaint that the statute of limitations is tolled. See id. at 14-17.

Plaintiff also allege that Defendant Pacheco pleaded guilty to two counts of civil rights violations and two counts of falsification of records. See id. at 15. Defendant Aurich also pleaded guilty to one count of falsification of records. See id.

## II. PROCEDURAL HISTORY

This action was commenced with Plaintiffs' original complaint against Defendants Pacheco, Aurich, and Lynch filed on September 14, 2022. See ECF No. 1. On October 19, 2022, the Court determined Plaintiffs' complaint was appropriate for service on the three named defendants. See ECF No. 3. On December 29, 2022, Defendant Lynch filed a waiver of service of process. See ECF No. 13. On January 4, 2023, service of process was returned executed as to Defendants Aurich and Pacheco. See ECF Nos. 16 and 17.

Pursuant to the parties' stipulation, Plaintiffs filed a first amended complaint on February 21, 2023. See ECF No. 29. In this pleading, Plaintiffs added Bigney, Villa, and Baughman as named defendants. See id. at 1. On March 7, 2023, Defendant Lynch filed a motion to dismiss the first amended complaint. See ECF No. 31. Defendant Aurich joined in that motion. See ECF No. 32.

On April 4, 2023, Plaintiffs filed the operative second amended complaint, again pursuant to stipulation. See ECF No. 36. In this pleading, Plaintiffs added Luna and Lopez as named defendants. See id. at 1. The filing of the second amended complaint rendered Defendant Lynch's motion to dismiss moot. Defendant Lynch's motion to dismiss the second amended complaint was filed on April 17, 2023. See ECF No. 38. No other defendants have joined in this motion. Though served, Defendant Pacheco has not appeared in the action. Service of process has been approved for the remaining defendants. See ECF No. 47. Summons was returned executed as to Defendants Bigney, Lopez, Baughman, Luna, and Villa on July 11 and 12, 2023. See ECF Nos. 50-54. Defendant Pacheco filed an answer on July 14, 2023. See ECF No. 55.

Defendant Luna filed an answer on August 15, 2023. See ECF No. 65. Defendant Luna also filed a crossclaim on August 15, 2023. Defendant Aurich has been voluntarily dismissed pursuant to the parties' stipulation.

Defendant Baughman filed a motion to dismiss on August 1, 2023. See ECF No. 61. That matter is set for hearing before the undersigned on November 1, 2023.

### III. DISCUSSION

In his motion to dismiss, Defendant Lynch argues: (1) the action is barred by the statute of limitations; and (2) even if not, Plaintiffs fail to state a claim upon which relief against Defendant Lynch can be granted. See ECF No. 38. Defendant has filed a request for judicial notice of CDCR Health Care Department Operations Manual section 3.1.19, attached as Exhibit A, in support of his motion. See ECF Nos. 38-1 and 38-2.

**A.   Statute of Limitations**

For claims brought under 42 U.S.C. § 1983, the applicable statute of limitations is California's statute of limitations for personal injury actions. See Wallace v. Kato, 549 U.S. 384, 387-88 (2007); Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) ("[f]or actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions."); Jackson v. Barnes, 749 F.3d 755, 761 (9th Cir. 2014); Wilson v. Garcia, 471 U.S. 261, 280 (1985); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988). In California, there is a two-year statute of limitations for personal injury actions such as § 1983 cases. See Cal. Civ. Proc. Code § 335.1; Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004).

Notwithstanding the application of the forum's state law regarding the statute of limitations, including statutory and equitable tolling, in the context of a § 1983 action it is "federal law" which "governs when a claim accrues." Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999) (citing Elliott v. City of Union City, 25 F.3d 800, 801-02 (9th Cir.1994)). "A claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." Id. (citing Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir. 1996)); see also TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).

Plaintiffs concede that, absent equitable tolling, the action is untimely. See ECF No. 40. In the second amended complaint and their opposition to Defendant's motion to dismiss, Plaintiffs allege that commencement of the two-year limitations period was equitably tolled. See id. at 4-8; see also ECF No. 36 (second amended complaint).

Regarding equitable tolling, Defendant argues:

> . . . Under California's equitable tolling doctrine, the statute of limitations is tolled when an individual has several formal legal remedies, including administrative remedies, and reasonably and in good faith pursues one. *Jones v. Tracy Sch. Dist.*, 27 Cal.3d 99, 108 (1980). Tolling focuses on a timely filed claim, which does not appear to be the case here. She is arguing a different theory, that the defendants are equitably estopped from asserting the statute of limitations defense because of alleged fraudulent concealment. (ECF 29, ¶¶ 104-120.) Plaintiff does not dispute that, but for either theory, her claim would be time barred. (*Id*.)

ECF No. 38, pg. 4.

Defendant adds that the second amended complaint contains "certain allegations against Defendants Pacheco and Aurich," but no factual allegations that would support an equitable estoppel theory as to Plaintiffs' claims against Lynch. See id.

Defendant's argument is well-taken. The second amended complaint contains no factual allegations to suggest that Defendant Lynch concealed anything about the September 15, 2016, incident. As Plaintiffs acknowledge in the second amended complaint, Lynch did not become the prison warden until four years after the incident. See ECF No 36, pg. 12. Plaintiffs reference the requirement of the Health Care Department Operations Manual, section 3.1.19 which requires notification of an inmate's next of kin when the inmate dies or is seriously injured. See ECF No. 38-2 (Exhibit A to Defendant's request for judicial notice). Plaintiffs acknowledge in the second amended complaint, however, that they did in fact receive such notice, though they contend it was not sufficient because they were not notified that the cause of death was ruled a homicide. See ECF No. 36, pg. 11. This argument is not persuasive because nothing in section 3.1.19 requires such specific notification of the cause of death, only notification that a death or serious injury has occurred.

///

///

At the hearing, the Court addressed the issue of equitable estoppel and inquired as to whether Plaintiffs can establish a factual bridge between Lynch and some kind of fraudulent concealment such as would allow for equitable estoppel to apply. Plaintiffs admitted that Lynch did not draft any of the false reports. But, according to Plaintiffs, Lynch is hiding behind the fraudulent conduct of other guards. Also according to Plaintiffs, Ms. Price had no independent way to find out what happened: Lynch tells a lie, then learns it was a lie, and doesn't act to disclose the truth.

Defendant Lynch argued at the hearing that, consistent with section 3.1.19, there is no requirement that any defendant specifically disclose issues about a death other than there was a death. Defendant argued that the caselaw that the defendant himself has to make the fraudulent claim for equitable estoppel to be considered.

The Court agrees with Defendant Lynch that there is no evidence that Lynch committed a fraudulent concealment. This represents the factual gap between Lynch and estoppel. There are no allegations to support the notion that Lynch made a false presentation and had an obligation to correct anything. There are simply too many bridges to be built to establish the necessary link and, upon examination at the hearing, Plaintiffs' counsel was unable to present an offer of proof that would cause the Court to recommend leave to amend.

The Court finds that equitable estoppel does not apply, and that Plaintiffs' claims against Defendant Lynch are barred by the applicable statute of limitations.

**B.     Failure to State a Claim**

The crux of Defendant's argument is that Plaintiffs' complaint fails to assert sufficient factual allegations to establish that he is liable as a supervisor for any of his claims.

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government

officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

Defendant argues:

> Here, Plaintiff's allegations are that Lynch's position as an Assistant Warden generally charged him with responsibility to supervise and train the other defendants. Plaintiff cites several CDCR Operations Manual sections. But Plaintiff does not allege how Lynch was responsible for, or otherwise involved in, the policies or practices or customs Plaintiff claims are at issue. It is not enough to merely allege Lynch had a supervisory role as the facility's Assistant Warden, and that because of that role, he is responsible for the constitutional deprivation suffered by Plaintiff.

ECF No. 38, pg. 6.

Again, the Court finds that Defendant's argument is well-taken. As Defendant notes, Plaintiffs' allegations against him essentially rest on the notion of respondeat superior, which fails to state a claim under § 1983. At the hearing, the Court inquired of Plaintiffs' counsel how the defects identified by Defendant could be cured by amendment. Plaintiffs' counsel stated that Plaintiffs have in fact recently discovered new facts which, if alleged in an amended pleading, would resolve Defendant's concerns. According to Plaintiffs, this new information was revealed in discovery disclosures in another case. More specifically, the new facts support a failure-to-supervise theory. On further examination, however, Plaintiffs' counsel was unable to

identify or describe this newly discovered evidence.

The Court next asked whether Defendant Lynch had any supervisory responsibilities prior to becoming warden four years after the incident. Defendant's counsel stated that Lynch he had no direct supervisory responsibility until he became warden in 2020. According to counsel, Lynch had no involvement whatsoever with the specific defendants involved in the September 2016 incident.

Plaintiffs' counsel disagreed and stated that Lynch has had supervisory responsibility for the last 20 years. The Court inquired as to facts tying those responsibilities to the September 2016 incident. Specifically, the Court asked whether Plaintiffs could cite to facts showing that Lynch knew or should have known about the circumstances of that incident. Plaintiffs' counsel responded and said the facts alleged show that Lynch should have known that Pacheco was a "loose cannon." According to Plaintiffs' counsel, Lynch knew or should have known that Pacheco posed a danger to inmates in general.

Finally, the Court asked counsel whether there is evidence that it was Lynch's responsibility to act. Plaintiffs' counsel responded in the affirmative, adding that Lynch is responsible as an overseer for the training of his subordinate officers. Plaintiffs' counsel stated that Plaintiffs have obtained information indicating that Lynch knew about a pattern of bad behavior by prison guards. Again, Plaintiff's counsel stated this information has been gleaned from discovery in another case. And again, Plaintiff's counsel was unable to produce or describe this evidence. Based on Plaintiffs' proffer, the Court is left with nothing other than the allegations in the operative complaint. Consistent with the Court's findings above, Plaintiffs have not been able to present an offer of proof at the hearing sufficient to persuade the Court that amendment would not be futile.

The Court finds that Plaintiffs' claims against Defendant Lynch cannot proceed and that Defendant Lynch should be dismissed.

///

///

///

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1. Defendant Lynch's request for judicial notice, ECF No. 38-1, 38-2, be GRANTED.

2. Defendant Lynch's motion to dismiss, ECF No. 38, be GRANTED and that Lynch be dismissed as a defendant to this action with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 16, 2023

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

13