V. James DeSimone (SBN: 119668)
vjdesimone@gmail.com
Ryann E. Hall (Of-Counsel)(SBN: 306080)
rhall@bohmlaaw.com; VJD000103@bohmlaw.com
**V. JAMES DESIMONE LAW**
13160 Mindanao Way, Suite 280
Marina del Rey, California 90292
Telephone:  310.693.5561
Facsimile:   323.544.6880

Anne Della Donna (SBN:138420)
annee@delladonnalaw.com
**LAW OFFICE OF ANNEE DELLA DONNA**
301 Forest Ave
Laguna Beach, California 92651

Attorneys for Plaintiffs, JOANN PRICE, successor in interest to Ronnie Price, deceased; and the ESTATE OF RONNIE PRICE; and his successors in interest

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANN PRICE, successor in interest to Ronnie Price, deceased; and the ESTATE OF RONNIE PRICE; and his successors in interest,<br><br>    PLAINTIFFS,<br><br>    v.<br><br>ARTURO PACHECO, ASHLEY MARIE AURICH, JEFFREY BIGNEY, ARTURO LUNA, DORIAN LOPEZ, BRENDA VILLA, DAVID BAUGHMAN, JEFFREY LYNCH and DOES 1 through 15, inclusive, in their official and personal/individual capacities.<br><br>    DEFENDANTS. | Case No: 2:22-cv-1610 DAD-DMC (PC)<br>Assigned to Hon. Dennis M. Cota<br><br>**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**<br><br>1. Violation of Civil Rights 42 U.S.C. Section 1983— Eighth Amendment—Convicted Prisoner's Claim of Excessive Force<br>2. Violation of California Civil Code Section 52.1 (Bane Act)<br>3. Supervisory Liability for Violation of Civil Rights 42 U.S.C. Section 1983<br>4. Wrongful Death<br>5. Violation of Civil Rights 42 U.S.C. Section 1983— Eighth Amendment—Convicted Prisoner's Claim of Failure to Protect<br>6. Concealment<br>7. Intentional Misrepresentation<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs JoAnn Price, and the Estate of Ronnie Price upon information and belief, allege the following:

**INTRODUCTION**

1.      This civil rights action seeks compensatory and punitive damages from defendants for brutally assaulting Mr. Price and causing him catastrophic injuries resulting in his death and additionally conspiring to falsify and cover up his assault, injuries and death. Mr. Price was assaulted while handcuffed and without justification while incarcerated at CSP Sacramento, located at 100 Prison Road, Represa, California (hereinafter "CSP Sac").

2.      On or about September 15, 2016, Mr. Price was assaulted by the California Department of Corrections and Rehabilitation [hereinafter CDCR] guard Arturo Pacheco and taken to University of California Davis Medical Center [hereinafter UC Davis Medical Center] for treatment where he died two days later as a result of the injuries suffered in the assault. Unbeknownst to the Price family,  multiple prison guards falsified reports and conspired to cover up the assault and other felonious conduct toward Mr. Price.

**JURISDICTION AND VENUE**

3.      This is an action for money damages brought pursuant to Title 42 of the United States Code, Sections 1983 and 1988; and the Eighth and Fourteenth Amendments of the United States Constitution against various correctional employees then working at CSP Sac.

4.      Jurisdiction is conferred upon this Court by Title 42 of the United States Code, Sections 1331 (federal question) and 1343(a) (civil rights). Jurisdiction is conferred for the remaining claims by Title 28, United States Code Section 1367(a) because they form part of the same case or controversy.

5.      Venue lies in the Eastern District of California pursuant to Title 28, United States Code Section 1391(b), as the unlawful acts and practices alleged herein occurred in and around the City of Represa, County of Sacramento, California, which is within this judicial district.

**PARTIES**

6.      Plaintiff JoAnn Price is the sister of Mr. Price. JoAnn Price is, and was at all times mentioned herein, an individual and citizen of the United States of America, resident of Los Angeles County.

7.      At all relevant times and specifically in and around September 2016, defendant

1    Arturo Pacheco was an employee of CDCR. Defendant Pacheco was acting under color of state

2    law when he assaulted Mr. Price and later conspired to falsify and cover up his misconduct in

3    causing the death of Mr. Price. Defendant Pacheco is sued in both his professional and

4    individual/personal capacities for his own culpable actions.

5            8.      At all relevant times and specifically in and around September 2016, defendant

6    Jeffrey Bigney was an employee of CDCR. Defendant Bigney was acting under color of state law

7    when he conspired to falsify and cover up the misconduct of other CDCR employees in assaulting

8    and causing the death of Mr. Price. Defendant Bigney is sued in both his professional and

9    individual/personal capacities for his own culpable actions.

10           9.      At all relevant times and specifically in and around September 2016, defendant

11   Arturo Luna was an employee of CDCR. Defendant Luna was acting under color of state law

12   when he conspired to falsify and cover up the misconduct of other CDCR employees in assaulting

13   and causing the death of Mr. Price. Defendant Luna is sued in both his professional and

14   individual/personal capacities for his own culpable actions.

15           10.     At all relevant times and specifically in and around September 2016, defendant

16   Dorian Lopez was an employee of CDCR. Defendant Lopez was acting under color of state law

17   when he conspired to falsify and cover up the misconduct of other CDCR employees in assaulting

18   and causing the death of Mr. Price. Defendant Lopez is sued in both his professional and

19   individual/personal capacities for his own culpable actions.

20           11.     At all relevant times and specifically in and around September 2016, defendant

21   Brenda Villa was an employee of CDCR. Defendant Villa was acting under color of state law

22   when she conspired to falsify and cover up the misconduct of other CDCR employees in

23   assaulting and causing the death of Mr. Price. Defendant Villa was a Sergeant within CDCR and

24   was the direct supervisor of several of the defendants in this case. Defendant Villa is sued in both

25   her professional and individual/personal capacities for her own culpable actions.

26           12.     Defendant Jeffrey Lynch was, at all times mentioned, employed by CDCR, as

27   Warden and/or Assistant Warden of CSP Sac, which is a state-run prison under CDCR. Defendant

28   Lynch was at all times mentioned responsible for the oversight, maintenance and policy making

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                                                  V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

decisions of CSP Sac. He was at all relevant times herein responsible for setting and enforcing the policies, customs and practices of CSP Sac. In addition, defendant Lynch was responsible for the supervision, training and hiring of persons and employees working within CSP Sac including correctional officers and other employees within CSP Sac. Defendant Lynch is sued in both his professional and individual/personal capacities for his own culpable action or inaction in the training, supervision or control of his subordinates, or for his acquiescence in the constitutional deprivations which this complaint alleges, or for conduct that showed a reckless or callous indifference to the rights of others.

13.     Defendant David Baughman was, at all times mentioned, employed by CDCR, as Warden or Acting Warden of CSP Sac, which is a state-run prison under CDCR. Defendant Baughman was at all times mentioned responsible for the oversight, maintenance and policy making decisions of CSP Sac. He was at all relevant times herein responsible for setting and enforcing the policies, customs and practices of CSP Sac. In addition, defendant Baughman was responsible for the supervision, training and hiring of persons and employees working within CSP Sac including correctional officers and other employees within CSP Sac. Defendant Baughman is sued in both his professional and individual/personal capacities for his own culpable action or inaction in the training, supervision or control of his subordinates, or for his acquiescence in the constitutional deprivations which this complaint alleges, or for conduct that showed a reckless or callous indifference to the rights of others, including the Price family.

14.     The true names of Does 1 through 15, inclusive, are unknown to plaintiffs at this time. Defendants are current and former employees of CDCR. Defendants were acting under color of state law when they conspired to cover up the misconduct of other CDCR employees in causing the death of Mr. Price. Doe defendants are currently being sued in their individual capacities. Plaintiffs believe the identities of defendants will be revealed through discovery and will permit plaintiffs to amend this complaint to state the same.

15.     Plaintiffs are informed and believe, and thereon allege that each defendant is, and at all times mentioned was, the agent, employee, representative successor and/or assignee of each other defendant. Each defendant, in doing the acts, or in omitting to act as alleged in this

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                                    V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

complaint, was acting within the scope of his or her actual and apparent authority or the alleged acts and omissions of each defendant as agent were subsequently adopted and ratified by each other defendant as principal. Plaintiffs are informed and believe that each of the individual defendants was in some way responsible for the constitutional violations and torts alleged in this complaint.

16.     In committing the acts alleged in this complaint, defendants acted knowingly, maliciously and with reckless or callous disregard for the constitutional rights of Mr. Price, justifying an award of punitive damages under federal law against each defendant.

## FACTS

17.     At all times relevant herein, all wrongful and unlawful acts described herein were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

18.     California Code of Regulations, Title 2, Section 172 provides in relevant part "All ... employees in the state civil service shall possess the general qualifications of integrity, honesty, dependability, industry, thoroughness, accuracy, good judgment, imitative, resourcefulness, courtesy.. The foregoing general qualifications shall be deemed to be a part of the personal characteristics of the minimum qualifications .."

19.     CDCR's Department Operations Manual, 33030.3.3 Law Enforcement Code of Ethics provides, in pertinent part: "As employees and appointees of the Department, we are expected to perform our duties, at all times, as follows: Demonstrate professionalism, honesty, and integrity; Accept responsibility for our actions and their consequences; Appreciate differences in people, their ideas, and opinions; Treat fellow employees, inmates, wards, parolees, victims, their families, and the public with dignity and respect; Respect the rights of others and treat them fairly regardless of race, color, national origin, ancestry, gender, religion, marital status, age, disability, medical condition, pregnancy, sexual orientation, veteran status, or political affiliation; Comply with all applicable laws and regulations .."

20.     CDCR Health Care Department Operations Manual 3.1.19 requires the Warden or his/her designee to notify an inmate's next of kin within 24 hours of death, serious illness or

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                                     V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

1    serious injury.

2        21.    The code of silence is a term used to denote the informal code of silence among

3    correctional [and other] officers not to report on a colleague's errors, misconducts, or crimes.

4        22.    CDCR employees, and specifically those assigned to CSP Sac, who violate the

5    code of silence by reporting misconduct by their fellow officers are harassed and retaliated

6    against. For example, in November 2016 a man named Milton Beverly, Jr., died while at CSP

7    Sac. Correctional Officers claimed Beverly hung himself in his cell. However, one officer was

8    prepared to testify another inmate confessed to murdering Beverly. According to that officer the

9    evidence of the murder was covered up. The officer reported the misconduct to defendants

10   Baughman and Lynch who failed to act and Plaintiffs are informed and believe that the officer

11   who reported misconduct was harassed and retaliated against after doing so.

12       23.    Beginning no later than 2016, one or more officers filed multiple reports with

13   defendants Baughman and Lynch, as well as other high-ranking employees of CDCR, alleging

14   rampant corruption and the continued existence of a "code of silence" within CSP Sac. Despite

15   these reports, it took nearly two years for CDCR to complete its investigation into the allegations

16   in the instant case. That allowed at least one defendant, Pacheco, to be sued for excessive force

17   that occurred on a subsequent occasion.

18                        **Facts Relating to Ronnie Price's Death**

19       24.    On September 15, 2016, Mr. Price was assaulted by defendant Arturo Pacheco as

20   defendant Pacheco and defendant Aurich escorted Mr. Price between buildings.

21       25.    On September 15, 2016, Defendant Pacheco was instructed by Sergeant Brenda

22   Villa to move Mr. Price from a cell in Building 6A to a cell in Building 7A as part of a cell

23   compaction. Building 6A and Building 7A are and were located on the grounds of CSP Sac, where

24   Mr. Price was incarcerated.

25       26.    Defendant Pacheco and defendant Aurich went to Building 6A to get Mr. Price.

26   Officer Pacheco informed Mr. Price he was being moved to another cell with a new cellmate. Mr.

27   Price requested to be taken to Administrative Segregation instead of being housed with the

28   proposed new cell mate. Mr. Price agreed to be handcuffed and escorted to Administrative

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                                              V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

1    Segregation.

2         27.    Defendant Arturo Luna and Officer Roger Lynch were also present for this

3    conversation.

4         28.    Defendants Pacheco, Aurich and Luna escorted Mr. Price. Officer Lynch stayed

5    behind to collect Mr. Price's belongings. Defendant Bigney opened the yard door for defendants

6    Aurich, Luna and Pacheco.

7         29.    Defendant Pacheco informed Mr. Price he was being taken to his new cell. Mr.

8    Price stated he was not going to the new cell and stopped walking.

9         30.    While being observed by Defendants Aurich, Luna, and Bigney, Defendant

10   Pacheco squatted down, placed his shoulder on Mr. Price's buttock area, grabbed Mr. Price's

11   quadriceps and intentionally pushed Mr. Price forward with his body weight while Price still had

12   his hands handcuffed behind his back. Defendant Pacheco's unjustified use of force caused Mr.

13   Price to fall violently forward onto his face impacting the concrete floor.

14        31.    The impact of Mr. Price's head striking the concrete floor caused him to break his

15   jaw, several teeth and injure his right shoulder.

16        32.    Defendants Aurich and Luna made no attempts to prevent defendant Pacheco from

17   slamming Mr. Price into the cement.

18        33.    Defendant Bigney could have seen this incident from his vantage point had he not

19   violated CDCR policy and covered his windows, blocking his view.

20        34.    Despite the fact the technology existed, CSP Sac did not have video surveillance

21   cameras. CSP Sac correctional officers did not wear body cameras, which had been available for

22   a number of years.

23        35.    After Mr. Price crashed face first into the concrete floor, defendant Aurich

24   sounded the alarm. Defendants Villa, Bigney and Lopez were among the first to arrive at the

25   scene.

26        36.    Defendant Villa instructed defendant Aurich to get a camera and take photos.

27        37.    Defendant Lopez and Officer Todd Jones relieved defendant Pacheco and escorted

28   Mr. Price to medical. Medical staff immediately determined Mr. Price needed to be sent to UC

1   Davis Medical Center to receive emergency medical.

2       38.    At UC Davis Medical Center, Mr. Price received extensive emergency medical

3   care and was hospitalized.

4       39.    On or about September 16, 2016, Mr. Price gave a recorded interview to Kevin

5   Steele in which he told the investigator what happened to him:

6           a.  Price told correctional Sgt. Kevin Steele that officers used deception to convince

7               him to go with them, that they told him he was being moved to administrative

8               segregation — "the hole" — after Price refused to be moved to a cell with another

9               cellmate.

10          b.  "I asked him why he couldn't come down here and move into a cell with me,"

11              Ronnie Price told Steele. "He said, they do too much drug testing in the six

12              building.

13          c.  "So, my thing is, if you're not using drugs it doesn't make a difference how much

14              drug testing they do. So, when he said they do too much drug testing it set off an

15              alarm in my head that this is a problem. ... In my mind, I'm not going to get

16              involved with this one. I'm 65 years old. If I can stay out of trouble I'm out on the

17              street."

18          d.  Price  recounted the attack to Steele as he was in a hospital gurney with his hands

19              and legs cuffed, and said that when correctional officers first came to his cell to

20              move him they told him he was going to be moved in with the other cellmate.

21          e.  "I said, I'm not going down to the cellblock," Ronnie Price said on the videos. He

22              added that he understood refusing a guard's order could cause him disciplinary

23              problems.

24          f.  "I was willing to take the punishment," he told Steele. "If I go to the cell and I get

25              caught up I'm going to spend years wishing I had tried to get out of a jam."

26          g.  Initially, Price said, guards cuffed his hands behind his back and led him out of his

27              cell, but then put on leg restraints, also, and began moving toward the new

28              cellblock.

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                                    V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

h.  When Price realized he wasn't being taken to "the hole," he said he stiffened to
    stop, but did not resist more because he knew that would cause more problems.

i.  "Two of them grabbed my right arm and they said, you're going to the cell," Price
    said. "I told them I'm not going to that cell. They said, you're going."

j.  He added that he knew "if I hurt anybody I was going to be in trouble."

k.  When he stopped moving forward, "somebody stepped on my (leg) shackles, they
    pushed me," he said.

l.  Price fell face first onto the concrete, breaking out two of his dentures and two of
    his natural teeth, he said.

m.  "When I raised my head up to spit my teeth out, somebody grabbed my head and
    slammed it into the ground," he said. "That's when it broke my jaw."

40.    Upon information and belief, Baughman and Lynch  knew or should have known about the recorded interview.

41.    On or about September 17, 2016, Mr. Price died as a result of the assault by defendant Pacheco. The Sacramento County Coroner subsequently ruled Mr. Price's death a homicide.

**Facts Relating to the Notification of Mr. Price's Death**

42.    Defendants Baughman and Lynch did not notify Mr. Price's next of kin consistent with the requirements of CDCR Health Care Department Operations Manual 3.1.19.

43.    Around September 24, 2016, Sergeant Kevin Steele, member of the Investigative Services Unit ("ISU") since 2015, called JoAnne Price's cellphone and informed her that Ronnie Price had passed away. He identified himself as a member of the Investigative Services Unit and deceived  Ms. Price by informing her that  Mr. Price was hit in the jaw by a cellmate. Sergeant Steele did not give Ms. Price the name of the cellmate. However, Sergeant Steele gave Ms. Price 916 numbers to call for more information. Sergeant Stelle also inquired about how Ms. Price wanted to handle Ronnie Price's remains. Not knowing Defendants were responsible for Mr. Price's death, Ms. Price elected to have Mr. Price cremated.

44.    The family reasonably relied upon the representation by the prison as to the cause

1   of Ronnie's death and the family had no reason to question the cause of death.

2   45.    Ms. Price and her family were concerned about whether the cellmate would

3   receive an extended sentence for Mr. Price's death. Accordingly, Ms. Price and her family called

4   the 916 numbers about 20-30 times, every day for about one month. Every time Ms. Price or her

5   family called, the number would ring and ring with no answer or option to leave a voicemail.

6   Nobody ever answered the 916 number the family was provided.

7   46.    Due to the concealment of the cause of Mr Price's death, Ms. Price was not given

8   the opportunity to request an autopsy.

9   47.    To date, Ms. Price has not received any of Mr. Price's belongings or ashes from

10  CSP. Ms. Price was never given a document to sign for the release of the remains.

11  **Facts Relating to the Cover Up**

12  48.    On September 15, 2016, defendant Villa sent an email with the subject "IR 0824"

13  to defendants Bigney, Pacheco, Aurich, Luna, Lopez and Officer Todd Jones regarding the

14  incident with Mr. Price.

15  49.    Defendant Villa's email included a document titled "IR Price 0824.doc." The email

16  contained the phrase "Resisting a Peace Officer Resulting in the UOF (Physical)." This email was

17  sent to provide pertinent information for the incident reports.

18  50.    Although she was required to do so, defendant Villa did not submit a report about

19  the incident.

20  51.    Despite the fact defendant Luna was present for the entire incident, defendant Villa

21  intentionally did not collect a report from defendant Luna.

22  52.    After the responding officers left the scene, defendant Villa spoke with defendants

23  Pacheco, Aurich, Lopez and Bigney regarding who was going to be documented in the incident

24  reports.

25  53.    There was an agreement between defendants Villa, Pacheco, Lopez, Aurich and

26  Bigney not to include references to defendant Luna in the incident report.

27  54.    When questioned why defendant Luna was being omitted from the incident report,

28  defendant Villa told defendant Aurich to "keep it between the Block" or words to that effect,

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                    V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

1   referring to the fact defendant Luna worked in a different building.

2       55.     Defendant Villa's instructions to other officers to 'keep it between the Block" and

3   omit references to defendant Luna was an act of engaging in a code of silence and encouraging

4   staff to do the same.

5       56.     Defendant Villa received reports from defendants Lopez, Aurich, Pacheco, Bigney

6   and Officer Jones.

7       57.     Defendant Villa made substantive changes to several of these reports. The

8   substantive changes removed factual information and/or added specific details which did not

9   accurately reflect the events that occurred, covering up the unlawful use of unnecessary and

10  excessive force resulting in Mr. Price's death.

11      58.     Defendants Lopez, Aurich, Pacheco and Bigney subsequently signed the falsified

12  reports.

13      59.     Defendants Villa, Pacheco, Aurich, Bigney, Lopez and possibly other defendants,

14  had conversations in person, via telephone and text messages regarding fabricating a cover story.

15      60.     Defendant Luna initially drafted a report about the incident.

16      61.     However, Defendant Luna did not submit his report, despite the fact he was

17  required to do so.

18      62.     Among the reasons defendant Luna did not submit a report was because defendant

19  Pacheco told defendant Luna not to do so.

20      63.     Subsequently, defendant Luna acknowledged he knew defendant Pacheco used

21  excessive force against Mr. Price and failed to report Pacheco's wrongful conduct.

22      64.     Defendant Luna was interviewed by CDCR's Office of Internal Affairs (OIA) on

23  at least two occasions. In the first interview he denied having written a report about defendant

24  Pacheco's use of excessive force against Mr. Price.

25      65.     In his second OIA interview, defendant Luna lied about not having drafted a

26  report, claiming he should have done so, until he was confronted with a copy of the report he

27  drafted but did not submit.

28      66.     Defendant Luna lied in his reports and during the OIA interviews in an attempt to

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                                              V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

1  cover his and his codefendants' wrongful conduct.

2      67.    Defendant Bigney wrote a report about the incident. That report involved several

3  drafts. The final version of the report submitted by defendant Bigney contained material

4  misrepresentations designed to hide the fact defendant Luna was present during the assault.

5  Additionally, there were other material misrepresentations about defendant Pacheco's conduct.

6      68.    Defendant Bigney was interviewed by OIA on at least two occasions. In those

7  interviews Bigney lied about his conduct and the conduct of other officers.

8      69.    Defendant Bigney lied in his reports and during the OIA interviews in an attempt

9  to cover his and his co-defendants' wrongful conduct.

10      70.    Defendant Lopez wrote a report about the incident with Mr. Price.

11      71.    Defendant Lopez lied in his report about the events involving Mr. Price.

12  Specifically, defendant Lopez lied and claimed defendant Luna was not present. Defendant Lopez

13  also lied about defendants Pacheco's and Aurich's positions and actions upon defendant Lopez's

14  arrival at the scene.

15      72.    Defendant Lopez was interviewed by OIA on at least two occasions. During those

16  interviews he lied about his conduct and the conduct of other officers.

17      73.    Defendant Lopez lied in his reports and during the OIA interviews in an attempt

18  to cover his and his co-defendants' wrongful conduct.

19      74.    Defendant Pacheco wrote a report about the incident with Mr. Price. Defendant

20  Pacheco lied in his report about the events involving Mr. Price. Specifically, defendant Pacheco

21  lied and claimed Mr. Price was resisting.

22      75.    Defendant Pacheco lied about having cause to slam Mr. Price to the ground.

23  Defendant Pacheco also claimed defendant Luna was not present.

24      76.    Defendant Pacheco was interviewed by OIA on at least two occasions. During

25  those interviews he lied about his conduct and the conduct of other officers.

26      77.    Defendant Pacheco lied in his reports and during the OIA interviews in an attempt

27  to cover his and his co-defendants' wrongful conduct.

28      78.    Defendant Aurich wrote a report about the incident with Mr. Price. Defendant

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                                    V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

1  Aurich lied in her report about the events involving Mr. Price. Specifically, defendant Aurich lied
2  and claimed Mr. Price was resisting.

3      79.    Defendant Aurich lied about defendant Pacheco slamming Mr. Price to the ground
4  without cause. Defendant Aurich also claimed defendant Luna was not present.

5      80.    Defendant Aurich was interviewed by OIA on at least two occasions. During those
6  interviews she lied about her conduct and the conduct of other officers.

7      81.    Defendant Aurich lied in her reports and during the OIA interviews in an attempt
8  to cover her and her co-defendants' wrongful conduct.

9      82.    Defendant Villa was interviewed on at least two occasions by OIA. She lied in
10 both of those interviews.

11     83.    Defendant Villa lied during the OIA interviews in an attempt to cover her and her
12 co-defendants' wrongful conduct.

13     84.    On or about October 3, 2016, defendant Pacheco texted defendant Aurich, stating
14 "I work with snitches."

15     85.    On October 3, 2016, defendant Luna was interviewed by OIA. Defendant Pacheco
16 sent a text message to defendant Aurich after learning defendant Luna was being interviewed.
17 That text message was part of a pattern and practice among the correctional officers at CSP Sac
18 to maintain a code of silence and to harass and intimidate any officer who violated the code.

19     86.    Defendants Baughman and Lynch became aware of defendants Pacheco and
20 Aurich's text conversation by the Spring of 2017. Despite being aware of this conduct, Pacheco,
21 Aurich, as well as the other defendants, continued to work at CSP Sac for more than another year.

22     87.    On or about February 19, 2017, defendant Lopez texted an unknown individual
23 about the code of silence at CSP Sac. Defendant Lopez stated "LOL! Code of Silence homie" and
24 "you know it."

25     88.    No action was taken against Lopez for her "Code of Silence text for an entire
26 year.  Instead, Lopez continued her employment and was not sanctioned or reprimanded for
27 admitting she was concealing the truth.

28 ///

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                                    V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

**Facts Relating to Baughman and Lynch Concealing**

**the Truth About Mr. Price**

89.    Defendants Baughman and Lynch became aware of defendant Lopez's text conversation no later than the Spring of 2017. Despite being aware of this conduct defendant Lopez continued to work at CSP Sacramento for more than another year.

90.    On or about June 25, 2018, defendants Villa, Pacheco, Aurich, Luna, Lopez and Bigney were fired due to the aforementioned conduct.

91.    The Notice of Adverse Action terminating defendant Lopez's employment acknowledges the existence of the code of silence at CSP Sac. The notice states "When confronted with the above text message exchange, you [defendant Lopez] confirmed that you had indeed authored the text messages referring to the "code of silence" at CSP-SAC...." While the Notice of Adverse Action goes on to state that the code of silence is not allowed, the notice confirms the code of silence exists.

92.    The Notice of Adverse Action was signed by defendant Baughman.

93.    Accordingly, Baughman was aware of the truth pertaining to Mr. Price's death on or before June 25, 2018 (within the two-year statute of limitations for the causes of action at issue). However, no one informed Ms. Price or her family about the truth of his death and concealed the truth of the death from Ms. Price and her family.

**Facts Relating to Baughman and Lynch's Knowledge of Conduct that Could Inflict**

**Unconstitutional Conduct**

94.    Upon information and belief, in 2016 as Warden, Baughman was responsible for the supervision of all prison officials, including the named Defendants.

95.    Upon information and belief, in 2016 as Warden, Baughman was responsible for the safe keeping of all prisoners.

96.    Upon information and belief, in 2016 as Assistant Warden, Lynch was responsible for supervising the named Defendants.

97.    Upon information and belief, Baughman and Lynch intentionally concealed the truth, and Plaintiff was therefore unable to discover the truth regarding what happened to Mr.

1   Price.

2   98.   Defendant Lynch began working for CDCR in 1994. He has worked at CSP Sac

3   on multiple occasions since at least 1996. In September 2011, Lynch accepted an Associate

4   Warden position at CSP Sac. Lynch was promoted to Chief Deputy Warden in August 2016. In

5   June 2020 Defendant Lynch was named Warden of CSP Sac.

6   99.   Defendant Lynch had actual and/or constructive knowledge of the pervasive

7   culture of lying and dishonesty among certain guards at CSP Sac.

8   100.   Defendant David Baughman began working for CDCR in 1991. At the time of Mr.

9   Price's death, David Baughman was acting warden and had been with CDCR for roughly 25 years.

10   101.   Defendants Baughman and Lynch had actual and/or constructive knowledge of the

11   Code of Silence at CSP Sac.

12   102.   Prior to Mr. Price's death, defendants Baughman and Lynch received reports from

13   other correctional officers complaining of a culture of corruption resulting in the use of excessive

14   force against inmates.

15   103.   In May 2016 Pacheco pepper-sprayed a 54-year-old prisoner in his cell, falsely

16   claiming later that the prisoner had a piece of glass and refused to drop it. In a text message to a

17   friend, he later joked that the incident was "funny" and claimed it's "all about how u write ur

18   report," so long as "ur partners have ur back." "Blood, broken glass, n just u n ur partners. …

19   Green light!" Pacheco texted.

20   104.   Upon information and belief, Baughman and Lynch knew or should have known

21   that Pacheco was falsifying the reports to cover up excessive force.

22   105.   After Mr. Price's death, but more than a year before defendants Villa, Pacheco,

23   Aurich, Luna, Lopez and Bigney were fired, defendants Baughman and Lynch received additional

24   reports from other correctional officers complaining about the code of silence, corruption, and/or

25   other wrongful conduct. Defendants Baughman and Lynch took no timely corrective action.

26   106.   The existence of the code of silence at CSP Sac is well known among the inmates

27   and staff at CSP Sac. Supervisors and correctional staff, including but not limited to defendants

28   Lynch, Bauman, Villa, Pacheco, Aurich, Bigney, Luna and Lopez, knew the code of silence was

1   preventing the dissemination of factual information about Mr. Price's death.

2      107.   No later than June 1, 2018, and likely substantially before that date, defendants

3   Baughman and Lynch knew Mr. Price died as a result of defendant Pacheco's conduct.

4      108.   On a date unknown, but before June 1, 2018, the Sacramento County Coroner's

5   Office ruled Mr. Price's death a homicide.

6   **Facts Relating to Ms. Price's Notification Surrounding the Truth of Mr. Price's Death**

7      109.   No later than June 1, 2018, and likely substantially before that date, defendants

8   Baughman and Lynch were also aware that defendants Pacheco, Aurich, Villa, Luna, Bigney and

9   Lopez lied and conspired to cover-up the true circumstances surrounding Mr. Price's death.

10      110.   Despite that, defendants Baughman and Lynch failed to provide Mr. Price's next

11   of kin with the truthful information regarding his death in violation of California Code of

12   Regulations Title 2, Section 172.

13      111.   At all times herein plaintiff JoAnn Price's telephone number and address were

14   easily obtainable online, using a telephone book. CDCR has access to confidential databases. In

15   fact, CDCR had Ms. Price's telephone number because they contacted her after Mr. Price's death.

16      112.   No one at CDCR made an adequate, reasonable or diligent attempt as required by

17   California law to notify Mr. Price's next of kin of the true cause of his death.  Instead, CDCR

18   deliberately concealed the facts surrounding Mr. Price's death and, instead, provided a bogus

19   phone number for them to call which was deliberately unstaffed and rendered useless by the lack

20   of basic capabilities, including an answering machine,  for a family member to leave a message

21   and contact information.

22      113.   On or around July 22, 2022, Ms. Price received a letter from attorney Kresta Daly.

23   Ms. Daly stated that she was involved in a wrongful death and cover up case occurring at CSP

24   where prison guards were believed to be involved in a murder. The letter continued: "[w]e

25   recently learned about a potentially [sic] situation involving another person, Ronnie Price, and

26   believe you may have important information." For the first time since Mr. Price's death, his family

27   was told the truth that the prison guards were believed to be responsible for Mr. Price's death.

28   ///

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                                    V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

114.   Upon receiving the letter Ms. Price and her family initiated an internet search and became aware of prison guard's potential involvement in the death of Mr Price.

115.   Prior to receiving Ms. Daly's letter, Ms. Price had no clue that Mr. Price was killed by a prison guard and instead, believed Mr. Price was killed by his cellmate because that is the lie she was told by CDCR. The instant action was filed less than two months after the family was notified of the potential wrongdoing.

116.   Due to defendants' failure to properly notify Mr. Price's next of kin of the true cause of his death, and their conspiracy to conceal the truth from Mr. Price's family, plaintiffs did not and could not file a claim under California Tort Claims Act Government Code §§ 810, et seq.".

117.   Plaintiffs contend that the agents and employees of the State of California failed in their statutory duties under both California and Federal law, including violations of the Eighth and Fourteenth Amendments of the United States Constitution by failing to provide protection to decedent, thereby depriving decedent and plaintiffs of their civil rights.

118.   Each defendant acted with deliberate indifference to or, reckless disregard for, an accused's rights for adequate safety in a custodial facility.

119.   As a direct and proximate result of the acts, omissions, customs, practices, policies and decisions of the defendants, decedent suffered great fear, physical and mental suffering, anguish, confusion, anxiety, nervousness, and ultimately, loss of life during the time period in which CDCR failed to provide appropriate protection.

120.   As a direct and proximate result of the acts, omissions, customs, practices, policies and decisions of the defendants, plaintiffs have suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused plaintiffs to sustain damages in a sum to be determined at trial.

///

///

///

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                                                    V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

## THE STATUTE OF LIMITATIONS IS TOLLED

121.   Defendants falsely reported and covered up their assault of Mr. Price. Prison authorities have never appraised plaintiffs of the true circumstances and cause of Mr. Price's death or of the fact that defendants were responsible for Mr. Price's death and tried to cover that fact up.

122.   Plaintiffs are informed and believe and thereon allege that defendants Pacheco, Aurich, Villa, Lopez, Luna and Bigney were fired in June 2018. Among the reasons they were fired was for dishonesty in the investigation of this case.

123.   Despite the fact that defendants Baughman and Lynch knew in 2018 that defendants Pacheco, Aurich, Villa, Lopez, Luna and Bigney lied about the circumstances surrounding Mr. Price's death, plaintiffs were not informed of the true cause of Mr. Price's death.

124.   Based on the death and investigation occurring within a prison, Plaintiff was not able to readily access facts or information without the assistance of prison officials.

125.   By knowingly and intentionally failing to inform plaintiffs of the true cause of Mr. Price's death, defendants Baughman and Lynch and Does 3 through 15 furthered the conspiracy to cover up the true cause of Mr. Price's death. Their conduct further tolled the statute of limitations.

126.   Plaintiffs could not bring a claim for the wrongful death of Mr. Price because they were not notified of the true cause of Mr. Price's death.

127.   In United States District Court, Eastern District of California Case No. 2:20-CR-221, defendant Pacheco entered guilty pleas to two violations of Title 18, United States Code Section 242, deprivation of civil rights under color of authority and two counts of violations of Title 18, United States Code Section 1519, falsification of records in federal investigation.

128.   Some of those guilty pleas related to defendant Pacheco's assault upon Mr. Price and his subsequent cover-up of that assault.

129.   Mr. Price is not identified by name in defendant Pacheco's plea agreement. Had plaintiffs read the plea agreement they would not have known the identity of the victim.

///

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                                                    V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

130.   On or about January 19, 2021, defendant Aurich pled guilty in United States District Court, Eastern District of California to a violation of Title 18, United States Code Section 1519, falsification of records in federal investigation.

131.   Defendant Aurich's guilty pleas were directly related to her complicity in falsifying records to assist defendant Pacheco's cover-up of his felonious and deadly assault on Mr. Price.

132.   Mr. Price is not identified by name in defendant Aurich's plea agreement. Had plaintiffs read the plea agreement they would not have known the victim was their brother.

133.   At a time unknown to plaintiffs, but prior to 2018, the Federal Bureau of Investigation ("FBI") and/or other state and federal law enforcement agencies, began investigating CSP Sac.

134.   Plaintiffs are informed and believe that defendants Pacheco's and Aurich's conduct came to light and the result was the filing of two separate criminal indictments in late 2020. Despite this fact, neither the FBI, CDCR, the United States Attorney's Office nor any other law enforcement agency informed plaintiffs of the true facts which led to Mr. Price's death and the subsequent cover-up of defendant Pacheco's criminal conduct.

135.   Plaintiffs remained unaware of the facts surrounding their brother's death and cover-up until the events were reported in the news in late July 2022 around the time of defendant Pacheco's guilty plea.

136.   Typically an action accrues on the date of injury. That rule can be modified by the "discovery rule." The discovery rule provides that the accrual date of a cause of action is delayed until the plaintiff is aware of their injury and its cause, and (1) the exercise of reasonable diligence and a good-faith investigation would not have disclosed the cause, or (2) did not know of facts that would have caused a reasonable person to suspect the harm was caused by someone's wrongful conduct.

137.   Plaintiffs had no knowledge of the true facts surrounding Mr. Price's death until defendant Pacheco's plea agreement and guilty plea. Plaintiffs had no means by which to discover the truth prior to late July 2022.

138.   Equitable estoppel prevents the statute of limitations from starting to run where

1  there is concealment of information as to the cause of a plaintiff's injuries. Fraudulent

2  concealment by a defendant will equitably estop the starting of the running of the statute of

3  limitations.

4      139.   Defendants Pacheco and Aurich recently pled guilty for their dishonest conduct,

5  specifically for lying about the cause of Mr. Price's death.

6      140.   Given defendants' lies, plaintiffs had no means of discovering the truth about Mr.

7  Price's death until defendant Pacheco's guilty plea and subsequent media coverage.

8      141.   Beginning well before Mr. Price's death CSP Sac has a history of tolerating

9  misconduct amongst correctional officers. Whistleblowers, known and unknown to plaintiffs,

10  made complaints to defendants Baughman and Lynch, the California Secretary of Corrections,

11  and others. Plaintiffs are informed and believe and thereon allege those complaints documented

12  dishonest conduct such as the planting of drugs and other evidence, assaults on inmates, and

13  falsifying evidence and reports among other issues.

14      142.   Whistleblowers are believed to have provided information and evidence to

15  investigators relating to Mr. Price's death and/or the related cover up. Defendants Baughman and

16  Lynch failed to take appropriate action concerning the serious circumstances of the present case.

17      143.   Before Mr. Price's death defendants Baughman and Lynch repeatedly failed to take

18  appropriate action concerning serious instances of excessive force and unlawful conduct of the

19  guards and staff of CSP Sac.

20      144.   Defendants Baughman, Lynch and Does 3-15, were actually or constructively

21  aware of a pattern or culture of excessive force, unlawful conduct, lying and dishonesty among

22  correctional officers at CSP Sac.

23      145.   Defendants Baughman, Lynch and Does 5-15, maintained and permitted policies,

24  practices and customs which sanctioned such wrongful conduct.

25  ///

26  ///

27  ///

28

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                                V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

### FIRST CAUSE OF ACTION

**Violation of 42 U.S.C. Section 1983— Eighth Amendment—Convicted Prisoner's Claim for Excessive Force**

**(Against Defendants Pacheco, Bigney, Luna and Does 1 and 2)**

146.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Amended Complaint.

147.   Defendant Pacheco brutally assaulted Mr. Price, slamming him into the ground while he was in handcuffs, which ultimately resulted in his death, without justification. Defendant Pacheco's conduct constituted excessive force against plaintiff in violation of his Eighth Amendment rights.

148.   Defendants Bigney, Luna and Doe Defendants 1 and 2 aided and abetted defendant Pacheco's wrongful conduct by failing to intervene in defendant Pacheco's wrongful conduct. Defendants are further liable as integral participants as they participated in the violation in a meaningful way.

149.   The actions of defendants Pacheco, Bigney, Luna and Doe Defendants 1 and 2 as alleged herein interfered with the enjoyment of Mr. Price's civil rights as guaranteed by the Eighth Amendment to the U.S. Constitution.

150.   As a direct and proximate result of defendants Pacheco, Bigney, Luna and Doe Defendants 1's and 2's conduct, Mr. Price suffered the damages alleged herein, including but not limited to unreasonable interference with his personal liberty, pain, suffering and the loss of his life.

151.   Defendants Pacheco, Bigney, Luna and Doe Defendants 1's and 2's conduct caused Mr. Price's death and deprived plaintiff JoAnn Price of her brother's love and affection.

152.   Plaintiff seeks loss of life damages, survivor damages, and pre-death pain and suffering damages for violation of Decedent's rights. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014)(holding that California's prohibition against pre-death pain and suffering damages limits recovery too severely to be consistent with § 1983's deterrence policy and approving of the reasoning that "[I]f Section 1983 did not allow recovery for loss of life

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**

*Price, et al. v. Arturo Pacheco, et al.*                                    V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

1    notwithstanding inhospitable state law, deterrence would be further subverted since it would be

2    more advantageous to the unlawful actor to kill rather than injure."); *Guyton v. Phillips*, 532 F.

3    Supp. 1154, 1167 (N.D. Cal. 1981), disapproved of on other grounds by *Peraza v. Delameter*,

4    722 F.2d 1455 (9th Cir. 1984) ("A remedy must obtain by reason of the actual deprivation-in this

5    case the greatest of deprivations, loss of life. Absent such a remedy, the s 1983 action amounts to

6    little more than a tort claim.")

7        153.   Plaintiffs allege the acts and conduct of defendants Pacheco, Bigney, Luna, and

8    Doe Defendants 1 and 2 were willful, malicious, intentional, oppressive and reckless and/or were

9    done in willful and conscious disregard of plaintiff's rights, welfare and safety, thereby justifying

10   the award of punitive and exemplary damages in an amount to be determined at trial.

11       154.   Plaintiff brings this claim as the successor in interest and seeks attorneys' fees

12   under this claim.

13       WHEREFORE, plaintiffs pray for judgment as hereinafter set forth.

14   ## SECOND CAUSE OF ACTION

15   **Violation of California Civil Code Section 52.1 (Bane Act)**

16   **(Against Defendants Pacheco, Bigney, Luna and Does 1 and 2)**

17       155.   Plaintiffs reallege and incorporate herein by reference each and every allegation

18   contained in the preceding paragraphs of this Amended Complaint.

19       156.   The actions of defendants Pacheco, Bigney, Luna and Does 1 and 2, as alleged

20   herein, interfered with the exercise and enjoyment of Mr. Price's civil rights guaranteed by Article

21   I, Sections 1 and 13 of the California Constitution. Specifically, defendant Pacheco, with the

22   acquiescence of Bigney, Luna and Does 1 and 2, interfered with Mr. Price's rights using threats,

23   intimidation, and coercion when defendant Pacheco grabbed a handcuffed Price by the legs and

24   drove him into the ground, causing Price to violently hit his head on the cement.

25       157.   Defendants Pacheco, Bigney, Luna and Does 1 and 2's actions and failure to

26   intervene in Pacheco's assault on Mr. Price constituted an excessive use of force in violation of

27   the eighth amendment, a violation of Mr. Price's right to bodily integrity, and further interfered

28   with Mr. Price's personal rights as guaranteed by California Civil Code Section 43.

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                               V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

158.   As a direct and proximate result of defendants' actions and/or omissions, Mr. Price suffered unreasonable interference with his personal liberty, physical injury, pain and suffering, humiliation, emotional distress and other injuries.

159.   Defendants' violations of decedent's rights as guaranteed by California Civil Code § 52.1 (Bane Act) entitles plaintiffs to compensatory and punitive damages and attorneys' fees as provided for in Sections 52.1(b) and 52 and requested herein.

160.   The aforementioned acts and/or omissions of said defendants were willful, intentional, wanton, reckless and/or accomplished with a conscious disregard for decedent's rights as secured by Civil Code Section 52.1, thereby entitling plaintiffs to an award of punitive damages under Section 52(b)(1).

161.   Plaintiff brings this claim as the successor in interest and seeks attorneys' fees under this claim.

WHEREFORE, plaintiffs pray for judgment as hereinafter set forth.

## THIRD CAUSE OF ACTION

**Supervisory Liability for Violation of Civil Rights 42 U.S.C. Section 1983**

**(Against Defendants Baughman, Lynch, Villa and Does 3 through 15)**

162.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Amended Complaint.

163.   Defendants Warden or Acting Warden Baughman, Associate Warden Lynch, Sgt. Villa and Does 3 through 15 acted individually and in concert with each other, under color of law, in the course and scope of their employment with CDCR, in violating Mr. Price's and constitutionally protected rights. Baughman, Lynch, Villa and Does 3 through 15 are sued in their individual capacities as supervisors, managers, and/or administrators.

164.   At all times herein mentioned defendants Baughman, Lynch, Villa and Does 3 through 15 were responsible for the safety of inmates and for training officers to comply with CDCR Operations Manual, Article 2.

165.   At all times herein mentioned, defendants Baughman, Lynch, Villa and Does 3 through 15 had the power and authority to adopt policies and prescribe rules, regulations, and

1  practices affecting all facets of training, supervision, control, employment, assignment and

2  operation of CSP Sac where Mr. Price was under its sole control and custody.

3       166.   At all times herein mentioned, defendants Baughman, Lynch, Villa and Does 3

4  through 15 were responsible for devising and implementing the security protocols and procedures

5  for the safe housing, classification, and transport of inmates at CSP Sac, as well as all procedures,

6  policies and directives concerning the training, manner and practices by which correctional staff,

7  including defendants Pacheco, Aurich, Lopez, Luna, Bigney and Does 1 and 2 were to handle and

8  monitor inmates and to quell any disturbances at CSP Sac.

9       167.   The acts and omissions of defendants Baughman, Lynch, Villa and Does 3 through

10  15 and their subordinates, including, but not limited to, defendants Pacheco, Aurich, Lopez, Luna,

11  Bigney and Does 1 and 2, deprived Mr. Price and plaintiffs of their protected rights under the

12  laws of the United States, the U.S. Constitution, and the Constitution of the State of California.

13       168.   Prior to the death of Mr. Price, defendants Baughman, Lynch, Villa and Does 3

14  through 15 committed the following acts and omissions:

15       (a)   Failure to supervise and train their subordinates to ensure they were

16  implementing and complying with policies and procedures to ensure the reasonable safety and

17  security of inmates;

18       (b)   Failure to supervise or train their subordinates to ensure they did not violate

19  the law CDCR Operations Manual Section 51020.4, *et seq.,* defining, among other things,

20  reasonable force and excessive force; CDCR Operations Manual Section 51020.7, defining

21  deadly force and when deadly force may be used, CDCR Operations Manual Section 51020.10

22  and CDCR Operations Manual Section 51020.11 defining the application and immediate use of

23  force; CDCR Operations Manual Section 51020.12 defining when a controlled use of force is

24  permissible, CDCR Operations Manual Section 51020.12.3 requiring the use of video recording

25  when a correctional officer engages in a controlled use of force; failure to install video cameras

26  on the grounds of the prison and/or equip correctional staff with body cameras;

27       (c)   Failure to supervise or train their subordinates to ensure they did not violate

28  the law CDCR Operations Manual Section 51020.17 defining use of force reporting requirements;

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                                    V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

CDCR Operations Manual Section 51020.17 requiring all involved staff file reports on the use of force;

(d)      Failure to supervise or train their subordinates to ensure they did not violate the law CDCR Operations Manual Section 31140.9 requiring staff to report the misconduct of their co-workers; CDCR Operations Manual Section 33030.3.1, code of conduct, providing, among other things, that CDCR employees are to be honest and follow the law; CDCR Operations Manual Section 33030.3.2 requiring CDCR employees to "possess the general qualifications of integrity, honesty, sobriety, dependability ... [and] good judgment...."

(e)      Failure to discipline and establish procedures to correct past violations of CDCR policy, including the existence of the "code of silence," and to prevent the future violations of constitutional rights of inmates by condoning, ratifying, and/or encouraging the violation of inmates' constitutional rights including those of Mr. Price;

169.      Defendants Baughman, Lynch, Villa and Does 3 through 15 knew or should have known their subordinates, including but not limited to defendants Pacheco, Aurich, Luna, Lopez, Bigney and Does 1 and 2, were engaging in the above alleged acts, patterns and practices, and knew or reasonably should have known their subordinates' conduct posed a significant and foreseeable risk of harm to inmates, including Mr. Price, from a failure to properly train and supervise those subordinates, and thus depriving inmates including Mr. Price, of their constitutional right to be free from cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution. As a consequence, this also violated plaintiffs' constitutional rights of familial relationship under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

170.      Defendants Baughman, Lynch, Villa and Does 3 through 15 failed to prevent their subordinates, including defendants Pacheco, Aurich, Luna, Lopez, Bigney and Does 1 and 2, from engaging in the above alleged patterns, practices and acts.

171.      Defendants Baughman, Lynch, Villa and Does 3 through 15 were deliberately indifferent to the need to supervise and train their subordinates, including defendants Pacheco, Aurich, Luna, Lopez, Bigney and Does 1 and 2, and the lack of supervision and training actually

caused the constitutional harm or deprivation of rights alleged herein. Subordinates, including defendants Pacheco, Aurich, Luna, Lopez, Bigney and Does 1 and 2 disregarded the known and obvious consequences that an omission in their training programs, lack of supervision and failure to equip the facility or officers with cameras, would cause their subordinates to violate inmates' constitutional rights.

172.   The above acts represent defendants Baughman, Lynch, Villa and Does 3 through 15's own culpable action or inaction in the training, supervision or control of their subordinates, their knowledge of and acquiescence in the unconstitutional conduct of their subordinates for which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others. *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011).

173.   Defendants Baughman, Lynch, Villa and Does 3 through 15's conduct as alleged herein was so closely related to the deprivation of Mr. Price and plaintiffs' rights as to be the moving force that caused the ultimate injuries.

174.   Each defendant, Baughman, Lynch, Villa and Does 3 through 15, acted individually and in concert with each other in violating Mr. Price's and, consequently plaintiffs', constitutionally protected rights; and are jointly and severely liable for the damages demanded herein.

175.   Plaintiff JoAnn Price brings this claim on her own behalf and as successor in interest to the decedent Mr. Price on behalf of the Estate of Ronnie Price and seeks survival damages under this claim for relief.

176.   As a direct and proximate result of the customs, practices, policies and/or procedures of said defendants, or as a result of defendants' failure to promulgate appropriate policies or procedures, decedent Mr. Price suffered the damages alleged herein, including but not limited to physical pain and suffering, emotional distress, mental anguish and loss of his life. These defendants are liable to the Estate of Ronnie Price for survival damages which include general damages for Mr. Price's pre-death pain and suffering *(Chaudhry v. City of Los Angeles,* 751 F.3d 1096 (9th Cir. 2014)) and loss of life/loss of enjoyment of life *(Valenzuela v. City of Anaheim*, No. 20-55372 (9th Cir. 2021)).

177.   Plaintiff seeks loss of life damages, survivor damages, and pre-death pain and suffering damages for violation of Decedent's rights. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014)(holding that California's prohibition against pre-death pain and suffering damages limits recovery too severely to be consistent with § 1983's deterrence policy and approving of the reasoning that "[I]f Section 1983 did not allow recovery for loss of life notwithstanding inhospitable state law, deterrence would be further subverted since it would be more advantageous to the unlawful actor to kill rather than injure."); *Guyton v. Phillips*, 532 F. Supp. 1154, 1167 (N.D. Cal. 1981), disapproved of on other grounds by *Peraza v. Delameter*, 722 F.2d 1455 (9th Cir. 1984) ("A remedy must obtain by reason of the actual deprivation-in this case the greatest of deprivations, loss of life. Absent such a remedy, the s 1983 action amounts to little more than a tort claim.")

178.   As a direct and proximate result of the acts and omissions by defendants Baughman, Lynch, Villa and Does 3 through 15, plaintiff suffered emotional distress and anguish, loss of the love, comfort, support, services, companionship and society of her brother, and which she will continue to suffer for the rest of her natural life justifying an award of damages to be determined at trial. These defendants are liable to plaintiff for the unwarranted state interference in her familial relationship with her brother.

179.   Exemplary and punitive damages are requested and warranted under Title 42 United States Code Section 1983 against defendants Baughman, Lynch, Villa and Does 3 through 15 in their personal capacities because their conduct was callous, willful, wanton, malicious, oppressive, and motivated by evil intent or involved reckless or conscious disregard for the federally protected rights of Mr. Price and plaintiff and constitute the type of despicable conduct that no civilized society should be forced to endure.

180.   Plaintiff brings this claim as the successor in interest and seeks attorneys' fees under this claim.

///

///

///

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                              V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

### FOURTH CAUSE OF ACTION

**WRONGFUL DEATH**

**(Cal. Code of Civil Procedure § 377.60, *et seq.*)**

**(Against Defendants Baughman, Lynch, Villa, Pacheco, Aurich, Bigney, Luna and Does 1 and 2)**

181.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Amended Complaint.

182.    Plaintiff JoAnn Price is the sister of the decedent Mr. Price, who has no surviving spouse or surviving children or issue of children.

183.    The acts and/or omissions by defendants Baughman, Lynch, Pacheco, Aurich, Bigney, Luna and Does 1 and 2 as detailed below directly and proximately caused the wrongful death of Mr. Price and were the direct and proximate cause of plaintiffs' injuries entitling plaintiffs to recover damages under Code of Civil Procedure Section 377.60, *et seq.*

184.    Baughman, Lynch, and Villa are liable as their negligent supervision was the cause of Mr. Price's death entitling plaintiffs to recover damages under Code of Civil Procedure Section 377.60, *et seq*.

### FIFTH CAUSE OF ACTION

**Violation of Civil Rights 42 U.S.C. Section 1983— Eighth Amendment—Convicted Prisoner's Claim of Failure to Protect**

**(42 U.S.C. § 1983)**

**(Against Defendants Baughman, Lynch, Villa and Does 3 through 15)**

185.    On behalf of decedent Price, plaintiffs re-allege and incorporate by reference paragraphs 1 through 160, as though fully set forth herein.

186.    The acts and/or omissions of defendants Baughman, Lynch, Villa and Does 3 through 15 in failing to properly investigate prior claims of physical abuse, excessive, force, and the existence of a "code of silence" were done with a clear disregard for Mr. Price's rights under the Eighth Amendment.

187.    Defendants Baughman, Lynch, Villa and Does 3 through 15 and other

supervisory and correctional officers employed at CSP Sac failed to take reasonable steps to protect inmates, including the failure to install video monitoring and/or body cameras at CSP Sac, even though they knew and were aware that allegations of violence and dishonesty by prison staff were common.

188.    Defendants Baughman, Lynch, Villa and Does 3 through 15 observed and received information that would lead any reasonable person to believe staff misconduct occurred and they failed to take reasonable steps to prevent this misconduct. These decisions and conditions put Mr. Price at substantial risk of suffering serious harm and death and he in fact suffered serious harm and death.

189.    Defendants Baughman, Lynch, Villa and Does 3 through 15 did not take reasonable available measures to abate the risk, even though a reasonable individual in the circumstances would have appreciated the high degree of risk involved and obvious potential consequences.

190.    By not taking such measures, defendants Baughman, Lynch, Villa and Does 3 through 15 caused Mr. Price's injuries and death.

191.    As a direct and proximate result of said acts and/or omissions by defendants Baughman, Lynch, Villa and Does 3 through 15, Mr. Price suffered injuries, death and damages as alleged herein and to which his estate is entitled to recover damages for pain and suffering, mental and emotional distress, costs and attorneys' fees.

192.    Plaintiff seeks loss of life damages, survivor damages, and pre-death pain and suffering damages for violation of Decedent's rights. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014)(holding that California's prohibition against pre-death pain and suffering damages limits recovery too severely to be consistent with § 1983's deterrence policy and approving of the reasoning that "[I]f Section 1983 did not allow recovery for loss of life notwithstanding inhospitable state law, deterrence would be further subverted since it would be more advantageous to the unlawful actor to kill rather than injure."); *Guyton v. Phillips*, 532 F. Supp. 1154, 1167 (N.D. Cal. 1981), disapproved of on other grounds by *Peraza v. Delameter*, 722 F.2d 1455 (9th Cir. 1984) ("A remedy must obtain by reason of the actual deprivation-in this

1  case the greatest of deprivations, loss of life. Absent such a remedy, the s 1983 action amounts to

2  little more than a tort claim.")

3    193. The acts and/or omissions of said defendants were willful, wanton, malicious

4  and done with conscious or reckless disregard for the rights and safety of Mr. Price thereby

5  entitling plaintiffs to an award of exemplary and punitive damages according to proof.

6  **SIXTH CAUSE OF ACTION**

7  **Concealment**

8  **(Against Defendants Baughman, Lynch and Does 3 through 15)**

9    194. Plaintiff restates and incorporates by reference, as though fully set forth herein,

10  each and every allegation set forth above.

11    195. According to Civil Code section 1710(3) a deceit is "The suppression of a fact, by

12  one who is bound to disclose it, or who gives information of other facts which are likely to mislead

13  for want of communication of that fact."

14    196. Defendants, and each of them, intentionally failed to disclose to Plaintiff facts that

15  were known only to it, that Mr. Price was killed by law enforcement officials, and that Plaintiffs

16  could not have discovered.

17    197. Defendants had a duty so speak because of the prior notification in which the

18  family was informed Mr. Price was killed by another inmate.

19    198. Defendants intended to deceive Plaintiff by concealing the truth about Mr. Price's

20  death.

21    199. Had the omitted information been disclosed, Plaintiff would have behaved

22  differently and filed a lawsuit within the statute of limitations for the above mentioned claims.

23    200. As a direct and proximate result of Defendants' conduct, Plaintiff suffered the

24  aforementioned damages. Plaintiff is therefore entitled to general and compensatory damages in

25  a sum in excess of the minimum jurisdiction of the Court and according to proof at trial.

26    201. The acts and/or omissions of said defendants were willful, wanton, malicious

27  and done with conscious or reckless disregard for the rights and safety of Mr. Price thereby

28  entitling plaintiffs to an award of exemplary and punitive damages according to proof.

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*          V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

202.     Plaintiff brings this claim in her individual capacity.

## SEVENTH CAUSE OF ACTION

### Intentional Misrepresentation

### (Against Defendants Pacheco, Bigney, Luna and Does 1 and 2)

203.   Plaintiff restates and incorporates by reference, as though fully set forth herein, each and every allegation set forth above.

204.   Defendants made false statements regarding the death of Mr. Price.

205.   According to Civil Code section 1710(1) a deceit is "The suggestion, as a fact, of that which is not true, by one who does not believe it to be true."

206.   Defendants knew the representation was false or made the representation recklessly without regard for its truth.

207.   Defendants are responsible for a representation that was not made directly to Plaintiff because Defendants made the representations pertaining to the death and reasonably expected that it would be repeated to a next of kin or family member.

208.   The statements were made with the intent to induce Plaintiff's reliance on the fact misrepresented.

209.   Plaintiff justifiably relied on the statement regarding Mr. Price's death.

210.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered the aforementioned damages. Plaintiff is therefore entitled to general and compensatory damages in a sum in excess of the minimum jurisdiction of the Court and according to proof at trial.

211.     The acts and/or omissions of said defendants were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of Mr. Price thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.

212.     Plaintiff brings this claim in her individual capacity.

///

///

///

1

## JURY DEMAND

2        Plaintiffs hereby demand a jury trial on all issues so triable.

3

4

5   Date: December 15, 2023                **V. JAMES DESIMONE LAW**
                                           **LAW OFFICE OF ANNEE DELLA**
6                                          **DONNA**

7

8

9                                          By: _____

10                                              V. JAMES DESIMONE, ESQ.
                                                RYANN E. HALL, ESQ.
11                                              ANNE DELLA DONNA, ESQ.

12                                          Attorneys for Plaintiffs,

13                                          JOANN PRICE, successor in interest
                                            to Ronnie Price, deceased; and the
14                                          ESTATE OF RONNIE PRICE; and
                                            his successors in interest
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                                    V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)

1

## **PRAYER**

2      WHEREFORE plaintiffs request entry of judgment in their favor and against defendants

3   as follows:

4              (1)    For compensatory damages in an amount to be determined at trial;

5              (2)    For punitive damages against individual defendants in an amount to be

6   proven at trial;

7              (3)    For reasonable costs of this suit and attorneys' fees; and

8              (4)    For such further relief as the Court may deem proper, just and

9   appropriate.

10

11

12   Date: December 15, 2023              **V. JAMES DESIMONE LAW**

13                                         **LAW OFFICE OF ANNEE DELLA**
                                           **DONNA**

14

15

16                                       By: _____

17                                            V. JAMES DESIMONE, ESQ.
                                             RYANN E. HALL, ESQ.
18                                            ANNE DELLA DONNA, ESQ.

19                                            Attorneys for Plaintiffs,

20                                            JOANN PRICE, successor in interest
21                                            to Ronnie Price, deceased; and the
                                             ESTATE OF RONNIE PRICE; and
22                                            his successors in interest

23

24

25

26

27

28

**THIRD AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**
*Price, et al. v. Arturo Pacheco, et al.*                              V. James DeSimone Law
Case No.: 2:22-cv-1610 DAD-DMC (PC)