ORIGINAL

1          UNITED STATES DISTRICT COURT

2      FOR THE EASTERN DISTRICT OF CALIFORNIA

3              BEFORE THE HONORABLE
       DENNIS M. COTA, MAGISTRATE JUDGE PRESIDING

4
_____
5
JoAnn Price, et al.,          )  Case No: 2:22-cv-1610-DAD-DMC
6                             )
Plaintiff,                    )  Motion Hearing
7                             )
         v.                   )
8                             )
Arturo Pacheco, et al.,       )
9                             )
Defendants.                   )
10                            )
_____
11
**REPORTER'S TRANSCRIPT OF**
12      **ELECTRONICALLY RECORDED PROCEEDINGS**

13           Wednesday, April 24, 2024

14              Pages 1 through 37

15

16

17

18

19

20

21

22
_____
REPORTED BY:          Abigail R. Torres, CSR, RPR/RMR, FCRR
23                    CSR No. 13700
                      United States District Court
24                    Eastern District of California
                      501 I Street, Suite 4-100
25                    Sacramento, California 95814

**APPEARANCES:**

```
FOR THE PLAINTIFF:        LAW OFFICE OF VINCENT J. DESIMONE
                          13160 Mindanao Way
                          Suite 280
                          Marina del Rey, California 90292
                          By:  VINCENT J. DESIMONE, ESQ.
                               -oOo-
                          BOHM LAW GROUP
                          13160 Mindanao Way
                          Suite 280
                          Marina del Rey, California 90292
                          By:  RYANN ELIZABETH HALL, ESQ.


FOR THE DEFENDANTS        CALIFORNIA DEPARTMENT OF JUSTICE
LYNCH AND BAUGHMANN:      455 Golden Gate Avenue
                          Suite 1100
                          San Francisco, California 94102
                          By:  RYAN THOMAS GILLE, ESQ.
                                -oOo-
                          WADE LAW FIRM
                          262 E. Main Street
                          Los Gatos, California 95030
                          By:  DIANNA LYNNE ALBINI, ESQ.
```

1      **SACRAMENTO, CALIFORNIA; WEDNESDAY, APRIL 24, 2024; 10:35 A.M.**

2                                -oOo-

3           THE CLERK:  Calling Case No. 2:  22-cv-1610-DAD-DMC,

4      *Price, et al., v. Pacheco, et al.*

5           This is on calendar for a motion to dismiss, Your

6      Honor.

7           THE COURT:  All right.  Welcome back, Counsel.  Let's

8      go ahead and get appearances, starting with plaintiff.

9           MR. DESIMONE:  Yes.  Good morning, Your Honor.

10          James Desimone on behalf of plaintiff JoAnna Price.

11          MS. HALL:  Ryann Hall, also on behalf of plaintiff.

12          THE COURT:  All right.  Thank you, Counsel.

13          And for defense?

14          MR. GILLE:  Good afternoon, Your Honor.

15          Ryan Gille on behalf of defendants Lynch and Baughman.

16          MS. ALBINI:  Good morning, Your Honor.

17          Dianna Albini on behalf of Mr. Luna.

18          THE COURT:  All right.  Thank you.

19          Again, Counsel, thank you for appearing via Zoom.  I

20     hope that this was more convenient for you from your respective

21     locations.  We'll attempt to accommodate that whenever

22     possible.  But at any point in future proceedings if the

23     preference is live hearings, I'm equally glad to accommodate

24     that either here in Redding or in Sacramento at the preference

25     of the parties.

1           All right.  With that, we have before the Court today

2    two motions to dismiss.  And I want to take up, first, the

3    Baughman/Lynch motion and work our way through the several

4    grounds proffered there for dismissal of plaintiffs' Third

5    Amended Complaint.

6           Starting with the statute of limitations argument, and

7    looking first at the contention that the statute of limitations

8    had run with the date of the incident at issue being

9    September 15, 2016, and the case not having been filed until

10   September of 2022.  And the Court notes plaintiffs' claim of

11   delayed discovery in the absence of knowledge of the falsehood

12   of the previous representation that this -- that the decedent

13   was the subject of an inmate-on-inmate confrontation.

14          And the Court notes plaintiffs' claim that it wasn't

15   until July of 2022 that knowledge of the cause of death was

16   forthcoming and that a complaint was promptly filed thereafter.

17          Turning, first, to defense counsel.  I note the

18   arguments that defense had no duty to disclose anything more

19   than the occurrence of death.

20          But, Counsel, can you explain why the existence of

21   that statutory duty is -- is in play here?  Isn't it a matter

22   of, not so much any duty, statutory or otherwise, but merely

23   the timing at which plaintiff knew or should have known of the

24   basis for their -- their claim?  And didn't they move promptly

25   once that information was available?

1        I'll hear first from defendant.

2        MR. GILLE:  Your Honor, thank you.

3        Our position is that, as you know, and what the Court

4   had previously noted in its last F&Rs, there is no continuing

5   duty to update a next of kin.

6        THE COURT:  Agreed.

7        MR. GILLE:  With that, I believe the analysis would

8   almost stop and the only duty under that statute is for a

9   notification to be made to the registered next of kin that a

10  death or serious bodily injury has occurred.  And that's the

11  extent of it.

12       It's not a larger duty, continuing duty to say the

13  specific cause of death or the specific cause of serious bodily

14  injury, nor is there any duty to, as the Court had already

15  noted, to continue updating the next of kin.  So that's our

16  position.

17       THE COURT:  Well, I would -- I would still agree with

18  those, Mr. Gille, that the -- the duty, however limited, did

19  not include an ongoing responsibility.

20       But isn't the focus here in the context of this

21  delayed discovery claim -- isn't the focus not on the duty of

22  your clients in making disclosures, but the extent to which

23  plaintiff knew or should have known by virtue of diligence.

24  Isn't that where the analysis goes as opposed to -- to defense

25  disclosures?

1          MR. GILLE:  I believe the defense disclosure is a

2    large part of that when you're looking at individual

3    liabilities for these particular wardens.  I also believe that

4    there hasn't been due diligence exercised by the plaintiff in

5    this matter.  At least none that's been alleged for what's been

6    done.

7          There's no allegation that the wardens have any

8    connection to the alleged misstatements during the notification

9    or the alleged notification.  So I -- I would agree with Your

10   Honor that the plaintiff, after the convictions were made, the

11   lawyer who contacted them, the first set of counsel, they filed

12   soon after those convictions.

13         I would disagree that there was diligence and that the

14   plaintiff knew or should have known prior to that date through

15   a reasonable investigation.

16         THE COURT:  All right.  Response to Mr. Gille's

17   comments.

18         Who wants to go?

19         MR. DESIMONE:  Judge, that would be on me, James

20   Desimone.  I'll argue this on behalf of the plaintiff, Your

21   Honor.

22         It was very difficult for even us as lawyers without

23   conducting discovery to discovers what occurs in a prison.  To

24   think that an individual, who's been informed that their

25   brother has died as a result of an assault by an inmate, can

1    somehow investigate the true facts of what occurred in prison,

2    is just -- it's against both common sense and how things work

3    in prison, especially here when you have elements of the code

4    of silence and the cover-up that existed until the FBI

5    investigated.

6         I mean, this only came to light, as we've alleged in

7    our complaint, that it took the FBI coming in and conducting an

8    investigation to this prison for these facts to be uncovered

9    and for these individual officers, who were involved first in

10   the assault and then in the cover-up, to be convicted.

11        We also have the fact that our client was informed of,

12   "If you want to find out more information, call this number."

13   And the allegations are in the complaint that our client did

14   diligently call that number up to 30 times, and, yet, that

15   number was not -- it was never answered, and they were not

16   provided any information.

17        So I think that it's -- in terms of the statements by

18   Mr. Gille, we could talk about the duty when we talk about the

19   cause of action concealment.  But setting that aside for a

20   moment, federal law is clear that they -- for statute of

21   limitations purposes, it follows the state law with respect to

22   the delayed discovery rule.

23        The facts are clear here that our client did not

24   discover that the cause of death of her brother was due to the

25   the assault of a prison guard until July 2022.  The complaint

1  was filed in September 2022 -- 2022 -- excuse me -- and so we

2  have a situation where it really just fits the principles of

3  delayed discovery on all fours where indeed our client had no

4  reason to believe that she was misled by the prison officials,

5  and due diligence couldn't have found out that she was misled

6  by these -- by these prison officials.

7       And then as soon as she found out the true cause of

8  her brother's death, filed a lawsuit at least, you know, within

9  60 days, which seems -- which is very reasonable.  So I think

10 that we have satisfied that this complaint was filed timely and

11 satisfies both federal and California law with respect to the

12 statute of limitations question.

13      THE COURT:  All right.  Last word on this, Mr. Gille.

14 Again, we're focusing on -- -- on statute of limitations.

15      MR. GILLE:  Understood, Your Honor.  And I'd just

16 disagree that there's somehow an inability to investigate

17 issues in prisons that happened -- as Your Honor knows,

18 nationwide, both jails and prisons, there are issues that come

19 up whether it's excessive force or claims of wrongful death.

20      And those claims are filed all the time through

21 investigations, through contacting the prisons.  And to the

22 extent that the plaintiff did call a number 30 times, there's

23 no explanation as to why there's no other investigation or

24 attempt to contact CDCR, who has a well-publicized website, and

25 presuming that the plaintiff was in contact with her brother at

1  some point prior to the death.  There would have been contact

2  information from other offices at CDCR.

3          In fact, the website includes contact information, I

4  believe, for the warden but -- [failure in transmission] --

5  penitentiary, if not, CDCR headquarters in itself, and there's

6  no allegations that any of that investigation took place.

7          THE COURT:  All right.

8          MR. DESIMONE:  May I respond briefly to that, Your

9  Honor?

10          THE COURT:  You may.

11          MR. DESIMONE:  Yeah.  Again, it -- the -- in terms of

12  the case law, even if everything that Mr. Gille says is

13  correct, it has to show that if she had investigated that,

14  there would have been a proper disclosure.

15          And at that point, up until this was revealed in 2018,

16  there's no reason to believe that if she had sent in a letter

17  or contacted the warden that they were -- oh, yes, your brother

18  was killed by -- by a security guard -- by -- I'm sorry -- by a

19  correctional officer, because in this case, immediately after

20  the death, you had the situation of a cover-up and [failure in

21  transmission].

22          MR. GILLE:  And, Your Honor, if I could respond

23  briefly to that?

24          THE COURT:  Last word.

25          MR. GILLE:  Thank you.

1          I think -- I understand Mr. Desimone's point.  But the

2    reality is the allegations don't even say any of that attempt

3    was even taken, so it's pure speculation that she would not

4    have found out any further information that would have clued

5    her into the possibility of a potential lawsuit.

6          And I'll rest on that.

7          THE COURT:  All right.  It is the Court's impression

8    that the delayed discovery rule does apply here and that the

9    plaintiff did not know and reasonably could not have known

10   prior to the July 2022 date at which the information came

11   forward; that the delayed discovery rule is triggered here and

12   the complaint was timely filed in September of 2022.

13         I am going to deny the motion on the statute of

14   limitations ground.  But let us turn to the failure to state a

15   claim.  And, again, we're going to stay with Baughman and

16   Lynch.

17         Am I pronouncing that correctly, Counsel?  Is it

18   Baughman?

19         MR. GILLE:  I believe it's "Baughman."

20         THE COURT:  Baughman.  All right.  Very good.

21         Well, my apologies to the warden.  The Baughman and

22   Lynch claims, in their motion with regard to failure to state a

23   claim, which I understand to be really focused on the no

24   respondeat superior liability, and I'll turn to plaintiffs'

25   counsel, either -- either counsel with the question.  What

1   knowledge do you contend that these wardens had that goes

2   specifically to the September 2016 excessive force as opposed

3   to any subsequent issues of code of silence or cover-ups?

4          I'm looking for what specific knowledge you contend

5   that Baughman and Lynch had with regard to the occurrence of

6   the decedent being knocked down and his subsequent death.  And

7   I'll hear from either plaintiffs' counsel in that regard.

8          MR. DESIMONE:  Yes.  James Desimone, Your Honor.

9          In direct answer to your question, of course, neither

10  the warden or the then-assistant warden were present during

11  this incident.  However, they did -- you have a situation where

12  an individual is taken to -- immediately to the medical center.

13  Gives a statement on tape to an investigator in -- which if

14  you -- as alleged in our complaint, that statement he clearly

15  says that he's in handcuffs.  He's in leg shackles.  He just

16  doesn't want to go to the cell.  He just -- it's passive

17  resistance, where he's just not moving.

18         And not only does he get tripped to where his head

19  hits the ground and he's missing teeth, but then after that,

20  the officer slams his head into the ground and breaks his jaw.

21  This is compounded by the fact that he dies the very next day.

22         So if you have a situation where you have a warden

23  that we have -- you know, all of the case law that we cited in

24  our opposition that -- basically, that wardens have an

25  obligation to have a safe prison to make -- to not be

1    deliberately indifferent to violations of the prisoners'

2    rights, especially in terms of excessive force that would

3    result in death.  That if the warden and assistant warden had

4    been carrying out their duty at that time, and a prisoner dies,

5    they say, "Oh, where's the investigation?  Where's the

6    statement?"  There's -- nothing like that was done here.

7         It wasn't until two years later when the FBI became

8    involved that all of these facts came to light.  So our

9    contention is, one, that the -- that this incident itself and

10   the way in which it was handled when someone died in prison, as

11   a result of the assault by an officer, that that shows the

12   deliberate indifference of this warden and assistant warden.

13        And then you look at the fact that we have alleged in

14   our complaint at paragraphs 102, 103, and 143 and 144, that

15   prior to this, the same officer, Officer Pacheco, had injured a

16   54-year-old inmate in his cell.  I do note that Mr. Price was

17   65 years old at the time of his death.

18        And then in that situation alluded to the -- you know,

19   to the code of silence and a proper investigation was done.

20   Now, May 2016, of course, is several months before September,

21   so taking those facts, and if the warden had done due diligence

22   and not shown deliberate indifference to that prior assault,

23   then there could have been a discovery of Pacheco's tendencies

24   to assault individuals.

25        And I think that in terms of the -- you know, we

1   acknowledge and agree that under Federal Civil Rights Law --

2   and there are causes of action under the Eighth Amendment

3   supervisory excessive force, as well as the Eighth Amendment

4   for the failure to protect, that it's not respondeat superior,

5   or the warden, nor the State of California is liable under the

6   law for Officer Pacheco's assault here in this situation.

7          However, the case law is clear under the *Lorens* case

8   that we cited, the *Flores* case that we cited, *Flores v. County*

9   *of Los Angeles* -- these are Ninth Circuit cases --

10  longstanding -- of course, *Lorens* dealt with our esteemed Chief

11  of Police Daryl Gates here in Los Angeles back in 1991 -- that

12  you can have a cause of action for these -- to hold a

13  supervisor liable for excessive force if you can show that

14  they -- there was a reckless or callous indifference to the

15  rights of others.

16         And that you can have -- you may state a claim against

17  a supervisor for deliberate indifference based upon a

18  supervisor's knowledge of the acquiescence, an unconstitutional

19  conduct by his or her subordinates.

20         And now I'm quoting the case, Your Honor, of *Star*

21  *v. Baca*, 652 F.3rd 1202.  At 1207, again, a 2011 Ninth Circuit

22  case, well-established law in the year 2016.  And when you look

23  at the way this situation was handled, there's a problem here.

24         There's a reason why the FBI went into this particular

25  prison in Sacramento and did an investigation.  Now, at this

1   point, we may just be seeing the tip of the iceberg.  We

2   haven't been able to conduct discovery.  We're not privy to the

3   FBI investigation.

4          All we know is with respect to this particular

5   defendant, Pacheco, that he's involved in at least two

6   incidents of excessive force.  So we have generally alleged in

7   our complaint how in these allegations that both the warden and

8   the assistant warden showed deliberate indifference.

9          And the evidence -- when you have a case which is

10  based -- you know, this isn't necessarily called Minell under

11  the Eight Amendment.  But it's akin to a Minell cause of action

12  under Fourth Amendment analysis, where you have a custom and

13  policy, you can use a defendant's conduct regarding incidents

14  in question as a -- as evidence of that callousing practice.

15  And, here, that evidence of the -- deliberate indifference.

16         So I know I've answered more than Your Honor's

17  question.  But, hopefully, I answered it very, very directly as

18  when I first started out.  But I do believe that the

19  allegations in our complaint combined with the wardens'

20  obligations that we cited under the California Code of

21  Regulations, that they are responsible.

22         Being a warden -- and this is Cal Code regulation

23  Title 15, Section 3380, the warden is responsible for the

24  custody, treatment, training, and discipline of all inmates

25  under his or her charge.  And, of course, they are responsible

 1    for the supervision of the correctional officers and --

 2            THE COURT:  Sure.

 3            MR. DESIMONE:  And what happened here is contrary.

 4            THE COURT:  All right.  But what you're describing,

 5    Counsel, is still respondeat-superior-type liability in that

 6    I'm not hearing anything about either warden's direct

 7    involvement here.  They did not -- they did not, of course,

 8    participate in the activity that led to the decedent's

 9    injuries.

10            But even a -- a step away from that, I'm not hearing

11    any allegations that they ordered the handling of this inmate

12    or that they were even aware in advance of any activities

13    associated with this particular inmate.

14            Your argument seems to focus on the scope of their

15    response thereafter.  And doesn't that take us into the

16    respondeat superior world and, certainly, your allegations

17    address contentions in that regard, but for a 1983 case, which

18    is what is being challenged in this motion to dismiss, the 1983

19    excessive force allegations against these two wardens, aren't

20    those claims barred here based on exactly what you've

21    described?  Aren't they too distant?

22            MR. DESIMONE:  Not at all, Your Honor.  I -- I --

23    there is no -- there is no requirement that the warden or

24    assistant warden be directly involved in the incident which led

25    to Mr. Price's death.

1        So that is -- in fact, the case law is clear that you

2    can have a showing of deliberate indifference to a known risk

3    to inmates in order to have liability against the warden.  And

4    in order to show that, you would have to show that they had

5    some knowledge one of prior incident.

6        So let's take a couple of different examples here.

7    Number one, we have alleged prior conduct on behalf of Pacheco

8    prior to his assault on Mr. Price, which was not properly

9    handled by this warden or assistant warden.  No appropriate

10   corrective action.

11       If you're -- as a warden, are not taking appropriate

12   corrective action in a prompt, timely fashion against

13   correctional officers that are unwarrantedly assaulting

14   inmates, than that is deliberate indifference, and we have

15   alleged a prior incident here.

16       Moreover, we have information -- we have alleged in

17   the complaint -- I know that it's after the fact.  But, again,

18   you can have after-the-fact-conduct evidence of deliberate

19   indifference.  In as early as 2017, this warden and assistant

20   warden knew about this assault.  But the officers remained on

21   duty.  They remained in contact as correctional officers with

22   these inmates, and they weren't terminated from their

23   employment until a full year later.  So that, again, shows

24   deliberate indifference.

25       So [failure in transmission] have -- you can properly

 1   allege a cause of action under Section 1983 on both the

 2   excessive force and the failure to protect based on prison

 3   officials' deliberate indifference.

 4        The second major way that we would show that

 5   deliberate indifference, is that there was an active code of

 6   silence that existed within this officer group that was open

 7   and obvious in the way in which they dealt with this.

 8        We allege that it was Officer Villa who had the

 9   obligation to file a report here.  She never did.  In fact, it

10   looked -- what she did was she took the reports of other

11   individuals and then -- and then changed them.

12        So take the two in turn.  You have reports that are

13   falsified, but then you have an interview of the decedent in --

14   in the hospital while he's handcuffed, explaining what happened

15   that would warrant the further investigation, and then we have

16   Mr. Luna, who eventually came forward and explained what

17   happened here.

18        So I don't think -- I appreciate Your Honor's

19   question, but I don't think that the question is dispositive of

20   the cause of action.  That is one way by showing direct

21   involvement to have liability on a warden.

22        If there are other ways, which include deliberate

23   indifference, I think the facts as alleged in the Third Amended

24   Complaint give the Court an ample reason to allow for this.  I

25   mean, you know, either we -- in Your Honor's first ruling on

1    this case, you cited that there's case law that says, you know,

2    a claim has facial plausibility when the plaintiff pleads

3    actual conduct that allows the Court to draw the reasonable

4    inference that the defendant is liable for the conduct alleged.

5            Deliberate indifference is what is required to show

6    liability here.  So it's not just the possibility, but you

7    don't have to show that it was actual probability.  What you

8    have to show -- and this is from *Twombly*, a United States state

9    court decision.  And this, again -- in your initial ruling back

10   in August on this case, when a complaint pleads facts that are

11   merely consistent with the defendant's liability, they stop

12   short of the line between possibility and plausibility that

13   would entitle them to relief.

14           So all we have to show is that if it's somewhat close

15   to being plausible that the deliberate indifference of these

16   wardens allowed for this type of conduct to occur, where an

17   officer could feel that in front of five other correctional

18   officers, he could push down a helpless man, who is in

19   handcuffs and in leg irons, slams his head into the ground and

20   he dies in three days, and nothing is done about it until the

21   FBI comes in.

22           I mean, this is a case which cries out for allowing us

23   to go forward, conduct discovery on this, see what the FBI

24   found out, and let us prove the deliberate indifference on the

25   evidence.  Instead of -- at this point, I think we have

1    sufficient allegations to allow us to go forward on those

2    theories.

3           I'm also only addressing -- I want to point out -- the

4    federal causes of action here, which in -- which we also have

5    our state court causes of action under wrongful death --

6           THE COURT:  And we're going to -- we're going to get

7    to those.  We're going to get to those, Counsel.

8           MR. DESIMONE:  I --

9           THE COURT:  We're working our way through.

10          Mr. Gille, your response?

11          MR. GILLE:  Yes, Your Honor.  It sounds like what I'm

12   hearing is there are no specific allegations with *Carter* or

13   *Iqbal* that tie either of my defendants or my clients -- excuse

14   me -- to -- to this action.

15          The allegations include one anecdotal claim of an

16   incident involving Pacheco in, I believe, 2016.  There's

17   nothing other than just completely broad allegations about the

18   green line or the cover-up.  And there's absolutely no

19   allegations that when the incident happened, as Your Honor

20   noted, that my clients had preexisting knowledge of it, had

21   preexisting knowledge of any potential threat to the decedent,

22   had any preexisting knowledge of any of the defendants would

23   conduct the way -- conduct themselves in the way they did or

24   had any preexisting knowledge or knowledge of the -- of the

25   concealment when it occurred.

1          THE COURT:  However, Counsel, how do you distinguish

2     the *Lorens* case and the *Star v. Baca* case that counsel has

3     cited?  I mean, isn't -- hasn't plaintiff sufficiently alleged

4     this deliberate indifference in a way that, even without the

5     direct involvement or participation of your clients, it

6     would -- it would still embrace at least sufficient potential

7     liability to go forward at this pleading stage?

8          MR. GILLE:  No, Your Honor.  Because, again, there's

9     no allegations other than very broad allegations of the

10    wardens' knowledge of -- of what they're claiming.  There's

11    no -- there's no knowledge of -- or specific allegations of

12    incidents or any -- essentially, under the plaintiffs' pleading

13    standards, any warden could be subject to respondeat superior

14    liability by simply alleging that they knew or should have

15    known or there was one incident in the past and that put them

16    on notice of every potential incident involving an institution

17    that has thousands of guards.  And that's simply not the

18    standard.

19          There's no specific allegations or facts that either

20    of these wardens were aware or knew or should have known about

21    the potential for this incident.  And that's the issue that

22    we've been raising since day one.  And that's the issue -- and

23    I think it's quite telling that throughout the -- for -- you

24    know, three amendments to the complaint, there have been more

25    facts coming up about everybody else but no new facts about the

1  guard or -- excuse me -- about the wardens.  And the wardens --

2  the allegations against the wardens have consistently only been

3  threadbare.  They knew or should have known there was an

4  incident.  There one was incident in the past; therefore, that

5  should have put them on notice about any other potential

6  incident, which is just simply not the standard under those

7  cases.

8         THE COURT:  All right.  Last word from plaintiffs'

9  counsel?

10        MR. DESIMONE:  Yes, Your Honor.  I would ask Your

11 Honor to -- or I can cite to Your Honor the Ninth Circuit Model

12 Jury Instruction 9.4 supervisor reliability, which allows for

13 all of these alternative theories, depending on the facts of

14 the case, of course, to prove supervisor reliability.

15        And one of those under Ninth Circuit Model Jury

16 Instruction 9.4 says:  The supervisory defendant disregarded

17 the known or obvious consequence of a particular training

18 deficiency or admission -- or omission -- excuse me -- or

19 caused his subordinate to violate the plaintiffs'

20 constitutional rights.

21        And so you -- and you also have that the supervisory

22 defendant failed to act to prevent the subordinate from

23 engaging in such conduct.  So if we've alleged one prior

24 incident against the assailant here that we -- that we have

25 some information about to show that he engaged in prior

 1  misconduct and that that misconduct was not properly dealt

 2  with, and we've also alleged that you -- that with respect to

 3  this incident, that you have evidence that the warden did not

 4  handle this incident at all.

 5          That he -- that there was a training deficiency with

 6  the subordinates in terms of their obligations not to use

 7  excessive force.  I think we have alleged more than [failure in

 8  transmission].  The complaint does allege sufficient facts to

 9  show deliberate indifference.  And we should be allowed to move

10  forward on these claims.

11          THE COURT:  I'm troubled by this, gentlemen, and

12  the -- again, on the one hand, what appears to be a stretch of

13  the respondeat superior limitations.  On the other hand, the

14  potential scope of the deliberate indifference, Counsel, that

15  you're describing and characterizing the complaint to embrace

16  here.

17          I'm going to direct the parties as to this limited

18  issue to submit further briefing.  And I want both sides to

19  specifically address the application of the *Lorens* and *Baca*

20  cases, the model jury instruction that counsel has cited, and

21  the extent to which this pleading as focused on a deliberate

22  indifference claim can or should survive here.

23          And I want concurrent briefing on that.  We're not

24  going to go through briefs and replies.  I want concurrent

25  briefing in -- from both sides in the next ten days on this

1  issue.  I'm going to take this portion of the motion under

2  submission and address this further.

3  And I will contact the parties in the event that after

4  reading your further briefs, whether further argument is needed

5  or appropriate, but I am going to direct further briefing as

6  to -- as to this component.

7  Moving on with the joinder argument -- we're still

8  with Baughman and Lynch -- defendants are contending that the

9  entire action should be dismissed because we lack an

10  indispensable party here.

11  Apparently, a brother who is -- contended to be at

12  least an equal heir under intestate succession.

13  I turn my question as to Mr. Gille.  What evidence do

14  you have that anything was timely filed that could create

15  either an inconsistent or a double judgment?  I see these

16  arguments in your -- in your brief, but hasn't that ship

17  sailed?

18  Even assuming that the brother is out there and -- and

19  wanted to make such a claim as to -- as to their independent

20  claims, if there are any, wouldn't that have gone by the --

21  some statute of limitations?  Or do you have some indication

22  that -- that is not currently before the Court about this

23  brother's actual or potential claims?

24  MR. GILLE:  No, Your Honor.  It's the Defense concern

25  that the brother has been listed as a plaintiff on every

1   pleading since -- until the Third Amended Complaint, it was --

2   he was subsequently taken off the Third Amended Complaint.

3        There was also the declaration filed by plaintiff

4   acknowledging the brother's existing.  Acknowledging his

5   status, essentially, as an equal heir since it's the brother.

6   And so the defense concern is that if he attempts to intervene

7   or do any other type of legal action, that it could -- it could

8   create a potential for, you know, either a double recovery, if

9   he files suit later, or just a lawsuit.

10        We just want to protect our interest on the potential

11   that the brother comes in, since plaintiff has acknowledged

12   that there is a brother who under intestate succession has an

13   equal claim to this.

14        And if the Court rules that his claims are completely

15   time barred, then we would withdraw that argument.

16        THE COURT:  Mr. Desimone, do you wish to be heard on

17   this?

18        MR. DESIMONE:  Well, I think it's, one, our -- the

19   indication from our client, Ms. Price, is that he was -- the

20   brother was afforded the opportunity and, instead, he wanted

21   nothing to do with it.

22        I'm not entirely sure if that was set forth in her

23   declaration.  But -- but he has indicated that he's not

24   interested.  I mean, the remedy would be if the Court is at all

25   -- because I do note that July -- in reference to the statute

1   of limitations, if we win on delayed discovery, in July 2022,

2   is the [failure in transmission] -- is where we have the

3   discovery.  We're still in April of 2024.

4          I mean, under California law, the way to do it is --

5   if he doesn't want to be involved, you add him as a nominal

6   defendant, which we could do at this point if your Court -- if

7   the Court would give us permission.

8          My understanding is that [failure in transmission] did

9   not give us that option.  I'm not entirely sure.  As you know,

10  Your Honor, this is the first time that [failure in

11  transmission] on this case and Ms. Hall has been doing it, and

12  I would say an excellent job in carrying the ball up until

13  today.

14         So you name him as a nominal defendant under the

15  law [failure in transmission] 30 days, then the case gets

16  dismissed again, and it's all [failure in transmission].

17         As a practical matter, he has known about it.  He

18  hasn't done anything about it.  He's indicated to our

19  cocounsel, who's in trial today -- Ms. Delladonna, Anna

20  Delladonna -- did not want to be in his case.  So we believe

21  that we [failure in transmission] Third Amended Complaint as

22  filed.

23         THE COURT:  Mr. Gille?

24         MR. GILLE:  And just briefly, just -- acknowledging

25  and agreeing with Mr. Desimone that the statute of limitations

1    has not run out on this -- this relative's claim.  So there is

2    some concern, and it wouldn't be the first time that in the

3    last-minute ditch effort somebody files a lawsuit on the day of

4    a statute of limitations, so that's really the crux of the

5    defense concern.

6            THE COURT:  All right.  What is your response to

7    Mr. Desimone's proposal of adding this individual as a nominal

8    plaintiff and -- and setting a deadline for their either

9    committed participation or -- or dismissal?

10           MR. GILLE:  Again, the defense would be on -- on board

11   with that.  I believe that's what should have been done before,

12   being added as a nominal defendant, and then served, and

13   then -- and then going that route to preserve the defendants'

14   rights and protect against any potential last-minute claim.

15           THE COURT:  Mr. Desimone, are you okay to proceed with

16   that?

17           MR. DESIMONE:  Yes, Your Honor.  We would be willing

18   to do that.  Better to do that than have him make the claim

19   if -- in the event we're successful down the line.

20           THE COURT:  All right.  Then I'm going to give 30 days

21   to take those steps and without prejudice to Mr. Gille's

22   clients filing a response or opposition thereto.  And in the

23   absence of further efforts on behalf of the brother, we can

24   address dismissal or further orders in that regard.

25           MR. DESIMONE:  Thank you very much, Your Honor.

1          THE COURT:  All right.  That will be the ruling

2     relative to the joinder arguments.

3          Moving on to the Government tort claim and the

4     potential exception to the Government tort claim obligations as

5     created by California Government Code Section 950.4, 950.2, it

6     would appear that, again, recognizing the delayed discovery

7     that I have noted, in conjunction with the earlier statute of

8     limitations argument, that this delayed discovery would also

9     work to alleviate the need for a Government tort claim being

10    filed within the traditional statutory deadlines.

11         And, obviously, Mr. Gille, you didn't have that ruling

12    in front of you at the time your arguments were made.  But in

13    light of the Court's ruling on the statute of limitations, is

14    there any reason why you can cite at this point that 950.4,

15    950.2 wouldn't be applicable here and the tort claim

16    obligations set aside in conjunction with delayed discovery?

17         MR. GILLE:  Yes, Your Honor.  I believe the -- the

18    Government code is even more strict, in my opinion and

19    practice, than the statute of limitations.  The only exceptions

20    for Government claim is when you have no idea that the

21    Government -- a Government entity was involved in -- somehow in

22    an event.

23         Plaintiffs have cited no authority that delayed

24    discovery applies to 950.4, where there's knowledge of a

25    Government entity and knowledge of Government actors.  And so

1   to that extent, we would argue that it's different than the

2   traditional statute of limitations analysis, and that the

3   Government claims should still be barred and/or they have to

4   find some other remedy.

5          But the Government claim has strict compliance, and

6   there's been no attempt to, even though they knew that CDCR was

7   somehow involved with the incident.

8          THE COURT:  All right.  Mr. Desimone, I'll hear from

9   you.

10         MR. DESIMONE:  It's not what the law says, Your Honor.

11  The law clearly says under 950.4, one, it does talk about that

12  the plaintiff proved that he did not know or have reason to

13  know within the period to maintain an action for such injury.

14         And it goes on to say -- I'm going to skip something

15  that is not -- doesn't seem necessary for this argument.  But

16  you have to know or should know that the injury was caused by

17  an act or omission or public entity or by an act or omission of

18  an employee in a public entity in the scope of its employment

19  as a public employee.

20         And that's -- I'm citing directly from California

21  Government Code Section 950.4, which seems very consistent with

22  the way -- discovery rule and, frankly, contrary to what

23  Mr. Gille's representing to the Court here.

24         THE COURT:  All right.  I have 950.4 in front of me,

25  and it does reference:  "If the plaintiff pleads and proves

1   that he did not know or have reason to know within the period

2   for the presentation of a claim to the employing public entity

3   as a condition to maintaining that action for such injury

4   against the employing public entity."

5          And it is this Court's finding that the plaintiff has

6   adequately pled the absence of knowledge; thus, again,

7   triggering any instance of the statute of limitations argument,

8   the delayed discovery rule but I believe here also triggering

9   the provisions of 950.4.

10          Now, I am going to deny the motion to dismiss without

11   prejudice to this being raised as either an affirmative defense

12   or the basis for a summary judgment in the future by

13   Mr. Gille's clients insofar as 950.4 states "pleads and

14   proves."  So it is still the obligation of plaintiffs to prove

15   that they were not aware of the Government's involvement.  The

16   allegations in the pleading suggest that plaintiff was

17   proceeding on the basis that this was an inmate-on-inmate issue

18   up till finding out differently in 2022.

19          But that is, of course, subject to proof, and that may

20   ultimately, as I said, be the subject of an affirmative defense

21   at trial or a motion for summary judgment after discovery has

22   proceeded.  But at this stage, I believe the pleadings to be

23   adequate to trigger the provisions of 950.4.  And on that

24   basis, I am going to deny the motion to dismiss under the

25   Government tort claim arguments.

1          With that, we are resolved as to the Baughman/Lynch

2   motion --

3          MR. GILLE:  Your Honor, may I be heard briefly?

4          THE COURT:  Yes.  Go ahead, Mr. Gille.

5          MR. GILLE:  One thing we pointed out and has never

6   been explained was how the allegations changed from the

7   original complaint where the allegation was that the plaintiff

8   was informed that Mr. -- excuse me -- the decedent was

9   resisting arrest and was involved in an incident involving an

10  officer.

11         And there was, I believe, in the original complaint,

12  the First Amended Complaint, and the Second Amended Complaint,

13  and then it suddenly changed on the Third Amended Complaint to

14  being "inmate on inmate."  There's no explanation in the

15  complaint or in the oppositions as to how that significant

16  factual determination or allegation changed or was somehow not

17  discoverable beforehand and seems to have significant impact on

18  this Court's ruling.

19         THE COURT:  I'll hear from Mr. Desimone.

20         MR. DESIMONE:  Well, I didn't prepare the initial

21  complaint, Your Honor.  But I will say this, that a -- in order

22  to come to the Third Amended Complaint, an interview was, you

23  know, basically, you know -- we spoke to our client about it.

24         You know, the attorneys spoke to our client about it.

25  And this is what she informed us.  And those two things are

1   very different.  So I'm not sure how those allegations got in

2   the initial complaint.

3           I know whoever prepared it, you have an obligation to

4   obviously be forthcoming with the Court.  But since this is an

5   issue that could now be used as a defense, in other words, the

6   point that Mr. Gille brings up, can be used in terms of

7   questioning our client about it in deposition, that it should

8   be -- it could be inquired of in discovery, but it shouldn't --

9   the Court should still stick with its ruling based on what we

10  know to be the facts now that are alleged in the Third Amended

11  Complaint.

12          MR. GILLE:  And, Your Honor, if I may be heard?

13          THE COURT:  Go ahead.

14          MR. GILLE:  I disagree with that.  I believe the --

15  the rule is that if you're going to change a significant or

16  substantive portion of your amendment to be very different in

17  the face of a motion to dismiss, you have to give an

18  explanation as to why it has changed.

19          And it seems fairly significant, given Your Honor's

20  rulings thus far, that if the plaintiff had originally alleged

21  three times that she understood it to be a guard-on --

22  on-decedent incident, that she definitely then would have had

23  knowledge that it was an incident involving a public employee.

24  Thus triggering -- I would argue, triggering the duty to file a

25  California Government tort claim.

1          And we raised that in our motion to dismiss.  It was

2     not addressed at all by the plaintiffs.  It has not been

3     addressed in -- in their opposition or the allegations.  And

4     it's a fairly significant swing shift to go from, you know,

5     officer-on-inmate to inmate-on-inmate, particularly in light of

6     these facts.

7          And I think it deserves something before discovery to

8     explain how this isn't an altered pleading just to kind of

9     evade a motion to dismiss.  So I think Your Honor might agree

10    that if it was still an "officer on inmate excessive force"

11    claim that she was aware of, that would trigger the Government

12    tort claim and possibly even dissolve the delayed discovery

13    rule.

14         THE COURT:  Well, I would -- I would certainly agree,

15    Mr. Gille, that if that was the allegation pending before the

16    Court, that it would affect the applicability of 950.4.  And to

17    the extent that the previous iterations of the complaint, per

18    your contention, have -- have said something else -- again, I

19    don't have those before me now.

20         I appreciate, Mr. Desimone, that you weren't the

21    drafter of those or coming into this case at this time may not

22    have knowledge as you sit here about that.  Since we are having

23    supplemental briefing already, I am going to give you the

24    opportunity to investigate that further and offer the Court

25    additional authority in support of this issue about the -- as

1    Mr. Gille describes, the material shift in allegations as

2    between the earlier contentions and the extent to which that

3    may or may not impact the application of 950.4.

4           Again, we're not going to go back and forth with

5    oppositions, replies, et cetera.  Mr. Gille, you have the same

6    opportunity to further articulate this argument in your

7    supplemental briefs.

8           And I will tell you, while consistent with my

9    expressed thoughts on the Government tort claim, while it is my

10   tentative to deny a motion to dismiss here, because I think

11   950.4 is applicable, based on this issue that you've raised, I

12   will take supplemental briefing, take it under submission, and

13   hear from both parties on this argument that there is

14   sufficient indication in earlier pleadings that should be

15   considered, so I'll receive your supplemental briefing in that

16   same ten-day period.

17          Turning now to Defendant Luna and the separate --

18          MR. DESIMONE:  [Failure in transmission] Your Honor --

19          THE COURT:  I'm sorry?

20          MR. DESIMONE:  We have reached -- we have reached an

21   agreement with opposing counsel on this.  That we're going

22   to -- you know, based on our understanding of Luna's

23   involvement, we're not going to -- we still have to work it

24   out.  But if Your Honor can give us 30 days on this, we have --

25   we believe that we worked out -- we have an agreement in

1  principle to dismiss him with a waiver of cost on each side and

2  ensuring his cooperation with discovery in this action.

3          THE COURT:  All right.  Very good.

4          MR. GILLE:  That's our understanding, Your Honor.

5          THE COURT:  All right.  Thank you, Counsel.  I

6  appreciate the meet-and-confer efforts in that regard.  And --

7  and, again, an excellent example of civility in litigation.

8          So I will make an order of a 30-day period to address

9  this.  If the parties have reached an agreement regarding

10  dismissal, no further appearance will be required.  Simply file

11  your -- your stipulation or request for dismissal in that

12  regard.

13          Absent that, I'm going to ask madam clerk to set us

14  for a further status conference on the issue of Defendant

15  Luna's motion to dismiss.  And if you could put that out to the

16  end of May or --

17          Let's go beginning of June, Madam Clerk, and give them

18  adequate time to take care of this.

19          June 5th, Counsel, does that work?

20          MS. ALBINI:  One moment, Your Honor.  I have a trial

21  in Los Angeles.  I believe June 3rd.

22          Could we do it the following week?

23          THE COURT:  Absolutely.

24          MS. ALBINI:  Thank you.

25          MR. GILLE:  Your Honor, I have one question for the

```
 1   Court when it's ready.

 2           THE COURT:  Sure.

 3           MR. GILLE:  There's a pending cross-complaint filed by

 4   Defendant Luna.  Would the Court issue a stay on any responses

 5   needed for that, pending the outcome of the settlement?

 6           THE COURT:  Ms. Albini, are you okay with staying

 7   everything re the cross-complaint?

 8           MS. ALBINI:  Yes.  If you wouldn't mind, which

 9   cross-complaint are you speaking of?  We will be dismissing the

10   cross-complaint against Mr. Lopez today.

11           MR. GILLE:  There's the cross-complaint for indemnity

12   and contribution against my clients.

13           MS. ALBINI:  Okay.  Yeah, we can stay that.  That's

14   fine.

15           THE COURT:  All right.  It's going to be the Court's

16   order that as to cross-complaints involving Defendant Luna, all

17   dates and deadlines associated with that will be stayed.  I am

18   going to put this over for a status conference, so we'll

19   address what the status is.

20           We won't be taking arguments that day.  But if for

21   some reason, this is still unresolved by --

22           Madam Clerk, June 26th?

23           June 26th, does that work for everyone?

24           MS. ALBINI:  Yes, Your Honor.

25           MR. GILLE:  Your Honor, I'll be out of the country at
```

1    that time, but I don't know if my appearance is required.

2            THE COURT:  No.  I don't anticipate it.  Be diligent

3    and get this done.

4            And -- go ahead, please.

5            MR. DESIMONE:  In terms of the subsequent briefing, is

6    that -- do we have ten court days to make it due on May 1st as

7    opposed to calendar days?  That's the way it works under the

8    FRCP with something --

9            THE COURT:  That was what I was envisioning, was ten

10   court days.

11           MR. DESIMONE:  Okay.  I just wanted to make sure that

12   clarification.

13           Thank you very much, Your Honor.

14           THE COURT:  All right.  Anything else from any of the

15   parties?

16           Ms. Hall, we didn't hear from you at all today.

17           MS. HALL:  Yes, Your Honor.  I'm here to -- I've been

18   working behind the scenes.  Thank you.

19           THE COURT:  All right.  Well, now we've heard from you

20   so -- do you have any issues regarding any of these dates or

21   arrangements?

22           MS. HALL:  Oh, no, Your Honor.  Thank you.

23           THE COURT:  All right.  Good enough.  Then that will

24   be --

25           MR. GILLE:  Just to clarify.  With ten court days,

1    that makes it May 8th; correct?

2          THE COURT:  Yes.  Receiving confirmation from my

3    clerk, May 8th it is.

4          MR. GILLE:  Thank you.

5          THE COURT:  All right.  I'll look for your further

6    briefing.  My orders will issue as to the other components of

7    the motion.  And as I indicated, I will advise you upon receipt

8    of your briefs whether further arguments will be appropriate.

9          Thank you, Counsel.

10         MR. GILLE:  Thank you, Your Honor.

11         MS. ALBINI:  Thank you, Your Honor.

12         MS. HALL:  Thank you, Your Honor.

13         MR. DESIMONE:  Thank you very much, Your Honor.

14         THE COURT:  Thank you.

15         (The audio proceedings were adjourned at 11:36 a.m.)

16                **CERTIFICATE OF TRANSCRIBER**

17         I certify that the foregoing is a true and correct
transcript, to the best of my ability, of the above pages of
18    the official electronic sound recording provided to me by the
U.S. District Court, Eastern District of California, of the
19    proceedings taken on the date and time previously stated in the
above matter.  I further certify that I am neither counsel for,
20    related to, nor employed by any of the parties to the action in
which this hearing was taken, and further that I am not
21    financially nor otherwise interested in the outcome of the
action.

22

                            Date: 5/3/2024
23                         /s/ Abigail R. Torres

24                      _____
                         Abigail R. Torres, CSR 13700
25                         U.S. Official Court Reporter