1
2
3
4
5
6
7
8                **IN THE UNITED STATES DISTRICT COURT**

9                **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JoANN PRICE, et al.,                          No.  2:22-CV-1610-DAD-DMC-P

12                  Plaintiffs,

13        v.                                       FINDINGS AND RECOMMENDATIONS

14   ARTURO PACHECO, et al.,

15                  Defendants.

16

17                Plaintiffs, who are proceeding with retained counsel, bring this civil rights action

18   pursuant to 42 U.S.C. § 1983. Plaintiffs are the estate and successor-in-interest of Ronnie Price,

19   who is deceased.  Pending before the Court is the motion to dismiss Plaintiffs' third amended

20   complaint filed by Defendants Lynch and Baughman.  See ECF No. 130.  The parties appeared

21   for a hearing before the undersigned on April 24, 2024.  At the hearing, the Court considered the

22   parties' arguments and directed supplemental briefing on the following issues: (1) whether

23   Plaintiffs have pleaded sufficient facts to establish the supervisory liability of Defendants Lynch

24   and Baughman; and (2) whether the third amended complaint constitutes a "sham pleading."  On

25   May 8, 2024, the parties stipulated to withdrawal of the "sham pleading" issue, see ECF No. 147,

26   and the parties have filed supplemental briefs on the supervisory liability issue, see ECF Nos.

27   148, 149, and 152.

28   / / /

1

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555-56.  The complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief."  Id. (quoting Twombly, 550 U.S. at 557).

/ / /

/ / /

/ / /

2

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I.  BACKGROUND

### A.    Procedural History

This action was commenced with Plaintiffs' original complaint against Defendants Pacheco, Aurich, and Lynch filed on September 14, 2022.  See ECF No. 1.  On October 19, 2022, the Court determined Plaintiffs' complaint was appropriate for service on the three named defendants.  See ECF No. 3.  On December 29, 2022, Defendant Lynch filed a waiver of service of process.  See ECF No. 13.  On January 4, 2023, service of process was returned executed as to Defendants Aurich and Pacheco.  See ECF Nos. 16 and 17.

Pursuant to the parties' stipulation, Plaintiffs filed a first amended complaint on February 21, 2023.  See ECF No. 29.  In this pleading, Plaintiffs added Bigney, Villa, and Baughman as named defendants.  See id. at 1.  On March 7, 2023, Defendant Lynch filed a motion to dismiss the first amended complaint.  See ECF No. 31.  Defendant Aurich joined in that motion.  See ECF No. 32.

/ / /

/ / /

3

On April 4, 2023, Plaintiffs filed their second amended complaint, again pursuant to stipulation.  See ECF No. 36.  In this pleading, Plaintiffs added Luna and Lopez as named defendants.  See id. at 1.  The filing of the second amended complaint rendered Defendant Lynch's motion to dismiss moot.  Defendant Lynch's motion to dismiss the second amended complaint was filed on April 17, 2023.  See ECF No. 38.  No other defendants have joined in this motion.[1]  On June 2, 2023, the Court held a hearing on Defendant Lynch's motion to dismiss and took the matter under submission.  See ECF No. 45 (minutes).  Defendant Baughman filed a motion to dismiss the second amended complaint on August 1, 2023.  See ECF No. 61.

On August 16, 2023, the Court issued findings and recommendations that Defendant Lynch's motion to dismiss be granted.  See ECF No. 67.  Before these findings and recommendations regarding Defendant Lynch's motion to dismiss had been submitted to the District Judge, the Court conducted a hearing on Defendant Baughman's motion to dismiss on November 1, 2023.  See ECF No. 103 (minutes).  In briefing on Defendant Baughman's motion to dismiss, and at the November 1, 2023, hearing, Plaintiffs informally sought leave to file a third amended complaint to address the issues raised in the pending motions to dismiss as well as to provide notice of Mr. Price's next of kin.[2]  At the hearing, the Court directed Plaintiffs to file a formal motion for leave to amend and, on November 2, 2023, the Court issued an order setting a filing deadline of November 21, 2023, for such a motion.  See ECF No. 104.  The Court deferred submission of the August 16, 2023, findings and recommendations as to Defendant Lynch's motion to dismiss, as well as further consideration of Defendant Baughman's motion to dismiss, pending ruling on a motion for leave to amend.  See id.

/ / /

---

[1]      Though served, Defendant Pacheco has not appeared in the action.  Service of process has been approved for the remaining defendants.  See ECF No. 47.  Summons was returned executed as to Defendants Bigney, Lopez, Baughman, Luna, and Villa on July 11 and 12, 2023.  See ECF Nos. 50-54.  Defendant Pacheco filed an answer on July 14, 2023.  See ECF No. 55.  Defendant Luna filed an answer on August 15, 2023.  See ECF No. 65.  Defendant Luna also filed a crossclaim on August 15, 2023.  Defendant Aurich has been voluntarily dismissed pursuant to the parties' stipulation.  Defendant Luna has also been voluntarily dismissed, as has his crossclaim.

[2]      By this time, Plaintiffs were represented by new counsel, who substituted in the case in September 2023.  See ECF No. 83 (order approving substitution).

Plaintiffs filed their motion for leave to file a third amended complaint on November 21, 2023.  See ECF No. 107.  The parties appeared for a hearing before the undersigned on January 10, 2024.  See ECF No. 126 (minutes).  At the hearing, the Court indicated that it would be granting the motion for leave to amend and, on this ruling, Defendants Lynch and Baughman withdrew their pending motions to dismiss.  On January 25, 2024, the Court issued an order granting leave to amend, vacating the August 16, 2023, findings and recommendations addressing Defendant Lynch's withdrawn motion to dismiss, and setting a deadline for Defendants to respond to the third amended complaint.  See ECF No. 129.

Defendants Lynch and Baughman filed the pending motion to dismiss Plaintiffs' third amended complaint on February 26, 2024.  See ECF No. 130.  The parties appeared for a hearing before the undersigned on April 24, 2024.  See ECF No. 143 (minutes).  At the hearing the Court directed the parties to file supplemental briefing on the following issues: (1) whether the third amended complaint contains sufficient facts to establish supervisory liability; and (2) whether the third amended complaint constitutes a "sham pleading."  The parties thereafter filed a stipulation for withdrawal of the "sham pleading" argument, see ECF No. 147, and filed supplemental briefs on the supervisory liability argument, see ECF Nos. 148, 149, and 152.

### B.   Plaintiffs' Current Allegations

This action proceeds on Plaintiffs' third amended complaint.  See ECF No. 128.  Plaintiffs name the following as defendants: (1) Arturo Pacheco; (2) Ashley Aurich; (3) Jeffrey Bigney; (4) Arturo Luna; (5) Dorian Lopez; (6) Brenda Villa; (7) Jeffrey Lynch; and (8) David Baughman.  See id. at 1-4. All Defendants are alleged to have been employees of the California Department of Corrections and Rehabilitation (CDCR) working at California State Prison – Sacramento (CSP-Sac.) during the times relevant to the complaint.  See id.  Defendants Aurich, Lopez, and Luna have been voluntarily dismissed.  See ECF Nos. 62, 140, and 155.  All remaining defendants are represented by counsel except Defendant Pacheco who is proceeding pro se.  Defendants Bigney and Villa remain unserved.

/ / /

/ / /

1        Plaintiffs allege the following introductory facts:

2           2.     On or about September 15, 2016, Mr. Price was assaulted by the California Department of Corrections and Rehabilitation [hereinafter CDCR] guard Arturo Pacheco and taken to University of California Davis Medical Center [hereinafter UC Davis Medical Center] for treatment where he died two days later as a result of the injuries suffered in the assault. Unbeknownst to the Price family, multiple prison guards falsified reports and conspired to cover up the assault and other felonious conduct toward Mr. Price.

ECF No. 128, pg. 2.

By way of further background, Plaintiffs allege that the CDCR Health Care Department Operations Manual, section 3.1.19, requires the prison warden or his/her designee to notify an inmate's next of kin within 24 hours of the death, serious illness, or serious injury of the inmate.  See id. at 5-6.  Plaintiffs also allege an informal "code of silence" among correctional staff to not report on another correctional staff member's errors, misconduct, or crimes.  See id. at 6.  Plaintiffs assert that correctional staff who violate this informal code of silence experience harassment and retaliation.  See id.  According to Plaintiffs, beginning in 2016 one or more correctional officers filed reports with Defendants Baughman and Lynch alleging rampant corruption and the continued existence of the code of silence within CSP-Sac.  See id.  Plaintiffs claim that, despite these reports, it took nearly two years for CDCR to complete its investigation in this case.  See id.

Plaintiffs next outline the facts relating to Mr. Price's death.  See id. at 6-9. Plaintiffs state that Mr. Price was assaulted by Defendant Pacheco on September 15, 2016, as Pacheco and Aurich were escorting Mr. Price between buildings at SCP-Sac.  See id. at 6. Pacheco informed Mr. Price that he was being moved to another cell with a new cellmate.  See id. Mr. Prices asked to be taken to Administrative Segregation.  See id.  Nonetheless, and although Mr. Price had agreed to be handcuffed and escorted to Administrative Segregation, Pacheco told Mr. Price that he was being taken to his new cell.  See id. at 7.  When so informed, Mr. Price

/ / /

/ / /

/ / /

stated that he was not going to a new cell and stopped walking.  <u>See id.</u>  Plaintiffs next allege:

> 30.     While being observed by Defendants Aurich, Luna, and
> Bigney, Defendant Pacheco squatted down, placed his shoulder on Mr.
> Price's buttock area, grabbed Mr. Price's quadriceps and intentionally pushed
> Mr. Price forward with his body weight while Price still had his hands
> handcuffed behind his back. Defendant Pacheco's unjustified use of force
> caused Mr. Price to fall violently forward onto his face impacting the
> concrete floor.

<u>Id.</u>

Following this, Mr. Price was taken to the prison medical clinic where it was determined that Mr. Price needed to be sent to U.C. Davis Medical Center for emergency medical treatment.  <u>See id.</u> at 7-8.  Mr. Price received extensive emergency medical care at the hospital and was admitted.  <u>See id.</u> at 8.  At the hospital, Mr. Price gave a recorded interview to Sergeant Kevin Steele.  <u>See id.</u> at 8-9.  According to Plaintiffs, Defendants Baughman and Lynch, the acting warden and assistant warden, respectively, either knew or should have known about the recorded interview.  <u>See id.</u> at 9.  Plaintiffs state that Mr. Price died on September 17, 2016, as a result of the injuries sustained two days earlier.  <u>See id.</u>  Mr. Price's death was ruled a homicide by the Sacramento County Coroner.  <u>See id.</u>

Plaintiffs next outline the facts relating to notification of Mr. Price's death.  <u>See id.</u> at 9-10.  Plaintiffs allege that Defendants Baughman and Lynch failed to notify Mr. Price's next of kin "consistent with the requirements of CDCR Health Care Operations Manual 3.1.19."  <u>Id.</u> at 9.  According to Plaintiffs, on September 24, 2016, Sergeant Steele, who conducted the recorded interview of Mr. Price and identified himself to Mr. Price's family as a member of the Investigative Services Unit, "deceived Ms. Price by informing her that Mr. Price was hit in the jaw by a cellmate."  <u>Id.</u>  Plaintiffs contend that Mr. Price's family reasonably relied on Sergeant Steele's representation and had no reason to question the stated cause of death.  <u>See id.</u> at 9-10.  The family elected to have Mr. Price's body cremated.  <u>See id.</u> at 9.  Plaintiffs state that, "[d]ue to the concealment of the cause of Mr. Price's death," the family was not provided the opportunity to request an autopsy.  <u>Id.</u> at 10.

/ / /

/ / /

7

1    Next, Plaintiffs outline facts relating to an alleged cover-up.  See id. at 10-14.

2   Central to these allegations are various text messages sent to and from the officers who were on

3   the scene on September 15, 2016.  See id.  Specifically, Plaintiffs reference a February 19, 2017,

4   text sent by Defendant Lopez to an unknown individual which stated: "LOL!  Code of Silence

5   homie" and "you know it."  Id. at 13.  As to Defendants Baughman and Lynch, Plaintiffs contend

6   that they became aware of a cover-up "by the Spring of 2017."  Id. at 14.  According to Plaintiffs:

7        89.    Defendants Baughman and Lynch became aware of defendant
            Lopez's text conversation no later than the Spring of 2017. Despite being
8           aware of this conduct defendant Lopez continued to work at CSP Sacramento
            for more than another year.
9        90.    On or about June 25, 2018, defendants Villa, Pacheco, Aurich,
            Luna, Lopez and Bigney were fired due to the aforementioned conduct.
10       91.    The Notice of Adverse Action terminating defendant Lopez's
            employment acknowledges the existence of the code of silence at CSP Sac.
11          The notice states "When confronted with the above text message exchange,
            you [defendant Lopez] confirmed that you had indeed authored the text
12          messages referring to the "code of silence" at CSP-SAC...." While the Notice
            of Adverse Action goes on to state that the code of silence is not allowed, the
13          notice confirms the code of silence exists.
         92.    The Notice of Adverse Action was signed by defendant
14          Baughman.
         93.    Accordingly, Baughman was aware of the truth pertaining to
15          Mr. Price's death on or before June 25, 2018 (within the two-year statute of
            limitations for the causes of action at issue). However, no one informed Ms.
16          Price or her family about the truth of his death and
            concealed the truth of the death from Ms. Price and her family.
17

18   Id.

19       Next, Plaintiffs allege facts relating to notification provided to the family of Mr.

20   Price's true cause of death.  See id. at 16-17.  According to Plaintiffs:

21       113.    On or around July 22, 2022, Ms. Price received a letter from
            attorney Kresta Daly. Ms. Daly stated that she was involved in a wrongful
22          death and cover up case occurring at CSP where prison guards were believed
            to be involved in a murder. The letter continued: "[w]e
23          recently learned about a potentially [sic] situation involving another person,
            Ronnie Price, and believe you may have important information." For the first
24          time since Mr. Price's death, his family was told the truth that the prison
            guards were believed to be responsible for Mr. Price's death.
25       114.    Upon receiving the letter Ms. Price and her family initiated an
            internet search and became aware of prison guard's potential involvement in
26          the death of Mr Price. 115. Prior to receiving Ms. Daly's letter, Ms. Price had
            no clue that Mr. Price was killed by a prison guard and instead, believed Mr.
27          Price was killed by his cellmate because that is the lie she was told by

28   / / /

8

CDCR. The instant action was filed less than two months after the family was notified of the potential wrongdoing.

Id. at 16-17.

Plaintiffs allege the following claims: (1) violation of 42 U.S.C. § 1983 against Defendants Pacheco, Bigney, and Luna based on excessive force; (2) violation of California Civil Code § 52.1 (Bane Act) against Defendants Pacheco, Bigney, and Luna; (3) violation of 42 U.S.C. § 1983 based on supervisory liability against Defendants Baughman and Lynch; (4) violation of California Code of Civil Procedure § 377.60, et seq., against all defendants based on wrongful death; (5) violation of 42 US.C. § 1983 against Defendants Baughman, Lynch, and Villa based on failure to protect; (6) violation of California Civil Code § 1710(3) against Defendants Baughman and Lynch based on concealment; and (7) violation of California Civil Code § 1710(3) against Defendants Baughman and Lynch based on intentional misrepresentation. See ECF No. 128, pgs. 21-31.

## II.  DISCUSSION

In their motion to dismiss, Defendants Baughman and Lynch argue as follows (1) Plaintiffs' claims are barred by the statute of limitations; (2) Plaintiffs' complaint fails to state a claim upon which relief can be granted; (3) Plaintiffs have failed to join an indispensable party, namely Mr. Price's half-sibling Beverly Dapremont; and (4) Plaintiffs' new state law claims must be dismissed for failure to allege compliance with the California Government Tort Claims Act.  See ECF No. 130.  In their supplemental briefing, Defendants further contend – for the first time – that Plaintiffs' state law claims against them also fail because they are immune pursuant to California Government Code § 820.8.  See ECF No. 149.

### A.    Statute of Limitations

For claims brought under 42 U.S.C. § 1983, the applicable statute of limitations is California's statute of limitations for personal injury actions.  See Wallace v. Kato, 549 U.S. 384, 387-88 (2007); Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) ("[f]or actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions."); Jackson

1    v. Barnes, 749 F.3d 755, 761 (9th Cir. 2014); Wilson v. Garcia, 471 U.S. 261, 280 (1985); Karim-

2    Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).  In California, there is a

3    two-year statute of limitations for personal injury actions such as § 1983 cases.  See Cal. Civ.

4    Proc. Code § 335.1; Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004).

5              Notwithstanding the application of the forum's state law regarding the statute of

6    limitations, including statutory and equitable tolling, in the context of a § 1983 action it is

7    "federal law" which "governs when a claim accrues."  Fink v. Shedler, 192 F.3d 911, 914 (9th

8    Cir. 1999) (citing Elliott v. City of Union City, 25 F.3d 800, 801-02 (9th Cir.1994)).  "A claim

9    accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of

10   action." Id. (citing Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir. 1996)); see also TwoRivers v.

11   Lewis, 174 F.3d 987, 991 (9th Cir. 1999).

12             Defendants argue that Plaintiffs claims accrued on September 15, 2016 – the date

13   of the incident.  See ECF No. 130, pg. 4.  Applying a two-year limitations period, Defendants

14   conclude that Plaintiffs' complaint was due on or before September 15, 2018.  See id.  Defendants

15   argue that this action, which was not filed until September 2022 is untimely and barred.  See id.

16   In opposition, Plaintiffs argue: (1) the claims accrued in July 2022 under the California delayed

17   discovery rule; and (2) Defendants are equitably estopped from asserting the statute of limitations

18   defense.  See ECF Nos. 136, pgs.14-18, and 137, pgs. 12-16.

19             California's delayed discovery rule permits delayed accrual of a cause of action

20   "until a plaintiff knew or should have known of the wrongful conduct at issue."  El Paso Loco,

21   Inc. v. Hashim, 316 F.3d 1032, 1039 (9th Cir. 2003) (citations to California cases omitted).  "To

22   rely on this rule, the plaintiff must plead specific facts describing the time and manner of

23   discovery and the inability to have discovered the claim earlier despite due diligence."  Parrish v.

24   Nat'l Football Players Ass'n, 534 F. Supp. 2d 1081, 1089 (N.D. Cal. 2007).  Application of the

25   rule involves a two-part analysis.  See Alexander v. Exxon Mobile, 219 Cal. App. 4th 1236

26   (2013).  The initial inquiry is whether the plaintiff possessed information that would cause a

27   reasonable person to inquire into the cause of his injuries.  See id.  The duty to inquire arises

28   when the plaintiff becomes aware of facts that would cause a reasonably prudent person to

10

1  suspect his injuries were the result of wrongdoing.  See id.  If the inquiry duty is triggered, the

2  next question is whether an investigation would have disclosed to the plaintiff a factual basis for

3  his claim.  See id.  The statute of limitations begins to run when the investigation brings such

4  information to light.  See id.

5  In opposition, Plaintiffs argue:

6      Despite Defendants' argument to the contrary, the California delayed
   discovery rule does not require any "particular involvement" or fraud on
7      behalf of the Defendant to toll the limitations period. Rather the limitations
   period begins when an investigation done by Plaintiff would have revealed
8      the factual basis for a cause of action. Here, Plaintiff was in possession the
   fact that Price died while incarcerated. (3AC at ¶¶ 42-47). However, Plaintiff
9      alleged that she was told that Mr. Price was killed by an inmate and was not
   in possession of any factual basis for determining that Mr. Price was killed
10     by a prison guard. (Id). Plaintiff alleged she attempted to investigate and she
   and her family called 20-30 times and attempted to get answers about Mr.
11     Price's death. (3AC at ¶¶ 43-45). Any investigation that the Plaintiff could
   have theoretically conducted outside of the prison would not have brought
12     the truth to light as the officials involved were engaged in a massive cover-
   up. It was not possible for Plaintiff to have uncovered the information prior
13     to Pacheco's guilty plea as no one informed her of the facts and it was not
   reported in the news until July 2022. (3AC at ¶¶ 113-116, 134, 135, 137). **As
14     such, the statute of limitations should be considered to run in July 2022.
   Plaintiff filed her initial complaint on September 14, 2022—well within
15     the statute of limitations.**

16  ECF Nos. 136, pgs. 15-16, and 137, pg. 13 (emphasis in originals).

17  In reply, Defendants argue that there is no duty to update Plaintiffs on the true

18  cause of death of Mr. Price.  See ECF No. 138, pgs. 2-3.  Defendants further contend that

19  Plaintiffs made no reasonable attempt at investigation.  See id.

20  Plaintiffs' argument is persuasive.  Specifically, the duty to inquire was not

21  triggered in this case until July 2022 when Plaintiffs were informed for the first time that Mr.

22  Price's cause of death may not have resulted from an attack by another inmate.  Until that time,

23  and despite Plaintiffs' numerous unreturned phone calls asking for further information, Plaintiffs

24  believed that Mr. Price's cause of death was an attack by another inmate, as relayed to the family

25  by Sergeant Steele in September 2016, whom they had no reason to disbelieve.  Under the belief

26  that Mr. Price died as a result of an inmate-on-inmate assault, and not as a result of wrongdoing

27  on the part of correctional staff, Plaintiffs would not have reasonably been expected to seek to

28  obtain the coroner's report prior to July 2022.  Once the duty to investigate was triggered in July

11

1  2022, Plaintiffs then conducted an investigation and learned Mr. Price's true cause of death and

2  timely filed suit in September 2022.

3        In applying the delayed discovery rule, it does not matter whether Defendants had

4  any duty to inform the Price family of Mr. Price's cause of death.  What matters is the facts

5  known to Plaintiffs and when.  Thus, Defendants' arguments concerning the specific

6  requirements of the notice provision of section 3.1.19 are irrelevant.  Further, because Plaintiffs

7  believed prior to July 2022 that Mr. Price's death was caused by an inmate-on-inmate assault,

8  there would have been no reason for the family to have requested the autopsy report any sooner.

9        Because Plaintiffs' claims accrued in July 2022 and the statute of limitations ran in

10  July 2024, and because Plaintiffs timely filed suit in September 2022, it is unnecessary to

11  determine whether Defendants should be equitably estopped from asserting the statute of

12  limitations defense.  Defendants' motion to dismiss should be denied insofar as they argue

13  Plaintiffs' claims against them are barred by the statute of limitations.

14      **B.**    <u>**Failure to State a Claim**</u>

15        Defendants Baughman and Lynch argue that Plaintiffs' third amended complaint

16  fails to state sufficient facts to establish their liability under § 1983.  <u>See</u> ECF No. 130, pgs. 5-8.

17        Defendants Baughman and Lynch assert that Plaintiffs have failed to allege any

18  facts showing their personal involvement and that Plaintiffs' § 1983 theories improperly rest on

19  the theory of respondeat superior.  <u>See</u> ECF No. 130, pgs. 5-8.  More specifically, Defendants

20  contend: (1) as to all federal claims under § 1983, Plaintiffs have failed to allege sufficient facts

21  to establish their liability as supervisors; and (2) as to Plaintiffs' failure-to-protect claim under

22  § 1983, Plaintiffs have failed to allege facts to show that Defendants Baughman or Lynch had

23  knowledge of any risk to Mr. Price's safety.  <u>See</u> <u>id.</u>

24      1.    <u>Supervisory Liability</u>

25        Supervisory personnel are generally not liable under § 1983 for the actions of their

26  employees.  <u>See</u> <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

27  respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

28  violations of subordinates if the supervisor participated in or directed the violations.  <u>See</u> <u>id.</u>  A

supervisory defendant may also be liable where he or she knew of constitutional violations but failed to act to prevent them.  See id.  Supervisory personnel who act by implementing a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may also be liable even where such personnel do not overtly participate in the offensive act.  See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution."  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  "'The requisite causal connection can be established. . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'"  Rodriguez v. Cnty. Of Los Angeles, 891 F.3d 776, 798 (9th Cir. 2018) (quoting Starr v. Bacca, 652 F.3d 1202, 1207 (9th Cir. 2011)).

According to Defendants Baughman and Lynch, Plaintiffs fail to allege how they are "responsible for, or otherwise involved in, the policies, practices, or customs Plaintiff[s] now claim[] are at issue."  ECF No. 130, pg. 6.  In opposition, Plaintiffs contend:

> Plaintiff sufficiently alleged that Baughman and Lynch violated the Eighth Amendment's protection against cruel and unusual punishment by ignoring their subordinates' use of force. Plaintiff alleged that Baughman and Lynch were aware guards (including Pacheco) were assaulting inmates prior to Price's death yet did not stop the behavior. (3AC at ¶¶ 102-103,143-144). Plaintiff further alleged that Baughman and Lynch were aware that their subordinates followed a "code of silence," which they reasonably should have known would cause his subordinates to freely inflict constitutional injuries knowing they would be "protected" yet failed to implement any training or enforcement to remedy the issue. (3AC at 21-23, 85-91, 101-106).

/ / /

13

The Code of Silence is in direct contradiction to the CDCR's Code of Ethics "CDCR's Department Operations Manual, 33030.3.3 Law Enforcement Code of Ethics provides, in pertinent part: "As employees and appointees of the Department, we are expected to perform our duties, at all times, as follows: Demonstrate professionalism, honesty, and integrity; Accept responsibility for our actions and their consequences; Appreciate differences in people, their ideas, and opinions; Treat fellow employees, inmates, wards, parolees, victims, their families, and the public with dignity and respect; Respect the rights of others and treat them fairly regardless of race, color, national origin, ancestry, gender, religion, marital status, age, disability, medical condition, pregnancy, sexual orientation, veteran status, or political affiliation; Comply with all applicable laws and regulations.." (3AC at ¶ 19). Baughman and Lynch were responsible for ensuring that officers were trained and complied with the Code of Ethics. (3AC at ¶ 164). Plaintiff has sufficiently alleged that Baughman and Lynch were acquiescent in the clear disregard of policy which led to constitutional violations.

ECF No. 136, pgs. 19-20.

On the Court's order following the April 24, 2024, hearing, the parties have filed supplemental briefs on the issue of supervisory liability.  See ECF Nos. 148, 149, and 152.  In further opposition to Defendants' motion to dismiss, Plaintiffs argue: (1) Defendants Baughman and Lynch had a duty under California law to establish operational plans and procedures for implementation of prison regulations and the law allows for supervisors to be liable for implementing a policy that itself repudiates a constitutional right; and (2) Defendants Baughman and Lynch were on notice of and deliberately indifferent to the "culture of corruption" and "code of silence" which contributed to Mr. Price's death.  See ECF No. 148.

According to Plaintiffs:

. . . Plaintiff has alleged that the Code of Silence and known failure to investigate uses of force emboldened Pacheco, so he too was impervious to the consequences of his misconduct, and his text messages confirming the code of silence evidence his bold confidence that his brutal assault, witnessed by several of his co-correctional officers, would be ignored and unpunished. (3AC at para. 48-84, 141-142).

* * *

Plaintiff has sufficiently alleged that Baughman and Lynch were on notice of and deliberately indifferent to the known of obvious consequences of the Code of Silence, including the failure to conduct adequate investigations. . . .

* * *

14

. . . Plaintiff alleged that Baughman and Lynch were aware of the "culture of corruption resulting in the use of excessive force against inmates" prior to Price's death but failed to issue any discipline of corrective action. (3AC at para. 102, 168). Baughman and Lynch were aware guards (including Pacheco) were assaulting inmates prior to Price's death yet did not stop the behavior. (3AC at ¶ 102-103,143-144). Plaintiff further alleged that Baughman and Lynch were aware that their subordinates followed a "code of silence," which they reasonably should have known would cause his subordinates to freely inflict constitutional injuries knowing they would be "protected" yet failed to implement any training or enforcement to remedy the issue. (3AC at 21-23, 85-91, 101-106).

\* \* \*

Just four months prior to Pacheco's assault on Price, Pacheco pepper-sprayed a 54-year-old prisoner in his cell, falsely claiming later that the prisoner had a piece of glass and refused to drop it. (3AC at 103). Upon information and belief, Baughman and Lynch knew or should have known that Pacheco was falsifying the reports to cover up excessive force. (3AC at 104). Since Pacheco was not disciplined for this conduct, it can be reasonably inferred that procedure to investigate the use of force was also inadequate in Pacheco's prior incident.

. . . Despite the fact that the prison had a videorecorded interview of Mr. Price in its possession outlining the brutal and unlawful force utilized against him, as required under the CCR, Baughman and Lynch clearly had an existing policy to abide by the Code of Silence and not adequately investigate uses of force and staff misconduct because they did nothing. The complete failure to properly investigate this incident by multiple levels of review—despite a videorecorded interview in the prison's possession where a deceased inmate accounts what happened to him--is evidence that there was a policy of failing to investigate uses of force, which further emboldened officers to commit constitutional violations.

\* \* \*

If the investigation did occur as required by the CDCR, Baughman and Lynch would have known about the recording. (3AC at para 40). Pursuant to the CCR, the Warden is involved in reviewing uses of force. *See* 15 CCR Section 3268.1. The fact that Pacheco was not disciplined until 2018 creates a reasonable inference that Baughman and/or Lynch ratified his conduct. (3AC at para. 90). Accordingly, Plaintiff's Third Amended Complaint alleges facts that support a theory of supervisory liability against Baughman and Lynch. An order to dismiss would deprive Mr. Price's family of an opportunity to hold prison officials for obvious deliberate indifference to the clear evidence that Officer Pacheco engaged in an unnecessary and deadly use of force. . . .

ECF No. 148, pgs. 4-8.

/ / /

/ / /

In their supplemental brief, Defendants argue Plaintiffs' reliance on <u>Starr v. Baca</u> is misplaced because the facts of this case are distinguishable.  <u>See</u> ECF No. 149, pg. 2.  Defendants also criticize Plaintiffs' citation to <u>Larez v. City of Los Angeles</u>, 946, F 2d 630 (9th Cir. 1991), which considered the sufficiency of a jury verdict following evidence at trial, including expert testimony on police department procedures, showing the police chief's "condonation of, and acquiescence in, the officers' use of excessive force. . . ."  ECF No. 149, pg. 3 (citing 946, F 2d 630, 647 (9th Cir. 1991)).  Defendants state:

> Here, by contrast, Plaintiff only supplies conclusory statements that defendant Baughman and Lynch knew or should have known about a single incident months before the incident that is the basis for Plaintiff's lawsuit, and which involves an unrelated individual. Unlike the expert testimony in *Larez*, Plaintiff's conclusions are her own supposition that is not supported by factual allegations. There are no factual allegations that Baughman or Lynch knew about, let alone ignored or dismissed, prior complaints against any of the officer defendants for similar displays of excessive force.

<u>Id.</u>

Finally, as to the "code of silence," Defendants argue:

> . . .Plaintiff alternatively argues that there can be supervisor liability under a theory akin to a Fourth Amendment "Monell claim" and that the Defendants can be liable based on "customs and policies." (Gille Dec., Ex. A, p. 14:9-15.). . . [N]o facts are alleged that could support Plaintiff's conclusion that there was a "custom and policy" of deliberate indifference, and that Baughman or Lynch must have been aware of the same. Again, apart from citing a single prior incident, there are no factual allegations that there was a prior custom and practice whereby Baughman or Lynch knowingly allowed officers to violate constitutional rights or were aware of it and turned a blind eye. And in this matter, the allegations are that the officers in question were fired and some were prosecuted because of the subject incident. This does not infer there was a custom or policy in effect as Plaintiff summarily asserts.

ECF No. 149, pg. 4.

In paragraph 21 of the third amended complaint, Plaintiffs allege the existence of the "code of silence" which is an "informal code of silence among correctional [and other] officers not to report on a colleague's errors, misconducts, or crimes." ECF No. 128, pg. 6.  In paragraph 22, Plaintiffs further allege that, in November 2016, inmate Milton Beverly, Jr. died while at CSP-Sac. and one officer was prepared to testify as to a "code of silence" cover-up, the officer reported the facts to Defendants Baughman and Lynch, and that Defendants failed to act.

16

1   See id.  In paragraph 23, Plaintiff allege that, "no later than 2016," other officers filed multiple

2   reports with Defendants Baughman and Lynch alleging rampant corruption and the continued

3   existence of the "code of silence" at CSP-Sac.  Id.

4        In paragraph 85, Plaintiffs allege that Luna was interviewed by OIA in October

5   2016, and that, after learning of OIA's investigation, Pacheco sent a text message to Aurich to

6   maintain the "code of silence."  Id. at 13.  In paragraph 86, Plaintiffs claims that Defendants

7   Baughman and Lynch became aware of this test message in the Spring of 2017.  See id.  In

8   paragraph 87, Plaintiffs allege that Lopez texted an unknown person about the "code of silence"

9   at CSP-Sac.  Id.  In paragraphs 88 and 89, Plaintiffs further contends that, as with the October

10  2016, text, Defendants Baughman and Lynch became aware of the Spring 2017 text shortly after

11  it was sent and nonetheless allowed Lopez to continue in his duties for more than a year.  See id.

12  at 14.  In paragraphs 91 and 92, Plaintiffs allege that the Notice of Adverse Action which related

13  to the termination in June 2018 of Villa, Pacheco, Aurich, Luna, Lopez and Bigney for complicity

14  with the "code of silence" was signed by Defendant Baughman.  Id.

15       In paragraph 101, Plaintiffs allege that Defendants Baughman and Lynch had

16  actual and/or constructive knowledge of the so-called "code of silence."  Id. at 14.  In paragraph

17  102, Plaintiffs more specifically allege that, prior to Mr. Price's death, Defendants Baughman and

18  Lynch received reports from other correctional officers, presumably referring to the reports

19  outlined above, about a "culture of corruption" resulting in the use of excessive force against

20  inmates.  Id. at 15.  In paragraph 103, Plaintiffs contend that Pacheco pepper-sprayed an inmate in

21  his cell in May 2016 and later joked in a text to a friend that the incident was "funny" and that it's

22  "all about how u write ur report" and "ur partners have ur back."  Id.  In paragraph 104, Plaintiffs

23  contend Defendants Baughman and Lynch "knew or should have known" that Pacheco was

24  falsifying reports to cover up excessive force.  Id.  In paragraph 105, Plaintiffs contend that, a

25  year after Mr. Price's death, Defendants Baughman and Lynch received other reports from

26  officers concerning the "code of silence" and corruption and that they took no timely action.  Id.

27  / / /

28  / / /

In paragraphs 143 and 144, Plaintiffs allege that Defendants Baughman and Lynch were aware of and failed to take action concerning serious instances of excessive force by prison guards at CSP-Sac. See id. at 20.

In paragraph 168, under the heading "Supervisory Liability for Violation of Civil Rights 42 U.S.C. Section 1983," Plaintiffs allege Defendants' failure to supervise, train, and discipline based on the more specific facts outlined above. See id. at 24-25.

The Court finds that Plaintiffs' allegations are sufficient to allow for Plaintiffs' supervisor liability claims to proceed as against Defendants Baughman and Lynch. Specifically, Plaintiffs' allegations, when accepted as true, show the requisite causal connection between Defendants Baughman and Mr. Price's death by setting forth facts which show: (1) that Defendants Baughman and Lynch knew or should have known prior to Mr. Price's death of the corruption at CSP-Sac. associated with excessive force on inmates and a "code of silence" to cover up misconduct by officers; and (b) that this corruption and "code of silence" allowed for the excessive force which resulted in Mr. Price's death. See Rodriguez, 891 F.3d at 798; Starr, 652 F.3d at 1207.

While the Court agrees with Defendants that it is not plausible to infer that a prison warden is aware of everything that happens in the prison, see Vega v. Davis, 572 F. App'x 611, 618 (10th Cir. 2014), the facts alleged here are sufficient to allow for the inference that Defendants Baughman and Lynch knew or should have known about the specific corruption and "code of silence" which was pervasive at CSP-Sac. in the time leading up to and even after Mr. Price's death. Unlike Sullivan v. Biter, 2017 WL 1540256, at *1 (E.D. Cal. 2017), Herrera v. California Dep't of Corr. & Rehab., 2017 WL 117861, at *2 (E.D. Cal. 2017), and Tennyson v. County of Sacramento, 2020 WL 4059568, at *3 (E.D. Cal. 2020), where the plaintiffs' allegations were too vague and conclusory, the allegations here are specific enough and sufficient to put Defendants on notice of the nature of the claims against them. In particular, as discussed above, the allegations in Plaintiffs' third amended complaint indicate that Defendants Baughman and Lynch had actual knowledge of the corruption and "code of silence" operating at CSP-Sac., and that they had this knowledge prior to Mr. Price's death and nonetheless failed to take timely

18

1   corrective action, and that this failure led to Mr. Price's death.

2                  2.      Failure-to-Protect Claim

3          The treatment a prisoner receives in prison and the conditions under which the

4   prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

5   and unusual punishment.   See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

6   511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

7   of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102

8   (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

9   Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

10  "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy,

11  801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when

12  two requirements are met: (1) objectively, the official's act or omission must be so serious such

13  that it results in the denial of the minimal civilized measure of life's necessities; and (2)

14  subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

15  inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

16  official must have a "sufficiently culpable mind."  See id.

17         Under these principles, prison officials have a duty to take reasonable steps to

18  protect inmates from physical abuse.  See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir.

19  1982); Farmer, 511 U.S. at 833.  Liability exists only when two requirements are met: (1)

20  objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious

21  harm; and (2) subjectively, prison officials knew of and disregarded the risk.  See Farmer, 511

22  U.S. at 837.  The very obviousness of the risk may suffice to establish the knowledge element.

23  See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable,

24  however, if evidence is presented that they lacked knowledge of a safety risk.  See Farmer, 511

25  U.S. at 844.  The knowledge element does not require that the plaintiff prove that prison officials

26  know for a certainty that the inmate's safety is in danger, but it requires proof of more than a

27  mere suspicion of danger.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).  Finally, the

28  plaintiff must show that prison officials disregarded a risk.  Thus, where prison officials actually

1    knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk,

2    even if harm ultimately was not averted.  See Farmer, 511 U.S. at 844.

3            The Court rejects Defendants' argument that Plaintiffs cannot maintain a failure-to-

4    protect claim because Defendants lacked knowledge of a risk to Mr. Price.  As discussed above,

5    Plaintiffs have alleged sufficient facts to show that Defendants Baughman and Lynch were aware

6    of the corruption and "code of silence" at CSP-Sac. to cover up instances of excessive force on

7    inmates.  Mr. Price's incarceration under this regime posed a danger to his safety, and the facts

8    alleged are sufficient to allow for the inference that Defendants Baughman and Lynch were aware

9    of this danger and failed to take corrective action.

10       **C.**    **Joinder**

11           Defendants Baughman and Lynch argue that the entire action should be dismissed

12   pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join an indispensable party

13   under Federal Rule of Civil Procedure 19.  See ECF No. 130, pgs. 8-10.  Defendants assert:

14            There is an indispensable party in this case, the Decedent's adult
          brother Beverly Dapremont, who is an equal heir under California intestate

15        succession. (ECF 46.) However, Mr. Dapremont was not included as a
          plaintiff or a nominal defendant. (ECF 128.) The existence of equal heir and

16        the intentional exclusion of that person presents an indispensable-party issue
          under Federal Rule of Civil Procedure 12(b)(7).

17

18                                    * * *

19            Because Plaintiff was aware of Mr. Dapremont's existence and equal
          claim, her case must be dismissed, unless Mr. Dapremont is joined as a party

20        to this suit. If the case is allowed to proceed without him, Defendants could
          potentially be exposed to a double judgment for the same occurrence and

21        therefore, a judgment rendered in Dapremont's absence would not be
          adequate.

22   ECF No. 130, pgs. 8-10.

23           Defendants' argument has been rendered moot pursuant to the parties' stipulation

24   and order thereon.  See ECF Nos. 154 and 155.  Specifically, the parties have agreed that Mr.

25   Dapremont was provided notice of the pending action in May 2024, that for purposes of naming

26   Mr. Dapremont the statute of limitations ran on July 22, 2024, and that there would be no need to

27   file a fourth amended complaint naming Mr. Dapremont should the Court issue a final ruling on

28   the pending motion to dismiss after July 22, 2024.  See id.  Because July 22, 2024, passed before

                                                    20

1    the Court's final ruling, the parties' stipulation takes effect and there is no longer any need to

2    consider whether Mr. Dapremont must be named.  Mr. Dapremont has been provided notice and

3    has not joined in the action prior to expiration of the statute of limitations.

4        **D.**    **State Law Claims**

5            Defendants Baughman and Lynch argue that Plaintiffs' state law claims must be

6    dismissed because Plaintiffs have admitted in the third amended complaint non-compliance with

7    the California Government Tort Claims Act.  See ECF No. 130, pg. 8.  In supplemental briefing,

8    Defendants Baughman and Lynch also argue, for the first time, that Plaintiffs' state law claims

9    against them fail because they are immune under the California Government Code.  See ECF No.

10   149, pgs. 6-7.

11           1.    Claims Presentation

12           According to Defendants Baughman and Lynch:

13               Defendants seek dismissal of all state law claims because Plaintiffs
                 filed their original complaint after the time allowed by California
14               Government Code, Section 945.6. Under those requirements, all claims
                 alleged against public entities and their employees must be brought within
15               six months or 182 days, whichever is earlier, from the date the notice
                 rejections were deposited in the mail. Cal. Govt. Code § 945.6; *Gonzales v.*
16               *County of Los Angeles*, 199 Cal. App. 3d 601, 604 (1988). This six-month
                 period "is mandatory and strict compliance is required." *Clarke v. Upton*,
17               703 F. Supp. 2d 1037, 1044 (E.D. Cal. 2010) (citing *Julian v. City of San*
                 *Diego*, 183 Cal. App. 3d 169, 176 (1986)).
18               For the first time, Plaintiff seeks relief under California law.
                 However, Plaintiff failed to file a Government Claim against any defendant,
19               even after she claims she learned about the cause of her brother's death. She
                 also failed to allege any excuse for non-compliance or relief for filing a late
20               claim. In sum, she has made no effort to rectify this defect. Accordingly, her
                 state law claims must be dismissed.
21
22           ECF No. 130, pg. 8.

23           Citing California Government Code § 950.4, Plaintiffs assert that the claims

24   presentation requirement is inapplicable in this case because Plaintiffs had no reason to suspect

25   the involvement of government employees until July 2022 when the family learned the true cause

26   of Mr. Price's death.  See ECF No. 136, pg. 22.  Defendants Baughman and Lynch argue that the

27   rare exception to the claims presentation requirement allowed under § 950.4 only applies where

28   the circumstances surrounding the injury give no clue as to the involvement of government

                                           21

2cd9fcd917397661

1   personnel.  See ECF No. 138, pgs. 4-5.  According to Defendants Baughman and Lynch:

2   "Government Code section 950.4 is inapplicable here because Plaintiff knew that public

3   employees were involved in the alleged incident."  Id. at 5.

4            Under § 950.4, an exception to the claims presentation requirement exists when

5   the plaintiff pleads and proves lack of knowledge within the time required to present a claim that

6   government personnel were involved.  Here, Plaintiff have sufficiently alleged that, based on the

7   representation from Sergeant Steele in September 2016 that Mr. Price's death was caused by

8   another inmate, they had no reason to suspect the involvement of prison staff until they learned

9   the true cause of Mr. Price's cause of death in July 2022, well after the expiration of the time to

10   present a claim.  What remains is whether this allegation can be proven such that § 950.4 applies.

11   Thus, whether § 950.4 ultimately works in Plaintiffs' favor is a question for a later day, either on

12   summary judgment or at trial.  Defendants' motion should be denied as to the claims presentation

13   issue without prejudice to renewal on summary judgment or at time of trial.

14          2.    Immunity

15            Defendants Baughman and Lynch argue that they are immune from liability on

16   Plaintiffs' state law claims because they are immune under California Government Code § 820.8

17   for the conduct of subordinates.  See ECF No. 149, pgs. 6-7.  The Court notes that this issue was

18   not raised in Defendants' motion to dismiss and is argued for the first time in supplemental

19   briefing ordered on the issue of supervisory liability for Plaintiff's § 1983 claims.  The Court did

20   not invite additional briefing on any other issue and Plaintiffs' have not had an opportunity to

21   respond to Defendant's newly raised immunity assertion.

22            In any event, the Court finds that Defendants' immunity argument is not

23   persuasive.  Under § 820.8, direct tort liability for a state employee may not be premised on the

24   acts of subordinates.  See Weaver By and Through Weaver v. State, 63 Cal. App. 4th 188, 202

25   (1998).  As discussed above, the third amended complaint does not allege liability due only to the

26   actions of subordinates.  Rather, the allegations are sufficient to show a causal connection

27   between knowledge possessed by Defendants Baughman and Lynch concerning corruption and

28   cover-ups at CSP-Sac. and that despite this knowledge Defendants failed to take appropriate

action.

## III.  CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1.       Defendants' motion to dismiss, ECF No. 130, be denied.

2.       Defendants be directed to file an answer to Plaintiffs' third amended complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


Dated:  September 10, 2024

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE