UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANN PRICE, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>ARTURO PACHECO, et al.,<br><br>　　　　Defendants. | No. 2:22-cv-01610-DAD-DMC (PC)<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS AND DENYING DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. Nos. 130, 159) |

Plaintiffs, who are proceeding with retained counsel, bring this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiffs are the estate and successor-in-interest of Ronnie Price, who is deceased. Plaintiffs' claims are based on the death of Mr. Price, which occurred while he was an inmate at California State Prison–Sacramento ("CSP–Sac"). (Doc. No. 128 at 2.) In their third amended complaint ("TAC"), plaintiffs allege the following.

On September 15, 2016, Mr. Price was assaulted by defendant Arturo Pacheco, a California Department of Corrections and Rehabilitation ("CDCR") guard and employee, as defendant Pacheco and dismissed defendant Aurich escorted Mr. Price between buildings. (Doc. No. 128 at ¶ 24.) While Mr. Price was handcuffed, defendant Pacheco pushed him forward, causing him to fall violently forward onto his face impacting the concrete floor. (*Id*. at ¶ 30.)

/////

1  The impact of Mr. Price's head striking the concrete floor caused him to break his jaw, several
2  teeth, and injure his right shoulder. (*Id*. at ¶ 31.)
3        Medical staff determined that Mr. Price needed to be sent to UC Davis Medical Center to
4  receive emergency medical attention. (*Id*. at ¶ 37.) At UC Davis Medical Center, Mr. Price
5  received extensive emergency medical care and was hospitalized. (*Id*. at ¶ 38.) On September
6  16, 2016, Mr. Price gave a recorded interview to Sergeant Kevin Steele about what had happened
7  to him. (*Id*. at ¶ 39.) On September 17, 2016, Mr. Price died as the result of the injuries suffered
8  in the assault. (*Id*. at ¶ 41.) The Sacramento County Coroner subsequently ruled his death a
9  homicide. (*Id*.)
10       On September 24, 2016, Sergeant Steele called plaintiff JoAnn Price, Mr. Price's sister,
11 and informed her that Mr. Price had passed away and that he had been hit in the jaw by a
12 cellmate. (*Id*. at ¶ 43.) Mr. Price's family relied on this representation and subsequently called a
13 phone number provided by Sergeant Steele 20-30 times over the course of a month, concerned
14 over whether the cellmate would receive an extended sentence for Mr. Price's death. (*Id*. at ¶¶
15 43–45.) Nobody ever answered the calls placed to the number that was provided. (*Id*. at ¶ 45.)
16       On or around July 22, 2022, Ms. Price received a letter from attorney Kresta Daly. (*Id*. at
17 ¶ 113.) Attorney Daly stated that "she was involved in a wrongful death and cover up case
18 occurring at CSP where prison guards were believed to be involved in a murder." (*Id*.) For the
19 first time, the Price family learned that prison guards were believed to be responsible for Mr.
20 Price's death. (*Id*.)
21       Based on the above and other allegations, plaintiffs initiated this lawsuit on September 14,
22 2022. (Doc. No. 1.) The action presently proceeds against the following five defendants, all
23 alleged to have been CDCR employees at the time of the assault: Arturo Pacheco, Jeffrey
24 Bigney, Brenda Villa, Jeffrey Lynch, and David Baughman.[1] In their TAC, plaintiffs assert the
25 following claims: (1) a 42 U.S.C. § 1983 claim for excessive use of force in violation of the
26
27 [1] Plaintiffs allege that Pacheco, Bigney, and Villa were employees of CDCR, Lynch was the warden and/or assistant warden of CSP–Sac, and Baughman was the warden or acting warden of
28 CSP–Sac.

1  Eighth Amendment against defendants Pacheco and Bigney; (2) a claim under California Civil
2  Code § 52.1 (the "Bane Act") against defendants Pacheco and Bigney; (3) a supervisory liability
3  claim under 42 U.S.C. § 1983 against defendants Villa, Lynch, and Baughman; (4) a wrongful
4  death claim against all defendants; (5) a 42 U.S.C. § 1983 claim for failure to protect in violation
5  of the Eighth Amendment against defendants Villa, Lynch, and Baughman; (6) a concealment
6  claim against defendants Lynch and Baughman; and (7) an intentional misrepresentation claim
7  against defendants Pacheco and Bigney.  (Doc. No. 128.)

8  On February 26, 2024, defendants Lynch and Baughman (the "moving defendants") filed
9  a motion to dismiss plaintiffs' TAC, arguing that the claims are barred by the applicable statute of
10 limitations, the allegations fail to state a claim for relief, and that plaintiffs failed to join an
11 indispensable party.  (Doc. No. 130.)  On September 10, 2024, the assigned magistrate judge
12 recommended that the pending motion to dismiss plaintiffs' TAC be denied.  (Doc. No. 159.)  On
13 September 24, 2024, the moving defendants filed objections to those findings and
14 recommendations.  (Doc. No. 160.)

15 The moving defendants advance two arguments in their objections.  First, they argue that
16 the magistrate judge erroneously concluded that under the delayed discovery rule, the duty to
17 inquire was not triggered in this case until July 2022 when plaintiffs were informed for the first
18 time that Mr. Price's cause of death may not have resulted from an attack by another inmate.
19 (Doc. No. 160 at 5.)  They argue that the findings and recommendations overlook corollaries
20 between this case and two others in which courts found that the delayed discovery rule did not
21 apply.

22 The court has reviewed both cases cited by the moving defendants and finds them to be
23 inapposite.  In *Parrish v. Nat'l Football League Players Ass'n*, the plaintiffs, retired professional
24 football players, pled that the defendants unfairly competed and wrongfully interfered with their
25 licensing opportunities.  534 F. Supp. 2d 1081, 1088 (N.D. Cal. 2007).  The district court held
26 that the plaintiffs could not rely on the delayed discovery rule to toll the statute of limitations
27 because, even though the plaintiffs alleged that they "had only the barest information regarding
28 [the defendant's] licensing practices" until 2006, they also alleged that they "made requests for

3

this information as far back as 1994," demonstrating that they had reason to suspect the existence of their claims. *Id*. at 1089.  Here, the moving defendants argue that the Price family's 20-30 phone calls constitute similar requests for information demonstrating that they had a reason to suspect the factual basis for this case. (Doc. No. 160 at 5.)  The court disagrees.  Plaintiffs allege that the purpose of their calls was to find out if Mr. Price's cellmate would receive an extended sentence as a result of killing Mr. Price, not because they had any reason to suspect that Mr. Price was subjected to the unconstitutional use of excessive force by a CDCR officer. (Doc. No. 128 at ¶ 45.)  The moving defendants also argue that this case bears striking resemblance to *Hagan v. California Forensic Med. Grp.*, in which the decedent died after suffering a severe asthma attack in a CDCR-operated prison, and the court held that the plaintiffs' claim was not timely filed under the delayed discovery rule.  No. 07-cv-01095-LKK-DAD, 2009 WL 1212071, at *1, 4 (E.D. Cal. May 5, 2009).  In that case, the court concluded that "[a]t the time of death, plaintiffs knew of the injury and suspected a wrongful cause, namely, the allegedly inadequate medical care received at [the facility]," which triggered their duty to "conduct a reasonable investigation."  *Id*. at *2.[2]  The moving defendants argue that here, plaintiffs "knew of the injury and should have suspected a wrongful cause, namely, that the [d]ecedent died during an altercation," which should have triggered their duty to investigate all potential causes of the injury. (Doc. No. 160 at 6.)  The court is not persuaded that the false information the Price family received from Sergeant Steele triggered such a burden.  Plaintiffs allege that they had no reason to suspect that the information they were provided regarding Mr. Price's death was false until July 2022. (Doc. No. 128 at ¶ 113.)  Plaintiffs allege that after becoming aware of the possible truth, they conducted a search and filed the instant action promptly.  (*Id*. at ¶¶ 114–15.)  These facts and circumstances are wholly distinguishable from those before the court in *Hagan.*  Accordingly, the undersigned rejects the moving defendants' argument that the magistrate judge's recommendation should not be adopted on that ground.

---

[2]  The court based this conclusion in part on the plaintiffs' allegation that, days prior to his death, the decedent had reported to his wife (one of the plaintiffs) that he was not receiving his medication.  *Hagan*, 2009 WL 1212071, at *2.

4

Next, the moving defendants argue that plaintiffs have failed to allege facts supporting their third claim for supervisory liability. (Doc. No. 160 at 7.) They argue that plaintiffs' allegations are conclusory and rely on only a "single unrelated incident" where an inmate was pepper-sprayed to show that the moving defendants participated or failed to act to prevent violations of law. (*Id*. at 9.) The court disagrees, and notes that the magistrate judge reviewed several allegations set forth in plaintiffs' complaint regarding the moving defendants' awareness of assaults on inmates, of falsified CDCR reports, of a "code of silence" among employees, and of a culture of corruption, and their failure to take action regarding supervising, training, and disciplining employees, conducting adequate investigations, implementing enforcement mechanisms, and stopping the assaults. (Doc. No. 159 at 12–19.) Accordingly, the court finds that the moving defendants' argument that the findings and recommendations improperly "focused on [a] single allegation" does not provide a basis upon which to reject the magistrate judge's thorough analysis. (Doc. No. 160 at 8.)

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 304, the court has conducted a *de novo* review of this case. Having carefully reviewed the entire file, including the moving defendants' objections, the court concludes that the findings and recommendations are supported by the record and proper analysis.

Accordingly:

1. The findings and recommendations issued on September 10, 2024 (Doc. No. 159) are adopted in full;

2. Defendants' motion to dismiss plaintiffs' third amended complaint (Doc. No. 130) is denied;

3. Defendants shall file an answer responding to the claims in plaintiff's third amended complaint no later than twenty-one (21) days after the date of entry of this order; and

/////

/////

/////

4. This matter is referred back to the magistrate judge for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated: __**September 26, 2024**__          /s/ Dale A. Drozd
                                          DALE A. DROZD
                                          UNITED STATES DISTRICT JUDGE