ROB BONTA, State Bar No. 202668
Attorney General of California
JAY M. GOLDMAN, State Bar No. 168141
Supervising Deputy Attorney General
RYAN T. GILLE, State Bar No. 262105
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone: (415) 510-4454
 Fax: (415) 703-5843
 E-mail:  Ryan.Gille@doj.ca.gov
*Attorneys for Defendants*
*D. Baughman and J. Lynch*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **JoAnn Price, et al.,** | 2:22-cv-1610-DAD-DMC (PC) |
| Plaintiff, | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT** |
| v. | |
| **Arturo Pacheco, et al.,** | Date:         August 17, 2026 |
| | Time:         1:30 p.m. |
| | Courtroom:  4 |
| Defendants. | Judge:        The Honorable Dale A. Drozd |
| | Trial Date:   October 6, 2026 |
| | Action Filed:  September 14, 2022 |

**TABLE OF CONTENTS**

**Page**

Introduction...................................................................................................................1

Statement of Undisputed Facts ......................................................................................1

    I.    The Parties and Their Roles....................................................................1

    II.    The Assault On Ronnie Price...................................................................2

    III.    The Cover-Up Undertaken By Line Officers............................................2

    IV.    No Prior Notice Of Individual Officer Unfitness. ...................................2

    V.    Plaintiff's Post-Death Investigation.........................................................3

Legal Standard ..............................................................................................................3

Legal Argument .............................................................................................................4

    I.    Plaintiff Cannot Establish Supervisory Liability Under § 1983 Against Moving Defendants (Third Cause of Action). ......................................4

    II.    Plaintiff Cannot Establish a Failure to Protect Claim Against Moving Defendants (Fifth Cause of Action). .....................................................6

    III.    The Wrongful Death Claim Fails for Want of Proximate Causation (Fourth Cause of Action). ......................................................................7

    IV.    The Concealment Claim Fails Because Moving Defendants Did Not Personally Conceal the Cause of Death (Sixth Cause of Action). ...........8

    V.    Moving Defendants Are Not Named in the Intentional Misrepresentation Claim and No Evidence Supports Their Liability (Seventh Cause of Action). ..............................................................................................9

    VI.    Moving Defendants Are Entitled to Qualified Immunity on All § 1983 Claims. ...............................................................................................9

    VII.    Plaintiff's Claims Are Time-Barred Because The Delayed Discovery Rule Does Not Apply. ......................................................................................11

        A.    The Applicable Limitations Period Expired Nearly Four Years Before This Action Was Filed. ..................................................11

        B.    Plaintiff's Own Testimony Establishes That the Limitations Period Began to Run in September 2016. ..............................................11

        C.    Plaintiff Failed to Exercise Reasonable Diligence During the Limitations Period...................................................................12

        D.    The Doctrine of Fraudulent Concealment Does Not Toll the Statute of Limitations as to Uninvolved Supervisorial Defendants.......................13

    VIII.    Plaintiff Cannot Manufacture a Triable Issue With Interrogatory Response That Merely Recycle The Allegations. ..................................................14

Conclusion ..................................................................................................................16

i

**TABLE OF AUTHORITIES**

**Page**

CASES

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)......................................................................................................3, 15

*Bernson v. Browning-Ferris Industries*
7 Cal.4th 926 (1994) ..........................................................................................................14

*Board of County Comm'rs of Bryan County v. Brown*
520 U.S. 397 (1997)..............................................................................................................4

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986)..............................................................................................................3

*City and County of San Francisco v. Sheehan*
575 U.S. 600 (2015)............................................................................................................10

*City of Escondido v. Emmons*
586 U.S. 38 (2019)..............................................................................................................10

*Community Cause v. Boatwright*
124 Cal.App.3d 888 (1981) ...............................................................................................14

*Conn v. City of Reno*
591 F.3d 1081 (9th Cir. 2010) .............................................................................................7

*Davis v. Scherer*
468 U.S. 183 (1984)............................................................................................................10

*Dixon v. Superior Ct.*
170 Cal. App. 4th 1271 (2009) ..........................................................................................12

*Farmer v. Brennan*
511 U.S. 825 (1994)..........................................................................................................6, 7

*Fox v. Ethicon Endo-Surgery, Inc.*
35 Cal.4th 797 (2005) ........................................................................................................12

*Garcia v. Pueblo Country Club*
299 F.3d 1233 (10th Cir. 2002) .........................................................................................12

*Grisham v. Philip Morris U.S.A., Inc.*
40 Cal.4th 623 (2007) ........................................................................................................14

Defs.' Memo. Of P.'s & A.'s re: MSJ (2:22-cv-1610-DAD-DMC (PC))

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Hambleton Brothers Lumber Co. v. Balkin Enterprises*
397 F.3d 1217 (9th Cir. 2005) ....................................................................................12

*Jolly v. Eli Lilly & Co.*
44 Cal.3d 1103 (1988) ...........................................................................................11, 12

*Kisela v. Hughes*
584 U.S. 100 (2018) (per curiam)................................................................................10

*Linear Technology Corp. v. Applied Materials, Inc.*
152 Cal. App. 4th 115 (2007) .......................................................................................8

*Maldonado v. Harris*
370 F.3d 945 (9th Cir. 2004) ......................................................................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574 (1986)......................................................................................................3

*Meehan v. Cnty. of Los Angeles*
856 F.2d 102 (9th Cir. 1988) .............................................................................5, 6, 11

*Monell v. Dep't of Soc. Servs.*
436 U.S. 658 (1978)......................................................................................................4

*Mullenix v. Luna*
577 U.S. 7 (2015) (per curiam).....................................................................................9

*Norgart v. Upjohn Co..*
21 Cal.4th 383 (1999) .............................................................................................11, 12

*Pearson v. Callahan*
555 U.S. 223 (2009)......................................................................................................9

*Scott v. Harris*
550 U.S. 372 (2007)......................................................................................................3

*Starr v. Baca*
652 F.3d 1202 (9th Cir. 2011) .............................................................................4, 5, 16

*Taylor v. List*
880 F.2d 1040 (9th Cir. 1989) .....................................................................................4

*Tourgeman v. Collins Fin. Servs., Inc.*
No. 08-CV-1392 JLS NLS, 2010 WL 4817990 (S.D. Cal. Nov. 22, 2010) ...........12

iii

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Tsao v. Desert Palace, Inc.*
  698 F.3d 1128 (9th Cir. 2012) ................................................................4

*Tuuamalemalo v. Greene*
  946 F.3d 471 (9th Cir. 2019) (per curiam).........................................10

*White v. Pauly*
  580 U.S. 73 (2017)................................................................................10

**STATUTES**

United States Code, Title 42
  § 1983...........................................................................................4, 9, 11

California Civil Code
  § 1710(1)..................................................................................................9
  § 1710(3)..................................................................................................8

California Code of Civil Procedure
  § 335.1....................................................................................................11
  § 377.60....................................................................................................7

California Public Records Act .................................................................3, 13

**CONSTITUTIONAL PROVISIONS**

United States Constitution
  Fourth Amendment ................................................................................10
  Eighth Amendment ..................................................................................6

**COURT RULES**

Federal Rules of Civil Procedure
  Rule 30(e)...............................................................................................12
  Rule 56(a), (c) ..........................................................................................3

## INTRODUCTION

The Third Amended Complaint attempts to hold Defendants David Baughman (Acting Warden/Warden) and Jeffrey Lynch (Associate/Chief Deputy Warden) liable for supervisory failures in connection with a brutal and unlawful use of force committed entirely by defendant officer Arturo Pacheco, an act that was concealed from the institution's leadership.  Baughman and Lynch were not present during the assault on decedent Ronnie Price, did not direct or authorize Pacheco's use of force, did not participate in the subsequent falsification of reports, and did not instruct anyone to deceive Plaintiff JoAnn Price about the cause of her brother's death.  To the contrary: the undisputed material facts based on the evidence shows that, once the misconduct came to light through a California Department of Corrections and Rehabilitation (CDCR) Office of Internal Affairs (OIA) investigation, Baughman and Lynch took appropriate administrative action and each of the six officers directly implicated, Pacheco, Aurich, Villa, Luna, Lopez, and Bigney, were terminated at the conclusion of the independent investigation.

Plaintiff bears the burden of producing admissible evidence sufficient to create a genuine dispute on each element of each claim.  They cannot carry that burden here.  The claims against Baughman and Lynch rest on generalized and factually devoid allegations of a "code of silence" and conclusory assertions of supervisory knowledge, the precise type of claim that the Ninth Circuit has repeatedly held insufficient to survive summary judgment.  Because there is no triable issue of fact, and because Baughman and Lynch are each separately entitled to qualified immunity, the Court should grant summary judgment in their favor on all claims.

## STATEMENT OF UNDISPUTED FACTS

### I.    THE PARTIES AND THEIR ROLES.

At all relevant times in September 2016, Defendant David Baughman served as Acting Warden of CSP Sacramento ("CSP Sac").  (UMF 1.)  Defendant Jeffrey Lynch served as Chief Deputy Warden of CSP Sac, having been promoted to that position in August 2016.  (UMF 2.)

### II.   THE ASSAULT ON RONNIE PRICE.

On September 15, 2016, correctional officer Defendant Arturo Pacheco assaulted Plaintiff's decedent Ronnie Price while escorting him between housing units.  (UMF 4.)  Neither Baughman

1

nor Lynch was present when Pacheco used force against Mr. Price and first learned of the incident only through the standard notification of an inmate's medical transport.  (UMF 5.)  Mr. Price later died on September 17, 2016, while receiving medical treatment from U.C. Davis. (UMF 6.)  The coroner's report identified the cause of death as a homicide.  (UMF 7.)

**III.  THE COVER-UP UNDERTAKEN BY LINE OFFICERS.**

Following the assault, Defendants Pacheco, Aurich, and Villa,  prepared accounts of the incident that were false.  (UMF 8.)  The falsified reports attributed Mr. Price's injuries to his resisting directions from Pacheco.  (UMF 9.)  Baughman and Lynch did not direct, participate in, or know of the falsification scheme when it was submitted.  (UMF 10.)  The matter was automatically referred to CDCR's Deadly Force Investigation Team upon Mr. Price's death. (UMF 11.)

Prior to the assault, there is no evidence that Pacheco had a prior pattern of using excessive force against incarcerated individuals.  (UMF 12.)  While Plaintiff alleges that Pacheco was involved in a single use of excessive force approximately four months before the incident, there is no evidence that Baughman or Lynch were aware of any substantiated misuses of force by Pacheco.  (UMF 13.)  There is likewise no evidence of a "code of silence" culture at CSP Sac or that any such culture played a role in causing the attack on the decedent.  (UMF 14.)  Indeed, Pacheco has admitted that he acted on his own volition.  (UMF 15.)

**IV.  NO PRIOR NOTICE OF INDIVIDUAL OFFICER UNFITNESS.**

Prior to the assault on Mr. Price, neither Baughman nor Lynch had received specific complaints identifying Pacheco as an officer likely to use unjustified lethal or near-lethal force against a restrained inmate.  (UMF 16.)  The TAC references a May 2016 pepper-spray incident; subsequent investigation did not substantiate the allegations of excessive force[1].  (UMF 17.) Baughman testified that he had no recollection of reviewing any prior use-of-force report involving Pacheco before September 15, 2016.  (UMF 18.)  Lynch similarly testified that Pacheco had not been brought to his attention as a problem officer prior to that date.  (UMF 19.)

---

[1] It is anticipated that Plaintiff will attempt to argue that a grievance filed by another prisoner two months before the incident with Mr. Price also supports their theory of prior notice, however, the investigation did not support or corroborate the allegations.

2

**V.    PLAINTIFF'S POST-DEATH INVESTIGATION.**

Upon being notified of Mr. Price's death, Plaintiff JoAnn Price testified that she "figured something was wrong" and found the tone of the notifying staff suspiciously "nonchalant." (UMF 18.)  Takis Tucker never sought a contact number beyond the single number purportedly provided by Sergeant Steele, never accessed CDCR's publicly available website for alternative contacts, never contacted the Warden's office, and never contacted the Office of the Ombudsman.  (UMF 19.)  After receiving no response from the single number he had been given, Tucker conducted no further investigation into the circumstances of his uncle's death.  (UMF 20.)  No member of the Price family filed a California Public Records Act request, submitted a Government Claim, or wrote to any state or federal government entity regarding Mr. Price's death at any point between September 2016 and the filing of this lawsuit in September 2022.  (UMF 21.)  Tucker and Ms. Price knew that their calls to CDCR were going unanswered but did not attempt to find another way to reach CDCR.  (UMF 22.)

## LEGAL STANDARD

Summary judgment is appropriate where the pleadings, discovery, and affidavits show that there is no genuine dispute of any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c).  Material facts are those that may affect the outcome.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id*. at 249.

Entry of summary judgment is mandated when the responding party fails to make a showing sufficient to establish the existence of an element essential to that party's case for which they will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Reasonable inferences must be drawn in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  But if the non-moving party's version of facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**LEGAL ARGUMENT**

**I.    PLAINTIFF CANNOT ESTABLISH SUPERVISORY LIABILITY UNDER § 1983 AGAINST MOVING DEFENDANTS (THIRD CAUSE OF ACTION).**

The Third Cause of Action alleges supervisory liability under 42 U.S.C. § 1983 against, Baughman and Lynch.  Under Ninth Circuit authority, a supervisor is liable under § 1983 only if (1) he was personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between his wrongful conduct and the constitutional violation.  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  Supervisory liability cannot be premised on respondeat superior.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

To establish the necessary causal connection through deliberate indifference, a plaintiff must show that: (1) the supervisor had actual or constructive notice of an unconstitutional practice; (2) the supervisor made a conscious or deliberate choice to disregard the risk of harm; and (3) this choice caused constitutional harm.  *Starr*, 652 F.3d at 1207.  Plaintiff cannot establish any of these elements as to Baughman or Lynch.

Plaintiff alleges that Baughman and Lynch received generalized reports about a "code of silence" at CSP Sac.  (TAC ¶¶ 101-105.)  But awareness of general institutional culture problems, even if credited, does not establish knowledge that a particular officer posed a particular threat to a particular inmate.  See *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 411-412 (1997) (requiring "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation" and rejecting liability based on general risk of misconduct); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (supervisory liability requires more than awareness of a general risk of misconduct).

Plaintiff relied on *Starr* in opposition to Defendants' Motion to Dismiss, however, the facts in this case are different.  In *Starr*, the defendant Sheriff operated a correctional facility that faced nearly a decade of formal, external notice: DOJ findings letters, a personally signed Memorandum of Understanding, semiannual Special Counsel reports, and individualized notice of at least seven specific inmate deaths or severe beatings.  Baughman and Lynch had nothing

4

comparable.  The record shows no generalized reports about institutional culture concerns and a single May 2016 pepper-spray incident involving Pacheco, of which Baughman and Lynch were unaware at the time of the incident with the decedent, that went through standard review and came back unsubstantiated.  Pacheco otherwise had a clean disciplinary record with no prior sustained excessive force findings known to either Defendant.

*Starr* also involved open, recurring, documented violations that the defendant simply declined to address.  In our case, the assault was immediately concealed through falsified reports and coordinated officer statements.  Baughman and Lynch were not indifferent to a known risk; they were deceived.  Once the cover-up was detected through the OIA investigation, Baughman took corrective action and terminated all six involved officers at the conclusion of the criminal investigation.  A supervisor who investigates and removes wrongdoers upon learning of misconduct cannot be said to have consciously disregarded a risk.

Lynch is an even weaker target for Plaintiff than Baughman.  He was newly appointed to the CDW role at the time of the incident, had no direct supervisory authority over line officers, and had no knowledge of even the pepper-spray incident because he was in a business services role in 2016.

Plaintiff's liability theory is further weakened by *Meehan v. Cnty. of Los Angeles*, 856 F.2d 102 (9th Cir. 1988).  There, the Ninth Circuit affirmed a directed verdict for a deputy sheriff even though he was present at the scene of misconduct by other officers, because there was no evidence he had instructed, authorized, or had prior knowledge of that conduct.  *Id*. at 106.  The court required an affirmative evidentiary link between the supervisor and the constitutional violation, not mere proximity, or institutional association.  *Id*. at 106-107.  The Court also held that two separate incidents of unconstitutional conduct by officers were insufficient to establish the kind of notice needed to support liability against a supervising authority.  *Id*.  Baughman and Lynch are in a stronger position than even the defendant in *Meehan*.  Neither was present when Pacheco assaulted Price, neither directed or authorized the assault, and Pacheco's clean record of no substantiated instances of misconduct gave them no basis to anticipate it.  If presence at the scene without prior knowledge was insufficient to survive a directed verdict in *Meehan*, the far

5

more attenuated connection Plaintiff alleges here cannot sustain a supervisory liability claim at summary judgment.

As to the May 2016 pepper-spray incident specifically, the TAC alleges that Pacheco "texted" about it to a friend.  (TAC ¶ 103.)  But there is no evidence that Baughman or Lynch reviewed or were informed of Pacheco's private text messages at that time about this incident, or that this incident was brought to their attention as a misconduct matter before the events of September 2016.  The information related to Pacheco's misconduct in the pepper spray incident did not come to light until a forensic investigation of Pacheco's phone was conducted during the Price investigation.  And to the extent Plaintiff relies on an unsubstantiated grievance filed by another incarcerated person, that is also insufficient.  Absent evidence of actual prior notice, Plaintiff cannot satisfy the first element of deliberate indifference.

## II.    PLAINTIFF CANNOT ESTABLISH A FAILURE TO PROTECT CLAIM AGAINST MOVING DEFENDANTS (FIFTH CAUSE OF ACTION).

The Fifth Cause of Action alleges that Baughman and Lynch failed to protect Mr. Price in violation of the Eighth Amendment.  A prison official violates the Eighth Amendment's prohibition on cruel and unusual punishment only if: (1) the deprivation alleged is objectively "sufficiently serious" and (2) the official is "deliberately indifferent to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The deliberate indifference standard requires proof that the official was "subjectively aware" of a substantial risk of serious harm and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.  Importantly, "it is not enough merely to find that a reasonable person would have known" of the risk.  *Id*. at 843 n.8.  Baughman and Lynch must have had actual, subjective awareness of the specific risk that materialized, that Pacheco would assault the decedent.

No such subjective awareness existed.  As discussed in Section IV.A above, the generalized reports of institutional misconduct alleged in the TAC do not establish that Baughman or Lynch were aware that Pacheco posed a threat to Mr. Price specifically, or to inmates generally.  The Ninth Circuit has emphasized that the *Farmer* standard requires awareness of a "specific" and

6

"particular" risk rather than a generalized risk of institutional violence. *Conn v. City of Reno*, 591 F.3d 1081, 1096 (9th Cir. 2010) (vacated and remanded on other grounds.)

Furthermore, the failure-to-protect framework addresses officials who stand by while harm is being inflicted on an inmate. Neither Baughman, nor Lynch, were present at the scene of the assault, had no contemporaneous awareness that it was occurring, and could not have intervened. A supervisor cannot be held liable for failure to protect from an assault of which he had no knowledge and in which he had no ability to intervene.

Summary judgment should therefore be granted on the Fifth Cause of Action.

## III. THE WRONGFUL DEATH CLAIM FAILS FOR WANT OF PROXIMATE CAUSATION (FOURTH CAUSE OF ACTION).

The Fourth Cause of Action alleges wrongful death under California Code of Civil Procedure § 377.60 against Baughman and Lynch. A wrongful death claim requires proof that the defendant's negligence or wrongful act was a proximate cause of the decedent's death. Cal. Code Civ. Proc. § 377.60.

As against Baughman and Lynch, the TAC predicates wrongful death solely on their alleged negligent supervision. (TAC ¶ 184.) For the reasons articulated in Sections IV.A and IV.B, Plaintiff cannot establish that any negligence by Baughman or Lynch in supervision was a proximate cause of Mr. Price's death. The immediate and direct cause of Mr. Price's death was Defendant Pacheco's unlawful use of force, a spontaneous, unauthorized assault undertaken without the knowledge or direction of Baughman or Lynch. The cover-up allegedly executed by officers, designed precisely to prevent the truth from reaching supervisory officials, constitutes a superseding cause that severs any causal link between Baughman and Lynch's alleged supervisory failures and Plaintiff's damages. Baughman and Lynch cannot be faulted for failing to act on information that was actively concealed from them. And there is no evidence that Moving Defendants knew of information prior to the incident with the decedent that would have put them on notice that the officer in question would violently attack the decedent.

Accordingly, summary judgment should be granted in favor of Moving Defendants on the Fourth Cause of Action.

7

**IV.    THE CONCEALMENT CLAIM FAILS BECAUSE MOVING DEFENDANTS DID NOT PERSONALLY CONCEAL THE CAUSE OF DEATH (SIXTH CAUSE OF ACTION).**

The Sixth Cause of Action for concealment under Civil Code § 1710(3) is alleged against Baughman and Lynch.  To state a claim for concealment, Plaintiff must establish: (1) the defendant concealed or suppressed a material fact; (2) the defendant had a duty to disclose the fact; (3) the defendant intentionally concealed the fact with intent to defraud; (4) Plaintiff was unaware of the fact and would not have acted as she did had she known of the concealed fact; and (5) resulting damage.  *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 131 (2007).

This claim fails against Moving Defendants for multiple independent reasons.  First, the initial false representation to JoAnn Price, that her brother was killed by a cellmate, was allegedly made by Sergeant Kevin Steele (TAC ¶ 43), not by Baughman or Lynch.  There is no allegation, let alone evidence, that Baughman or Lynch directed Steele to relay a false account to the family, or that either Baughman or Lynch was aware at the time that Steele had done so.

Second, the TAC alleges Baughman and Lynch "became aware" of the truth of Pacheco's conduct by the Spring of 2017 and certainly by June 25, 2018.  (TAC ¶¶ 86-93.)  But becoming aware of the truth after-the-fact does not convert a failure to proactively contact the decedent's family into actionable fraud absent a specific legal duty to do so.  Moving Defendants took the action within their administrative authority, terminating the responsible officers, and they had no independent legal obligation to notify the family of the outcome of an internal OIA investigation.

Third, to the extent any duty to notify the family existed under the CDCR Health Care Department Operations Manual § 3.1.19 (TAC ¶ 20), that policy requires notification of "serious illness or serious injury," a notification obligation that is distinct from an obligation to provide a family member with the results of a criminal or administrative investigation.  Plaintiff conflates an initial notification duty (which was triggered in September 2016 and was executed, albeit allegedly inaccurately, by Steele) with a continuing obligation to correct prior misrepresentations, an obligation for which no legal basis is identified.

8

Summary judgment should be granted in favor of Moving Defendants on the Sixth Cause of Action.

## V.    MOVING DEFENDANTS ARE NOT NAMED IN THE INTENTIONAL MISREPRESENTATION CLAIM AND NO EVIDENCE SUPPORTS THEIR LIABILITY (SEVENTH CAUSE OF ACTION).

The Seventh Cause of Action for intentional misrepresentation is asserted only "Against Defendants Pacheco, Bigney, Luna and Does 1 and 2." (TAC at 31.)  Moving Defendants Baughman and Lynch are not named defendants in this cause of action as pleaded. To the extent Plaintiff contends otherwise or argue that Moving Defendants are impliedly swept in, this claim is facially deficient as to them.

In any event, the elements of intentional misrepresentation under Civil Code § 1710(1) require that the defendant made a false statement of material fact.  No evidence in this record establishes that either Baughman or Lynch personally made any statement, false or otherwise, to JoAnn Price or any member of her family concerning the circumstances of Ronnie Price's death. The only identified communication to the family was Steele's September 24, 2016 telephone call (TAC ¶ 43.)  Further, there is no evidence that Baughman or Lynch participated in or ratified the conduct of the officers that mislead superiors during the initial investigation. Absent any personal statement by Baughman or Lynch, there is no triable issue on the misrepresentation elements.

Summary judgment should therefore be granted in favor of Moving Defendants on the Seventh Cause of Action to the extent it is construed to encompass them.

## VI.    MOVING DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON ALL § 1983 CLAIMS.

Moving Defendants are each independently entitled to qualified immunity.  State officials are entitled to qualified immunity if their conduct did not violate a constitutional right, or if the right was not "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (internal quotation marks omitted).  The Supreme Court "has repeatedly told courts … not to define clearly established law at a high level of generality."

9

*Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam).  Instead, "the clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019).  "This exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (cleaned up).

While qualified immunity does not "require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks omitted) (reversing denial of qualified immunity because appellate panel failed to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment).  "The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority." *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019) (per curiam).  The party contesting qualified immunity must show that the law was clearly established at the time of the alleged violation.  *Davis v. Scherer*, 468 U.S. 183, 197 (1984).

As to the first prong: as argued throughout this brief, the evidence does not establish a constitutional violation by Baughman or Lynch.  They are therefore entitled to qualified immunity on that basis alone.

As to the second prong: to defeat qualified immunity, Plaintiff must identify a prior case in which the supervisory liability standards were applied in a sufficiently analogous factual context to put a reasonable warden and associate warden on notice that their specific conduct under the circumstances that occurred in this case violated clearly established law.  The right must be defined with "sufficient specificity" so that a reasonable official in the defendant's position would know that her actions violated that right.  *Id*.

Here, the record contains no evidence that Baughman or Lynch had actual knowledge of a specific, concrete risk that Pacheco would assault Price.  Pacheco had a clean disciplinary record, the single prior use-of-force incident involving him had been investigated and returned unsubstantiated, and the assault itself was immediately concealed through falsified reports.  No

10

reasonable warden or chief deputy warden, confronted with that same informational record, would have understood that failing to take action regarding Pacheco prior to the incident with the decedent violated clearly established law. Where, as *Meehan* confirms, even two documented incidents of actual misconduct are insufficient to establish supervisory notice, a reasonable official presented with one unsubstantiated finding could not have known that retaining Pacheco in his position exposed them to constitutional liability. Because Plaintiff cannot point to any clearly established legal standard that Baughman or Lynch knowingly violated, qualified immunity bars the supervisory liability claims against both defendants.

## VII. PLAINTIFF'S CLAIMS ARE TIME-BARRED BECAUSE THE DELAYED DISCOVERY RULE DOES NOT APPLY.

### A. The Applicable Limitations Period Expired Nearly Four Years Before This Action Was Filed.

The federal statute of limitations for § 1983 claims in California is two years. *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). The state tort claims are subject to the same two-year period. Cal. Code Civ. Proc. § 335.1. Mr. Price died on September 17, 2016. This action was not filed until September 14, 2022, nearly six years later. Plaintiff's claims are time-barred unless the delayed discovery rule applies to toll the limitations period.

### B. Plaintiff's Own Testimony Establishes That the Limitations Period Began to Run in September 2016.

Under California law, the statute of limitations begins to run when a plaintiff suspects or should suspect that her injury was caused by wrongdoing. *Norgart v. Upjohn Co..* 21 Cal.4th 383, 397 (1999). The plaintiff need not know the specific facts or the identity of the defendants. Once a suspicion of wrongdoing exists, the plaintiff has a duty to find the facts. *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1111 (1988). The test is objective reasonable diligence, not subjective unawareness. *Norgart*, 21 Cal.4th at 397-98.

Here, it is undisputed that Plaintiff JoAnn Price harbored an immediate and subjective suspicion of wrongdoing at the time of the death. During her deposition, she testified that she "figured something was wrong" upon being notified of Mr. Price's death, and noted that the tone of the staff was suspiciously "nonchalant." This admission of actual suspicion is legally

11

dispositive. Under *Jolly* and *Norgart*, this suspicion, coupled with knowledge of a death in state custody by the hands of another individual, triggered the running of the statute of limitations in September 2016. The fact that the family was told the death resulted from an inmate-on-inmate fight does not alter the accrual analysis. It is undisputed that Ms. Price was aware that Mr. Price's death was caused by someone else. Whether it was another incarcerated individual or a correctional officer does not alter the equation.

It is anticipated that Plaintiff will argue she testified incorrectly during her deposition, even though she was accompanied by her attorney and son. And that she corrected her testimony through an errata to state that she did not think that anything was amiss until she was contacted by attorneys in 2022. The Ninth Circuit has held that errata to a deposition transcript should be stricken under Rule 30(e) if the deponent fails to comply with Rule 30(e)'s substantive limitations. See *Hambleton Brothers Lumber Co. v. Balkin Enterprises*, 397 F.3d 1217 (9th Cir. 2005). Specifically, the Ninth Circuit allows errata only to correct mistakes in the transcript, not to alter testimony: "Rule 30(e) is to be used for corrective, and not contradictory, changes." *Id*. at 1226.Rule 30(e) "cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the question with no thought at all and then return home and plan artful responses." *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-CV-1392 JLS NLS, 2010 WL 4817990, at *2 (S.D. Cal. Nov. 22, 2010) (quoting *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002)). Accordingly, if Plaintiff tries to avoid her admission by offering her errata, the errata should be stricken.

### C. Plaintiff Failed to Exercise Reasonable Diligence During the Limitations Period.

The delayed discovery rule does not apply where a plaintiff, exercising reasonable diligence, could have discovered the factual basis for the claim earlier. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808 (2005). At summary judgment, Plaintiff must support their delayed discovery theory with admissible evidence. The evidentiary record does not support it.

The Sacramento County Coroner ruled Mr. Price's death a homicide. Coroner's records are publicly available documents. *Dixon v. Superior Ct.*, 170 Cal. App. 4th 1271, 1278 (2009). A

Defs.' Memo. Of P.'s & A.'s re: MSJ (2:22-cv-1610-DAD-DMC (PC))

reasonably diligent person, harboring an admitted suspicion that something was wrong with a violent in-custody death, could have requested those records.  The homicide finding alone would have placed any reasonable person on notice that further investigation was warranted.  However, there is no evidence that anyone in the Price family made any such request at any time during the six years before suit was filed.  Beyond the coroner's report, Plaintiff had access to other avenues of inquiry that went entirely unpursued.  Takis Tucker admitted during his deposition that he never looked for a contact number beyond a single number purportedly provided by Sergeant Steele, never accessed CDCR's publicly available website for alternative contacts, never reached out to the Warden's office, and never contacted CDCR's Office of the Ombudsman.  There is no evidence that anyone filed a California Public Records Act request, submitted a formal Government Claim, or wrote a letter to any state or federal government entity about the incident at any point between September 2016 and the filing of this lawsuit in September 2022.

Plaintiff has characterized their 20 to 30 unanswered calls to a single phone number as diligent investigation.  As a matter of law, it is not.  The very fact that so many calls went unreturned should have reinforced Plaintiff's admitted suspicion that something was wrong and prompted escalation.  A reasonably diligent person faced with a non-responsive government official regarding a violent in-custody death has a duty to pursue the matter through other available channels.  By choosing instead to wait years for a return call that never came, Plaintiff failed to exercise the diligence required to toll the statute.  Tucker and Ms. Price candidly confirmed the point: even knowing the calls were not working, they still did not attempt to find another way to reach CDCR.

**D.    The Doctrine of Fraudulent Concealment Does Not Toll the Statute of Limitations as to Uninvolved Supervisorial Defendants.**

Plaintiff contends that the statute should be tolled because certain correctional officers concealed their conduct following Mr. Price's death.  This argument cannot extend to Defendants Baughman and Lynch.

In California, the doctrine of fraudulent concealment is an equitable principle that applies only to defendants who took affirmative acts to mislead the plaintiff.  *Bernson v. Browning-Ferris*

13

*Industries*, 7 Cal.4th 926, 931 (1994).  Fraudulent concealment requires scienter: the defendant must have known the facts and intentionally withheld them to prevent a lawsuit. *Community Cause v. Boatwright,* 124 Cal.App.3d 888, 901 (1981).  The statute is tolled only until the plaintiff knows, or through the exercise of reasonable diligence should have discovered, of the defendant's identity.  *Bernson*, 7 Cal.4th at 936.

Baughman and Lynch were uninvolved in the incident itself and did not participate in the alleged falsification of reports.  Because they were unaware of the officers' alleged misconduct at the time, they could not have concealed those facts from Plaintiff within the meaning of the doctrine.  Furthermore, there is no vicarious tolling under California law.  The independent misconduct of subordinate officers in concealing their own liability cannot be imputed to a supervisorial defendant for purposes of tolling the statute of limitations.  To hold otherwise would allow a plaintiff to sue a supervisor years after the fact based on the fraud of a third party, undermining the purpose of the statute of limitations.

Plaintiff's reliance on the prison's alleged official account of the death fares no better.  Where a plaintiff has independent grounds for suspicion, reliance on a defendant's representations is not reasonable as a matter of law.  *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal.4th 623, 638 (2007).  Ms. Price did not credit the official narrative: she testified she "figured something was wrong" from the outset.  Having harbored that suspicion, she was obligated to conduct a diligent investigation within the statutory period.  No such investigation occurred.  She cannot now rely on the alleged concealment of others to revive a stale claim against Baughman and Lynch who took no action to prevent her from filing suit.

**VIII. PLAINTIFF CANNOT MANUFACTURE A TRIABLE ISSUE WITH DISCOVER RESPONSES THAT MERELY RECYCLE THE ALLEGATIONS.**

Plaintiff's own discovery responses confirm she has no evidence to support her claims against Baughman.  Plaintiff served her responses to Special Interrogatories Nos. 2 through 6, 11, and 12 on April 11, 2025.  Those were never amended or supplemented and therefore remain the operative statement of the factual basis for her claims against this defendant.

14

Those responses do not supply evidentiary support.  Responses to Interrogatories Nos. 2, 3, 5, and 6 are word for word identical to one another, reproducing the same paragraphs in the same order regardless of the specific factual question asked. Response No. 4 uses the same core paragraphs with only a minor duplication artifact. Responses to Interrogatories Nos. 11 and 12 draw from the identical block of boilerplate paragraphs, differing only in where that block is truncated.  Interrogatory No. 2 asked Plaintiff to state facts describing how Baughman was involved in the incident, while Interrogatory No. 6 asked Plaintiff to state facts showing Baughman caused or proximately caused Decedent's injuries and death, yet the two responses are identical, demonstrating that Plaintiff possesses no facts tailored to either question.

A party cannot manufacture a triable issue of fact by repackaging pleading allegations as sworn discovery responses.  See *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 256-257 (1986) (the non-moving party must set forth specific facts showing a genuine issue for trial, not rest on mere allegations).  Allegations do not become evidence merely because they are restated under penalty of perjury in an interrogatory response, particularly where, as here, the response is expressly qualified as being made "upon information and belief."

Moreover, several of the propositions in Plaintiff's boilerplate block are not factual assertions at all but inferential argument layered onto the pleaded facts.  For instance, Plaintiff contends that because Pacheco was not disciplined for the May 2016 pepper spray incident, "it can be reasonably inferred that procedure to investigate the use of force was also inadequate," and that the delayed termination which occurred in 2018 "creates a reasonable inference that Baughman and/or Lynch ratified his conduct."  These are speculative inferences stacked upon unsupported allegations, not evidence of Baughman's actual knowledge or deliberate indifference. Under *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011), supervisory liability requires more than speculation; it requires evidence connecting the supervisor's own culpable action or inaction to the constitutional violation.  Plaintiff's interrogatory responses, standing alone, supply no such evidence.

**CONCLUSION**

For all the foregoing reasons, Defendants Baughman and Lynch respectfully request that the Court grant summary judgment in their favor on all causes of action asserted against them in the Third Amended Complaint, and in the alternative, qualified immunity, should be granted to all the federal claims  In the alternative, Moving Defendants request partial summary judgment on each discrete cause of action addressed herein.

Dated:  July 6, 2026                                        Respectfully submitted,

                                                           ROB BONTA
                                                           Attorney General of California
                                                           JAY M. GOLDMAN
                                                           Supervising Deputy Attorney General


                                                           */s/ Ryan T. Gille*
                                                           RYAN T. GILLE
                                                           Deputy Attorney General
                                                           *Attorneys for Defendants*
                                                           *D. Baughman and J. Lynch*

SA2022402270

16